**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

District of Delaware

Case number (If known): ______________ Chapter 15

☐ Check if this is an amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding 12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

1. **Debtor's name** Abengoa Bioenergía, S.A.

2. **Debtor's unique identifier**

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN) __ __ – __ __ __ __ __ __ __

☑ Other A-91213249. Describe identifier Spanish Tax ID.

**For individual debtors:**

☐ Social Security number: xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN): 9 xx – xx – ____ ____ ____ ____

☐ Other ______________. Describe identifier ______________.

3. **Name of foreign representative(s)** Christopher Morris

4. **Foreign proceeding in which appointment of the foreign representative(s) occurred** Solicitud de Homologacion Judicial

5. **Nature of the foreign proceeding**

*Check one:*

☑ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

6. **Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

______________

______________

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

Debtor Abengoa Bioenergía, S.A. Case number (if known) ____________
Name

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i) all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii) all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9. Addresses**

**Country where the debtor has the center of its main interests:**

Spain

**Debtor's registered office:**

calle Energía Solar núm. 1
Number Street

P.O. Box

Sevilla 41014
City State/Province/Region ZIP/Postal Code

Spain
Country

**Individual debtor's habitual residence:**

Number Street

P.O. Box

City State/Province/Region ZIP/Postal Code

Country

**Address of foreign representative(s):**

1 Kaiser Plaza, Suite 1675
Number Street

P.O. Box

Oakland CA 94612
City State/Province/Region ZIP/Postal Code

USA
Country

**10. Debtor's website** (URL) http://www.abengoa-bioenergy.com/web/es/index.html

**11. Type of debtor**

*Check one:*

☐ Non-individual (*check one*):

- ☐ Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.
- ☐ Partnership
- ☑ Other. Specify: Sociedad Anónima

☐ Individual

Debtor Abengoa Bioenergía, S.A.
Name

Case number (if known)

**12. Why is venue proper in *this district*?**

*Check one:*

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

______________________________.

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

______________________________.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ [signature]
Signature of foreign representative

Christopher Morris
Printed name

Executed on 03/28/2016
MM / DD / YYYY

✗ ______________________________
Signature of foreign representative

______________________________
Printed name

Executed on ______________
MM / DD / YYYY

**14. Signature of attorney**

✗ [signature]
Signature of Attorney for foreign representative

Date 03/28/2016
MM / DD / YYYY

R. Craig Martin
Printed name

DLA Piper LLP (US)
Firm name

1201 North Market Street
Number Street

Wilmington
City

DE 19801
State ZIP Code

(302) 468-5700
Contact phone

craig.martin@dlapiper.com
Email address

5032
Bar number

DE
State

**EXHIBIT A**
**(Corporate Statement)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| ABENGOA BIOENERGÍA, S.A. | ) | |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Case No. 16 - ____ (___) |
| | ) | |
| | ) | |
| Tax I.D. No. A-91213249 | ) | |

## CORPORATE OWNERSHIP STATEMENT

In accordance with Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Christopher Morris, in his capacity as the duly authorized foreign representative (the "Foreign Representative"), certifies that the following corporate entity owns more than 10% of the Foreign Debtor:

| Shareholder | Percentage of Total Shares |
|---|---|
| Abengoa, S.A. | 80.58% |
| Sociedad Inversora en Energía y Medio Ambiente, S.A. | 17.47% |

Fill in this information to identify the case and this filing:

Debtor Name, Abengoa Bioenergía, S.A.

United States Bankruptcy Court for the:: ______________ District of Delaware (State)

Case number (*If known*): ______________

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)*

☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐ *Schedule H: Codebtors (Official Form 206H)*

☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐ *Amended Schedule* ____________

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)* U

☒ *Other document that requires a declaration* **Statement of Corporate Ownership**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 03/28/2016
MM / DD / YYYY

x [signature]
Signature of individual signing on behalf of debtor

Christopher Morris
Printed name

Foreign Representative for Abengoa Bioenergía, S.A.
Position or relationship to debtor

EAST\122916076.1

**EXHIBIT B**
**(Statements of Foreign Representative Required by Section 1515(c) and Rule 1007(a))**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| ABENGOA BIOENERGÍA, S.A., | ) | |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Case No. 16-______ (___) |
| | ) | |
| | ) | |
| Spanish Tax ID No. A-91213249 | ) | |

**STATEMENTS OF FOREIGN REPRESENTATIVE REQUIRED BY SECTION 1515(C) OF THE BANKRUPTCY CODE AND RULE 1007(A)(4) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Christopher Morris, in his capacity as the foreign representative (the "Foreign Representative") of Abengoa Bioenergía, S.A., a debtor in a foreign proceeding (the "Foreign Debtor") pending in Spain (the "Spanish Proceeding"), by and through his undersigned counsel, hereby makes the following statements required by section 1515(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

**A. STATEMENT REQUIRED BY SECTION 1515(c) OF THE BANKRUPTCY CODE**

The Foreign Representative submits that, to the best of his knowledge, other than this chapter 15 case and the Spanish Proceeding, there are no foreign proceedings concerning the Foreign Debtor.

**B. ALL AUTHORIZED ADMINISTRATORS OF THE FOREIGN DEBTOR IN THE SPANISH PROCEEDING**

**Abengoa Bioenergía, S.A.**
Campus Palmas Altas
calle Energía Solar núm. 1
Sevilla, Spain 41014

## C. LITIGATION PENDING IN THE UNITED STATES

To the knowledge of the Foreign Representative, there is no litigation pending in the United States to which the Foreign Debtor is a party as of the time of the filing of the Verified Petition for Recognition of the Spanish Proceeding.

## D. ENTITIES AGAINST WHICH PROVISIONAL RELIEF IS SOUGHT

Attached as **Exhibit 1** is a list of the names and addresses of all parties against whom the Foreign Representative seeks provisional relief under section 1519 of title 11 of the United States Code.

The information provided is based on the Foreign Representative's review of the Foreign Debtor's books and records. The Foreign Representative reserves the right to modify or supplement any of the information provided.

Fill in this information to identify the case and this filing:

Debtor Name, ABENGOA BIOENERGÍA, S.A.

United States Bankruptcy Court for the:: ______________ District of Delaware (State)

Case number (*If known*): ______________________

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)*

☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐ *Schedule H: Codebtors (Official Form 206H)*

☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐ *Amended Schedule* ____________

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)* U

☒ *Other document that requires a declaration* **Statements of Foreign Representative Required by Section 1515(c) of the Bankruptcy Code and Rule 1007(A)(4) of the Federal Rules of Bankruptcy Procedure**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 03/28/2016
MM / DD / YYYY

x [signature]
Signature of individual signing on behalf of debtor

Christopher Morris
Printed name

Foreign Representative for Abengoa Bioenergía, S.A.
Position or relationship to debtor

EAST\122916077.1

**EXHIBIT 1**
**(Provisional Relief Parties)**

## Provisional Relief Parties

| Entity/Individual | Service Address(es) |
| --- | --- |
| Deutsche Bank Trust Company Americas | **Deutsche Bank Trust Company Americas**<br>Trust & Securities Services<br>Project Finance Administrative Agent Services – Ex-Im Kaxu Solar Facility<br>Attention: President or General Counsel<br>60 Wall Street, 16th Floor<br>MS NYC60-1630<br>New York, New York 10005<br>United States of America<br>Telefax: 1-646-961-3317<br>Telephone: 1-212-250-4012<br>E-mail: randy.kahn@db.com<br>deisilania.gomes@db.com<br><br>**Deutsche Bank**<br>c/o Erin Broderick<br>Baker & McKenzie LLP<br>300 East Randolph Street, Suite 5000<br>Chicago, Illinois 60601<br>T: (312) 861-8935<br>F: (312) 698-2698<br>M: (312) 813-1984<br>Erin.Broderick@bakermckenzie.com |
| Export-Import Bank of the United States | **Export-Import Bank of the United States**<br>Attention: Vice President – Asset Management or General Counsel<br>Division of General Counsel<br>811 Vermont Avenue, N.W.<br>Washington, D.C. 20571-0002<br>United States of America<br>Fax: 1-202-565-3625 (Asset Management Division)<br>1-202-565-3380 (Bank-wide)<br>Telephone: 1-202-565-3600<br>Email: amd.credit@exim.gov<br><br>**U.S. Attorney's Office**<br>Attention: Civil Process Clerk<br>1007 Orange Street<br>Suite 700<br>Wilmington, DE 19801 |

| | |
|---|---|
| | **U.S. Department of Justice**<br>Attention: Justice Management Division<br>950 Pennsylvania Avenue, NW<br>Room 1111<br>Washington, DC 20530 |
| Banco de Caja España de Inversiones, Salamanca y Soria, S.A. | **Banco de Caja España de Inversiones, Salamanca y Soria, S.A.**<br>Attention: President or General Counsel<br>C/ Marqués de Villamagna 6,<br>28001 - Madrid<br>Spain<br><br>**Banco de Caja España de Inversiones, Salamanca y Soria, S.A.**<br>Attention: President or General Counsel<br>Avda. Madrid 120<br>24005 - León<br>Spain |
| Banco de Sabadell, S.A. | **Banco de Sabadell, S.A.**<br>Attention: President or General Counsel<br>Pl. Sant Roc, 20,<br>08201 - Sabadell<br>Spain<br><br>**Banco de Sabadell, S.A.**<br>Attention: President or General Counsel<br>Pl. Cataluña, 1<br>08201 - Sabadell<br>Spain |
| Banco Popular Español, S.A. | **Banco Popular Español, S.A.**<br>Attention: President or General Counsel<br>C/ Velazquez 34,<br>28001 - Madrid<br>Spain |
| Banco Santander, S.A. | **Banco Santander, S.A.**<br>Attention: President or General Counsel<br>Gran Vía de Hortaleza,3 Edificio Pedreña<br>(1ª planta)<br>28033 – Madrid<br>Spain |

| | |
|---|---|
| Bank of America National Association, Sucursal en España | **Bank of America National Association, Sucursal en España**<br>Attention: President or General Counsel<br>Plaza Pablo Ruiz Picasso, 1<br>28020 - Madrid<br>Spain |
| Bankia, S.A. | **Bankia, S.A.**<br>Attention: President or General Counsel<br>Edificio Bankia C/ Gabriel García Márquez, 1<br>28232 Las Rozas - Madrid<br>Spain |
| Bankinter, S.A. | **Bankinter, S.A.**<br>Attention: President or General Counsel<br>Avda. Llano Castellano 13, 2ª planta<br>25034 - Madrid<br>Spain |
| Banque Marocaine du Commerce Exterieur International, S.A.U. | **Banque Marocaine du Commerce Exterieur International, S.A.U.**<br>Attention: President or General Counsel<br>C/ Serrano 59<br>28006 - Madrid<br>Spain |
| Caixabank, S.A. | **Caixabank, S.A.**<br>Attention: President or General Counsel<br>Avda. Diagonal, 621- 629<br>08028 - Barcelona<br>Spain<br><br>Attention: President or General Counsel<br>C/ Provençals 39pl 1ª<br>08019 - Barcelona<br>Spain |
| Citibank International PLC, Sucursal en España | **Citibank International PLC, Sucursal en España**<br>Attention: President or General Counsel<br>C/ José Ortega y Gasset, 29<br>28006 - Madrid<br>Spain |

| | |
|---|---|
| Crédit Agricole Corporate and Investment Bank, Sucursal en España | **Crédit Agricole Corporate and Investment Bank, Sucursal en España**<br>Attention: President or General Counsel<br>Paseo de la Castellana, 1<br>28046 - Madrid<br>Spain |
| Crédit Lyonnais S.A. | **Crédit Lyonnais S.A.**<br>Attention: President or General Counsel<br>18 rue de la République,<br>69000 Lyon<br>France |
| HSBC Bank PLC, Sucursal en España | **HSBC Bank PLC, Sucursal en España**<br>Attention: President or General Counsel<br>Torre Picasso 1, Planta 33<br>28020 - Madrid<br>Spain |
| Instituto de Crédito Oficial | **Instituto de Crédito Oficial**<br>Attention: President or General Counsel<br>Paseo del Prado, 4<br>28014 - Madrid<br>Spain |
| Kutxabank, S.A. | **Kutxabank, S.A.**<br>Attention: President or General Counsel<br>C/ Gran Via Don Diego López de Haro, 30 - 32 Bilbao Bizkaia<br>Spain<br><br>**Kutxabank, S.A.**<br>Attention: President or General Counsel<br>C/ Garibai, 15<br>20004 –Donostia, San Sebastian<br>Spain |
| Morgan Stanley Bank International Limited | **Morgan Stanley Bank International Limited**<br>Attention: President or General Counsel<br>25 Cabot Square Canary Wharf<br>London E144QA<br>United Kingdom |

| | |
|---|---|
| Natixis S.A. Sucursal en España | **Natixis S.A. Sucursal en España**<br>Attention: President or General Counsel<br>Paseo de Recoletos, 7 - 9<br>Madrid<br>Spain |
| NCG Banco, S.A. | **NCG Banco, S.A.**<br>Attention: President or General Counsel<br>Rúa Nueva 30, 15003 A Coruña<br>Avda. García Barbón, 1 - 3ªPlanta<br>36201 - Vigo<br>Spain |
| Société Générale, Sucursal en España | **Société Générale, Sucursal en España**<br>Attention: President or General Counsel<br>29 Boulevard Haussmann<br>75009 - Paris<br>France<br><br>**Société Générale, Sucursal en España**<br>Attention: President or General Counsel<br>Torre Picasso. Plaza de Pablo Ruiz Picasso, 1<br>28020 - Madrid<br>Spain |
| Sumitomo Mitsui Banking Corporation Europe Limited | **Sumitomo Mitsui Banking Corporation Europe Limited**<br>Attention: President or General Counsel<br>99 Queen Victoria Street<br>London EC4V 4EH<br>United Kingdom<br><br>c/o CLIFFORD CHANCE US LLP<br>Sarah Nye Campbell<br>31 West 52nd Street<br>New York, NY 10019<br>Direct Dial: +1 212 878 3427<br>Switchboard: +1 212 878 8000<br>Fax: +1 212 878 8375<br>sarah.campbell@cliffordchance.com<br>http://www.cliffordchance.com |

| | |
|---|---|
| Unicaja Banco, S.A. | **Unicaja Banco, S.A.**<br>Attention: President or General Counsel<br>Avda. Andalucia<br>10 - 12 , 3ª planta<br>29007 - Málaga<br>Spain |
| Bank of America Merrill Lynch International Ltd | **Bank of America Merrill Lynch International Ltd**<br>Attention: President or General Counsel<br>2 King Edward Street<br>London EC1A 1HQ U<br>United Kingdom |
| Citigroup Global Markets Limited | **Citigroup Global Markets Limited**<br>Attention: President or General Counsel<br>Citigroup Centre, Canadá Square, Canary Wharf, London E14 5LB<br>United Kingdom |
| HSBC Bank PLC | **HSBC Bank PLC**<br>Attention: President or General Counsel<br>8 Canada Square,<br>London E14 5HQ<br>United Kingdom |
| Ako Engineering Inc | **Ako Engineering Inc**<br>Attention: President or General Counsel<br>2550 Gray Falls Drive, Suite 203<br>Houston, TX 77077 |
| Swagelok Capital Project Company | **Swagelok Capital Project Company**<br>Attention: President or General Counsel<br>31500 Aurora road<br>Solon, Ohio 44139 |
| Kalglas International Inc | **Kalglas International Inc**<br>Attention: President or General Counsel<br>937 Shotgun Road<br>Sunrise, FL 33326 |
| CITIBANK, N.A. | **Citibank, N.A.**<br>Attention: Barbara Kobelt or General Counsel<br>388 Greenwich Street, 25th Floor<br>New York, NY 10013<br>Facsimile: (646) 862-9079 |

| | |
|---|---|
| | Telephone: (212) 816-1063<br>E-mail: barbara.kobelt@citi.com |
| GE Power Systems, Inc. | **GE Power Systems, Inc.**<br>Attention: President or General Counsel<br>1209 Orange Street<br>Building 59E<br>Wilmington, DE 19801<br>United States |
| GE Mobile Water, Inc. | **GE Mobile Water, Inc.**<br>Attention: President or General Counsel<br>5900 Silver Creek Valley Rd<br>San Jose, CA 95138<br>USA |
| GE Energy Management Services Inc. | **GE Energy Management Services Inc.**<br>Attention: President or General Counsel<br>4200 Wildwood Parkway<br>Atlanta, GA 30339<br>United States |
| LACC-JNK, Inc. | **LACC-JNK, Inc.**<br>Attention: President or General Counsel<br>4140 East Baseline Road<br>Mesa, AZ 85206 Arizona<br>Phone: (480) 545-2072 |
| Flowserve US, Inc. | **Flowserve US, Inc.**<br>Attention: President or General Counsel<br>222 West Las Colinas Boulevard<br>Suite 1500<br>Irving, TX 75039<br>United States |
| Industrial and Process Equipment | **Industrial and Process Equipment**<br>Attention: President or General Counsel 6823<br>Hazelwood Ave.<br>St. Louis, MO 63134 |
| Katzen International, Inc. | **Katzen International, Inc.**<br>Attention: President or General Counsel<br>2303 Wall St. Suite K<br>Cincinnati, OH 45212-2789<br>USA |

| | |
|---|---|
| Hyspan Precision Products, Inc. | **Hyspan Precision Products, Inc.**<br>Attention: President or General Counsel<br>6600 E. 15 Mile Rd.<br>Sterling Heights, MI 48312 |
| Dresser-Rand Company | **Dresser-Rand Company**<br>Attention: President or General Counsel<br>West 8 Tower, Ste. 1000<br>10205 Westheimer Rd.<br>Houston, Texas 77042, United States |
| Bloomberg Finance L.P. | **Bloomberg Finance L.P.**<br>Attention: President or General Counsel<br>731 Lexington Ave<br>New York, NY, 10022 United States |
| Realization Technologies, Inc. | **Realization Technologies, Inc.**<br>Attention: President or General Counsel<br>441 North Wolfe Road<br>Sunnyvale, CA 94085<br>United States |
| Saba Software Inc. | **Saba Software Inc.**<br>Attention: President or General Counsel<br>2400 Bridge Parkway<br>Redwood City, CA 94065<br>USA |
| Zurich Insurance Public Limited Company | **Zurich Insurance plc Niederlassung fur**<br>Attention: President or General Counsel<br>Deutschland Solmstrasse 27-37<br>60487 Frankfurt am Main<br>Germany<br><br>**Zurich Insurance Public Limited Company**<br>c/o Sam H. Poteet, Jr.<br>MANIER & HEROD<br>150 4th Ave North, Suite 2200<br>Nashville, TN 37219<br>Tel: (615) 742-9408<br>Fax: (615) 242-4203<br>Email: SPOTEET@manierherod.com |
| Zurich American Insurance Company | **Zurich American Insurance Company**<br>Attention: President or General Counsel<br>1400 American Lane, Tower 2, Fl. 5 |

| | |
|---|---|
| | Schaumberg, IL 60196<br><br>**Zurich American Insurance Company**<br>c/o Sam H. Poteet, Jr.<br>MANIER & HEROD<br>150 4th Ave North, Suite 2200<br>Nashville, TN 37219<br>Tel: (615) 742-9408<br>Fax: (615) 242-4203<br>Email: SPOTEET@manierherod.com |
| Liberty Mutual Insurance Company | **Liberty Mutual Insurance Company**<br>Attention: President or General Counsel<br>175 Berkeley Street<br>Boston, MA 02116<br><br>**Liberty Mutual Insurance Company**<br>c/o Sam H. Poteet, Jr.<br>MANIER & HEROD<br>150 4th Ave North, Suite 2200<br>Nashville, TN 37219<br>Tel: (615) 742-9408<br>Fax: (615) 242-4203<br>Email: SPOTEET@manierherod.com |
| United States Department of Energy | **United States Department of Energy**<br>Loan Guarantee Program<br>Attention: Director, Portfolio Management or General Counsel<br>1000 Independence Ave., SW<br>Washington, D.C. 20585<br><br>**United States Department of Energy**<br>Loan Guarantee Program<br>Attention: Kimberly Arigbede or General Counsel<br>1000 Independence Ave., SW<br>Washington, D.C. 20585<br><br>**United States Department of Energy**<br>c/o Danielle A. Pham<br>Trial Attorney, Civil Division<br>U.S. Department of Justice<br>1100 L Street, NW<br>Washington, D.C. 20005<br>Telephone: (202) 514-7451 |

| | |
|---|---|
| | Facsimile: (202) 514-9163<br>E-mail: danielle.pham@usdoj.gov<br><br>**United States Department of Energy**<br>c/o Victor Zhao<br>Trial Attorney, Civil Division<br>U.S. Department of Justice<br>1100 L Street, NW<br>Washington, D.C. 20005<br>Email: Victor.W.Zhao@usdoj.gov<br><br>**U.S. Attorney's Office**<br><u>Attention</u>: Civil Process Clerk<br>1007 Orange Street<br>Suite 700<br>Wilmington, DE 19801<br><br>**United States Department of Energy**<br>c/o U.S. Department of Justice<br>Justice Management Division<br>950 Pennsylvania Avenue, NW<br>Room 1111<br>Washington, DC 20530 |
| Atlantic Specialty Insurance Company (OneBeacon) | **Atlantic Specialty Insurance Company**<br><u>Attention</u>: President or General Counsel<br>601 Carlson Parkway, Suite 700<br>Minnetonka, MN 55305<br><br>**Atlantic Specialty Insurance Company**<br><u>Attention</u>: Terry Dahl or General Counsel<br>OneBeacon Surety Group<br>77 Water St, 17th Floor<br>New York, NY 10005<br>Phone: 212-440-6550<br>Cell: 201-401-1882<br>Email: tdahl@onebeacon.com |
| Fidelity National Title Insurance Company | **Fidelity National Title Insurance Company**<br><u>Attention</u>: President or General Counsel<br>601 Riverside Avenue<br>Jacksonville, FL 92705-5542<br><br>**Fidelity National Title Insurance Company**<br>c/o Sam H. Poteet, Jr.<br>MANIER & HEROD |

| | |
|---|---|
| | 150 4th Ave North, Suite 2200<br>Nashville, TN 37219<br>Tel: (615) 742-9408<br>Fax: (615) 242-4203<br>Email: SPOTEET@manierherod.com |
| Banks | **Bank Creditors of Abengoa, S.A.**<br>c/o Andrew G. Dietderich<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004-2498<br><br>**Bank Creditors of Abengoa, S.A.**<br>c/o Alexa J. Kranzley<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004-2498<br>T: (212) 558-7893<br>F: (212) 291-9373<br>C: (917) 587-0849<br>kranzleya@sullcrom.com |
| Bondholders | **Bondholders of Abengoa, S.A.**<br>c/o Leah Edelboim<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br><br>**Bondholders of Abengoa, S.A.**<br>c/o Jennifer C. DeMarco<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br><br>Direct Dial: +1 212 878 8125<br>Facsimile: +1 212 878 8375<br>jennifer.demarco@cliffordchance.com |
| Daniel Moreaux | **Daniel Moureaux**<br>c/o Marc Gorrie Pomerantz LLP<br>Attention: Joseph Alexander Hood II<br>600 Third Avenue, 20th Floor<br>New York, NY 10016<br><br>**Daniel Moureaux**<br>c/o Marc Gorrie Pomerantz LLP |

| | |
|---|---|
| | Attention: Jeremy Alan Lieberman<br>600 Third Avenue, 20th Floor<br>New York, NY 10016<br><br>**Daniel Moureaux**<br>c/o Jeffrey C. Block<br>Block & Leviton LLP<br>155 Federal Street, Suite 400<br>Boston, MA 02110<br><br>**Daniel Moureaux**<br>c/o Steven P. Harte<br>Block & Leviton LLP<br>155 Federal Street, Suite 400<br>Boston, MA 02110<br><br>**Daniel Moureaux**<br>c/o Erica Langsen<br>Block & Leviton LLP<br>155 Federal Street, Suite 400<br>Boston, MA 02110 |
| Water Well Service Inc. | **Water Well Service Inc.**<br><u>Attention:</u> John B. Barriage or General Counsel<br>7850 S. Procyon Avenue<br>Las Vegas, NV 89139 S |
| Portland General Electric Company | **Portland General Electric Company**<br>c/o David A. Bedsoe<br>Perkins Coie LLP<br>1120 N.W. Couch Street, 10th Floor<br>Portland, OR 97209-4128 |
| Michael Francisco | **Michael Francisco**<br>c/o Nicholas I. Porritt<br>Levi & Korsinsky, LLP<br>30 Broad Street, 24th Floor<br>New York, New York 10004<br><br>**Michael Francisco**<br>c/o Julie J. Sun<br>Levi & Korsinsky, LLP<br>30 Broad Street, 24th Floor |

| | |
|---|---|
| | New York, New York 10004<br><br>**Michael Francisco**<br>c/o Adam M. Apton<br>Levi & Korsinsky, LLP<br>30 Broad Street, 24th Floor<br>New York, New York 10004 |
| PAMCAH-UA Local 675 Pension Fund | **PAMCAH-UA Local 675 Pension Fund**<br>c/o David Avi Rosenfeld<br>Robbins Geller Rudman & Dowd LLP (LI)<br>58 South Service Road, Suite 200<br>Melville, NY 11747 |
| Jesse and Arlette Sherman | **Jesse and Arlette Sherman**<br>c/o Adam M. Apton<br>Levi & Korsinsky LLP (DC)<br>1101 30th, Street, NW<br>Washington, DC 20007 |
| Ian Bothwell | **Ian Bothwell**<br>c/o Jeremy Alan Lieberman<br>Pomerantz LLP<br>600 Third Avenue, 20th Floor<br>New York, NY 10016 |
| Silicon Valley Bank | **Silicon Valley Bank**<br>c/o Michael A. Clithero<br>Lathrop & Gage LLP<br>7701 Forsyth Boulevard, Suite 500<br>Clayton, MO 63105<br><br>**Silicon Valley Bank**<br>c/o Justin J. Wolosz<br>Choate Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110 |

# EXHIBIT C
## (Appointment of Foreign Representative (with English Translation))

JOSÉ MIGUEL GARCIA LOMBARDIA
NOTARIO
José Ortega y Gasset,5-1°Izda.
Teléf.917817170 – Fax. 917817180
28006 MADRID

NOTARIA DE D. JOSE MIGUEL GARCIA LOMBARDIA
NIHIL PRIUS FIDE
PROTOCOLO
28 MAYO DE 1862
- MADRID -

NÚMERO MIL TREINTA.------------------------------------------------------

ESCRITURA DE PODER ESPECIAL OTORGADA POR: ABENGOA GREENFIELD S.A.U, ABENGOA FINANCE S.A.U.,- ABENGOA GREENBRIDGE S.A.U., ABENGOA CONCESSIONS, S.L., SIEMA TECHNOLOGIES, S.L, ASA DESULFURACIÓN, S.A., SOCIEDAD INVERSORA EN ENERGÍA Y MEDIO AMBIENTE, S.A., -ABENGOA SOLAR, S.A., ABENGOA BIOENERGÍA S.A., ABENGOA WATER S.L, ABENGOA HIDRÓGENO S.A., ABENGOA RESEARCH, S.L.,.- EUROPEA DE CONSTRUCCIONES METÁLICAS, S.A., ABEINSA INGENIERÍA Y CONSTRUCCIÓN INDUSTRIAL, S.A., SIMOSA SERVICIOS INTEGRALES DE MANTENIMIENTO Y OPERACIÓN S.A., SIMOSA IT S.A, CENTRO TECNOLÓGICO PALMAS ALTAS S.A, GESTIÓN INTEGRAL DE RECURSOS HUMANOS S.A., ABENGOA ENERGY CROPS S.A. Y SIEMA INVEST MENTS S.L.

En Madrid, mi residencia, a diecisiete de marzo de dos mil dieciséis

Ante mí, JOSE-MIGUEL GARCIA LOMBARDIA, notario del Colegio Notarial de Madrid, -----------------------------------------------------------------

---------------------------------------**COMPARECE**--------------------------------

**DON JOAQUÍN FERNÁNDEZ DE PIÉROLA MARÍN**, mayor de edad, con domicilio a estos efectos en Sevilla-41014, en Campus Palmas Altas, calle Energía Solar, nº 1 y con D.N.I./N.I.F. número

16.587.705-J. -------------------------------------------------------------------

**INTERVIENE** en nombre y representación como representante persona física de la sociedad anónima denominada "ABENGOA S.A.", domiciliada en 41014-Sevilla, Campus Palmas Altas, Cl. Energía Solar nº 1, con C.I.F. número A41002288; de duración indefinida, constituida, como sociedad de responsabilidad limitada, con la denominación de "Abengoa, S.L.", por escritura ante el notario de Sevilla, don Francisco Monedero Ruiz, de 4 de enero de 1941; inscrita en el Registro Mercantil de Sevilla, al tomo 573, libro 362, folio 94, Hoja SE-1507, que a su vez es el Administrador Unico de las siguientes sociedades:.-----------------------------------------------------

1.- **ABENGOA GREENFIELD S.A.U.**, con CIF número A-90153677,y domicilio social en Sevilla, calle Energía Solar número 1, Campus Palmas Altas, CP 41014.--------------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al folio 43, del tomo 5.904, Sección 8ª, hoja SE-102.300, inscripción 1ª. ----------------------

La sociedad tiene por objeto: "la explotación y desarrollo de proyectos, actividades y negocios que guarden relación con la promoción de la utilización de fuentes de energías renovables, sistemas de transporte de energía eléctrica o mejoras de eficiencia energética en procesos industriales en los campos de energía, medioambiente e industria, así como actividades relativas a la construcción, montaje e instalación de obras eléctricas, electrónicas, mecánicas, hidráulicas, electromecánicas, de telecomunicaciones o

NOTARIA DE D. JOSE MIGUEL GARCIA LOMBARDIA
NIHIL PRIUS FIDE
PROTOCOLO
28 MAYO DE 1862
- MADRID -

ingeniería civil, ya sea de forma directa o de forma indirecta mediante la participación en el capital social de otras compañías por cualquier título, suscripción, adquisición, enajenación, cesión o gravamen de todo tipo de acciones o participaciones sociales, así como de titulas representativos de empréstitos emitidos o no en serie; financiación por cualquier titulo admitido en Derecho, concesión de empréstitos, asunciones de deuda, afianzamientos de todo tipo, prestación de fianzas, avales o cualquier otro tipo de garantías sobre obligaciones propias o ajenas; emisiones de participaciones preferentes u otros instrumentos financieros de deuda, pudiéndose destinar los ingresos a financiar las operaciones de la sociedad matriz de esta sociedad o de otras sociedades del grupo o subgrupo consolidable de dicha sociedad." Asimismo, manifiesta el compareciente que el CNAE correspondiente a la actividad principal de la Sociedad es el número 6.499. -----------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 8 de enero de 2016, ante el notario de Sevilla don Jose Ruiz Granados, con el numero 39 de protocolo, que causó la inscripción 12 de la hoja social y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr.

Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ----------------------

2.- **ABENGOA FINANCE S.A.U**., con CIF número A-91900266, y domicilio social en Sevilla, calle Energía Solar número 1, Campus Palmas Altas, CP 41014 -------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla al folio 21 del tomo 5288 hoja SE 87408 inscripción 1ª. -------------------------------------------------

La sociedad tiene por objeto la realización de emisiones de participaciones preferentes y/o otros instrumentos financieros. --------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 8 de enero de 2016, ante el notario de Sevilla don Jose Ruiz Granados, con el numero 36 de protocolo, que causó la inscripción 29 de la hoja social y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ----------------------

3.- **ABENGOA GREENBRIDGE S.A.U.,** con CIF número A-90158452, y domicilio social en Sevilla, calle Energía Solar número 1, Campus Palmas Altas, CP 41014------------------------------------------

NOTARIA DE D. JOSE MIGUEL GARCIA LOMBARDIA - MADRID - NIHIL PRIUS FIDE PROTOCOLO 28 MAYO DE 1862

Inscrita en el Registro Mercantil de Sevilla al folio 53 del tomo 5913 hoja SE 102555 inscripción 1ª.-------------------------------------------------

La sociedad tiene por objeto, entre otras actividades la realización y desarrollo de proyectos que guarden relación con la promoción y desarrollo de fuentes de energía renovables y sistemas de transporte de energía eléctrica.------------------------------------------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 8 de enero de 2016, ante el notario de Sevilla don Jose Ruiz Granados, con el numero 41 de protocolo, que causó la inscripción 50 de la hoja social y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ----------------------

4.- **ABENGOA CONCESSIONS, S.L.**, con CIF número B-90108044,y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014 -----------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al tomo 5784, folio 161, hoja número SE-99466, inscripción 1ª. --------------------------------------

Tiene como objeto social la organización y explotación de negocios y actividades que guarden relación con la realización con la promoción de la utilización de fuentes de energía renovables o mejoras de eficiencia energética. ------------------------------------------------------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 28 de enero de 2016, ante el notario de Sevilla don Jose Ruiz Granados, con el numero 147 de protocolo, y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ----------------------

5.- **SIEMA TECHNOLOGIES, S.L.,** con CIF número B-84023340 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014 -------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al tomo 5489, folio 212, hoja número SE-92605, inscripción 1ª. --------------------------------------

Constituye su objeto social, entre otros, la organización y promoción de negocios y actividades que guarden relación con la promoción de fuentes de energía renovables. -------------------------------------------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 28 de enero de 2016, ante el notario de Sevilla don Jose Ruiz Granados, con el numero 148 de

protocolo, y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder

6.- **ASA DESULFURACIÓN, S.A.**, con CIF número A-48090823 y con domicilio social en Etxebarri (Vizcaya), Polígono Barrando, Calle Santa Ana, n° 26, CP 48450 CP----------------------------------------------

Inscrita en el Registro Mercantil de Vizcaya, al tomo 3486, folio 122, hoja número BI-18744, inscripción 38ª.---------------------------------------

Constituye su objeto social principal la construcción de una fábrica para la obtención de ácido sulfúrico y su posterior explotación, y la compra, venta, almacenamiento, distribución de ácido sulfúrico, oleum y derivados del mismo. También la compra, venta, almacenamiento, distribución, tratamiento de materias primas, residuos, chatarras y desechos de origen industrial. ---------------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 15 de febrero de 2016, ante el notario de Sevilla don Jose Ruiz Granados, con el numero 285 de protocolo, y nombrado el compareciente como representante persona física en

virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ----------------------

7.- **SOCIEDAD INVERSORA EN ENERGÍA Y MEDIO AMBIENTE, S.A.,** con CIF número A-41750977 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014 ------------

Inscrita en el Registro Mercantil de Sevilla al tomo 2.268, folio 1, hoja SE-25060, inscripción 1ª. -----------------------------------------------------

Constituye su objeto social: La organización y explotación de negocios y actividades que guarden relación con la promoción de la utilización de fuentes de energías renovables o mejoras de eficiencia energética en procesos industriales en los campos de la energía, medioambiente e industria, mediante la inversión directa o indirecta, suscripción, adquisición, enajenación, cesión o gravamen de todo tipo de acciones y participaciones sociales, por cualquier título, gratuito u oneroso, así como de títulos representativos de empréstitos, asunciones de deudas, afianzamientos de todo tipo, prestación de fianzas, avales, o cualquier otro tipo de garantías sobre obligaciones ajenas o propias. Tales actividades podrán ser desarrolladas por la Sociedad en forma total y directa o parcialmente de modo indirecto, mediante la titularidad de acciones o participaciones de Sociedades de idéntico o análogo objeto. -----------

NOTARIA DE D. JOSE MIGUEL GARCIA LOMBARDIA
NIHIL PRIUS FIDE
PROTOCOLO
28 MAYO DE 1862
- MADRID -

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 5 de febrero de 2016, ante el notario de Sevilla don Jose Ruiz Granados, con el numero 199 de protocolo, y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder.----------------------

8.- **ABENGOA SOLAR, S.A.,** con CIF número A-91609982, y domicilio social en Sevilla, Calle Energía Solar núme"o 1, Campus Palmas Altas, CP 41014 de duración indefinida, constituida bajo la denominación de "SOLÚCAR SOLAR, S.A.", por escritura otorgada ante el notario de Sevilla, don José Ruiz Granados, el día 18 de diciembre de 2006, con el número 7.185 de orden. Inscrita en el Registro Mercantil de Sevilla, tomo 4.568, folio 1, hoja número SE-71.375, inscripción 1ª.----------------------------------------------------------

Constituye su objeto social la organización y explotación de negocios y actividades que guarden relación con la promoción de la utilización de fuentes de energía renovables o mejoras de eficiencia energética de procesos industriales en los campos de la Energía Solar,

Medioambiente e Industria, incluyendo la investigación y desarrollo de aplicaciones, tecnologías y materiales, el diseño, la fabricación y el montaje, la construcción, operación y mantenimiento de instalaciones relacionadas, la importación y comercialización de estos productos o derivados, así como servicios de asesoramiento y apoyo incluidos los de gerencia financieras, económica, legal de organización empresarial, de control y auditoria, fiscal, de recursos humanos, de divulgación, de gestión comercial, de aprovisionamiento y gerencia de riesgos. La sociedad no desarrollará ninguna actividad para la que las leyes exijan licencias o habilitación administrativa en tanto no se hayan obtenido.---------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 22 de diciembre de 2015, ante el notario de Madrid, don Jose Miguel García Lombardía con el numero 5935 de orden, que causó la inscripción 38 de protocolo, y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ----------------------

9.- **ABENGOA BIOENERGÍA S.A.,** con CIF número A-91213249 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014--------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al folio 104, del tomo 3.587, hoja SE-48.688, inscripción 11ª. ------------------- -------------------

Constituye su objeto social el desarrollo, promoción, construcción y explotación de plantas industriales, propias o de terceros, de fabricación de biocarburantes tales como el bioetanol, biodiesel. ---- La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 15 de febrero de 2016, ante el notario de Sevilla don Jose Ruiz Granados con el numero 281 de orden, y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder-----------------------------------------------------

10.- **ABENGOA WATER S.L.,** con CIF número B-91.826.958, y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014---------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al tomo 5131, folio 150, hoja número SE-83802, inscripción 1ª---------------------------------------

Constituye el objeto social de la compañía : la construcción,

reparación, rehabilitación, consolidación, restauración, decoración, ornamentación, conservación, mantenimiento, tratamiento y distribución de toda clase de obras, de edificaciones, hidráulicas, viales y pistas, marítimas, movimientos de tierras y perforaciones, sondeos, inyecciones y pilotajes, puentes, viaductos y todo tipo de obra civil, montes y jardines y mobiliario urbano, incluso los servicios de consultoría, proyectos, asistencia técnica y dirección de obras.----

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 8 de febrero de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 214 de orden, y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ----------------------

11.- **ABENGOA HIDRÓGENO S.A.,** con CIF número N° A-91272682 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014 -------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al tomo 3659, folio 173, hoja número SE52060, inscripción 1ª -----------------------------------------

Constituye el objeto social de la compañía, la organización y explotación de negocios que guarden relación con estudios informes, proyectos dirección de obras y promoción de instalaciones de

NOTARIA DE D. JOSE MIGUEL GARCIA LOMBARDIA
NIHIL PRIUS FIDE
PROTOCOLO
28 MAYO DE 1862
- MADRID -

energía eléctrica mediante pilas de combustible en sus diferentes tecnologías y/o mediante el uso del hidrogeno -----------------------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 8 de febrero de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 221 de orden, y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder-----------------------

12.- **ABENGOA RESEARCH, S.L.,** con CIF número B-91.925.149 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al folio 145, del tomo 5.345 General de Sociedades, hoja SE-88.894, inscripción 1ª.---------

Constituye su objeto social la realización de actividades de investigación y desarrollo tecnológico en el ámbito de la energía y el desarrollo sostenible. Incluye la generación de conocimiento, su aplicación, la generación y explotación de patentes u otros títulos de propiedad intelectual e industrial, la elaboración de estudios,

informes y proyectos científico-técnicos, así como la prestación de servicios, entre otros, los de asistencia técnica, y asesoría y consultoría en dicho ámbito. Igualmente, comprende la difusión de los avances científicos y técnicos oportunos, así como la formación de profesionales en dichas áreas relacionadas, la organización de foros, jornadas técnicas y actividades similares y/o asociadas.. -------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 15 de febrero de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 284 de orden, y nombrado el compareciente como representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder -----------------------

13.- **EUROPEA DE CONSTRUCCIONES METÁLICAS, S.A**., con CIF número A-41031303 y con domicilio social en Ctra. A-376, Sevilla-San Pedro de Alcántara, km 22,3, Utrera (Sevilla)— ------------

Inscrita en el Registro Mercantil de Sevilla, al folio 125 del tomo 242, libro 95 de la sección 3ª de Sociedades, hoja SE-20.054 (antes 6.145), inscripción 1ª.-----------------------------------------------------------

Constituye su objeto social la organización y explotación de actividades y negocios que guarden relación con la fabricación, la construcción de todo tipo de señalizaciones y balizamientos viales,

así como la construcción de obras civiles necesarias; la fabricación, la construcción, el montaje, la reparación, la prueba, o ensayo, la adquisición, la venta y el comercio en general, tanto por su cuenta como por cuenta de terceros, para sí mismo o para particulares o sociedades, conjuntamente o en participación o bajo cualquier forma de toda clase de estructuras u objetos metálicos, mecánicos, de hormigón o cualquier otro material, tales como apoyos, herrajes y equipos para líneas de alta y baja tensión, antenas para comunicaciones, soportes para iluminación, utillajes y piezas, así como la de toda clase de servicios relacionados con pruebas y ensayos de tales estructuras como la construcción, organización, gestión y explotación de cuantas instalaciones, talleres y almacenes sean necesarios o útiles para la buena marcha de la empresa, y el diseño, fabricación y ventas de artículos metálicos, compuestos por chapas y perfiles de cualquier clase de material, incluidos los tratamientos de preparación y acabado de superficie, para el correcto acabado del producto.. ----------------------------------------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 5 de febrero de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 198 de orden, y nombrado el compareciente como representante persona física en

virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder -----------------------

14.- **ABEINSA INGENIERÍA Y CONSTRUCCIÓN INDUSTRIAL, S.A.,** con CIF número A-91251355 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014 ------------

Inscrita en el Registro Mercantil de Sevilla, al tomo 3.603, folio 23, sección 8ª, hoja SE-50.910. ------------------------------------------------

Constituye su objeto social la organización y explotación de negocios y actividades en los campos de la Energía, Medioambiente e Industria, mediante la inversión, directa o indirecta, suscripción, adquisición, enajenación, cesión o gravamen de todo tipo de acciones y participaciones sociales, por cualquier título, gratuito u oneroso, así como de títulos representativos de empréstitos, emitidos o no en serie; financiación por cualquier título admitido en derecho, concesión de empréstitos, asunciones de deudas, afianzamientos de todo tipo, prestación de fianzas, avales y cualquier tipo de garantías sobre obligaciones ajenas o propias. ------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica en virtud de escritura otorgada el 1 de febrero de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 171 de orden, y nombrado el compareciente como representante persona física en

virtud de escritura otorgada el 11 de marzo de 2016 ante el mismo notario Sr. Ruiz Granados con el numero 532 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ---------------------- -

15.- **SIMOSA SERVICIOS INTEGRALES DE MANTENIMIENTO Y OPERACIÓN S.A.,** con CIF número A41763582 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014- ---------------------------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla en el tomo 2.297, folio 13, hoja número SE-25.554, inscripción 1ª. ------------------ -----------------

Constituye su objeto social principal la explotación de negocios de servicios de mantenimiento integral de edificios, oficinas, industrias, viviendas, incluyendo electricidad, fontanería, decoración, jardinería, fax, fotocopiadoras, seguridad y extinción de incendios. ----------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica y el compareciente nombrado representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 549 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas

acreditadas por el compareciente para el otorgamiento de este poder. ------------------------------------------------------------------------------ -

16.- **SIMOSA IT S.A**, con CIF número A91849166 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014- ------------------------------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al folio 10, del tomo 5.169, hoja SE-84.614, inscripción 1ª. ------------------------

Constituye su objeto social la prestación de servicios de captura de información por medios electrónicos, informáticos y telemáticos, tales como, entre otros, trabajos de mecanografía y grabación o captura de datos por medios electrónicos y digitalización o conversión de formatos de documentos mediante el uso de las tecnologías de la información y las comunicaciones. 2.- Servicios de desarrollo y mantenimiento de programas de ordenador, tales como, entre otros, trabajos de planificación, análisis, diseño, construcción, pruebas y mantenimiento de sistemas de información (programa y aplicaciones informáticas). 3.- Servicios de mantenimiento y reparación de equipos e instalaciones informáticas y de telecomunicaciones, tales como, entre otros, trabajos de mantenimiento preventivo, correctivo o perfectivo y de reparación de equipos y sistemas físicos y lógicos para el tratamiento de la información, así como de los equipos emisores y receptores de la misma y sus correspondientes sistemas y medio de transmisión. 4.- Servicios de telecomunicaciones tales como, entre otros, servicios

de comunicación de voz y/o datos, alquiler de circuitos para la transmisión de voz y/o datos, la provisión de los medios técnicos y humanos necesarios para que los usuarios finales de las redes de telecomunicaciones accedan y tengan presencia en Internet y otros servicios de valor añadido sobre redes de telecomunicaciones. 5.- Servicios de explotación y control de sistemas informáticos e infraestructuras telemáticas, tales como, entre otros, trabajos asociados a la puesta en funcionamiento, el seguimiento, la gestión y control de equipos y sistemas informáticos y de las infraestructuras telemáticas, necesarias para la adecuada explotación de programas y aplicaciones informáticas. 6.- Servicios de certificación electrónica, tales como, entre otros, actividades de generación, expedición, gestión de certificados electrónicos y otros servicios relacionados tales como, servicios de autoridad de registro y de fechado electrónico, para firma electrónica, autenticación electrónica, confidencialidad y no repudio. 7.- Servicios de evaluación y certificación tecnológica tales como, entre otros, trabajos técnicos para diseñar, construir y ejecutar las pruebas que permitan la evaluación de un producto o sistema, respecto de unos criterios y métodos de evaluación, para determinar su comportamiento ante las características y funcionalidades que le son atribuidas y certificar los

resultados obtenidos. 8- Otros servicios informáticos o de telecomunicaciones. 9.- Organización y explotación de actividades y negocios relacionados con la realización, ingeniería, suministro, distribución, importación, exportación, compra y venta de servicios informáticos, instalaciones de telecomunicación y electrónicas. 10.- Servicio de Outsourcing de los sistemas de información y gestión. 11.- Desarrollo propio de los negocios de los clientes empresariales. 12.- Integración de soluciones y su mantenimiento. Ingeniería e integración de soluciones de redes corporativas. 13.- La prestación de aquellos servicios de carácter general que requieran las sociedades y de manera enunciativa pero no limitativa los servicios de gestión, administración, operaciones, calidad y asesoramiento jurídico de las distintas sociedades de su grupo. 14.- La administración, arrendamiento y explotación comercial e industrial – exceptuándose el arrendamiento financiero - de bienes inmuebles. --

La sociedad ABENGOA S.A. fue nombrada Administradora Unica y el compareciente nombrado representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 545 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ------------------------------------------------------------------------------

17.- **CENTRO TECNOLÓGICO PALMAS ALTAS S.A** con CIF

número A91371831 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014 -----------------------------
Inscrita en el Registro Mercantil de Sevilla, al folio 60, del tomo 3.963, sección 8, hoja SE-58.037, inscripción 1ª. ------------------------ -
Constituye su objeto social la realización de todo tipo de acciones para la adquisición, tenencia, administración, disposición, venta y en cualquier modo explotación de bienes inmuebles, rústicos o urbanos, cualquiera que fuere su calificación, y la realización de cualesquiera actividades inmobiliarias, sean de promoción, construcción o cualquier otro tipo de actividades relacionadas con el objeto anterior. Las actividades integrantes del objeto social podrán ser desarrolladas por las Sociedad, total o parcialmente, por sí o por medio de otras entidades de idéntico o análogo objeto, en las que la sociedad tenga o adquiera participación. -----------------------------------
La sociedad ABENGOA S.A. fue nombrada Administradora Unica y el compareciente nombrado representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 543 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este

poder. --------------------------------------------------------------------------------

18.- **GESTIÓN INTEGRAL DE RECURSOS HUMANOS S.A.** con CIF número A91241703 y domicilio social en Sevilla, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014- ------------------------------

Inscrita en el Registro Mercantil de Sevilla, al folio 157 del tomo 3.577 general de sociedades, hoja SE-50.384, inscripción 1ª. -------------------------

Constituye su objeto social las actividades para la gestión de empleados, asesoramiento en política de desarrollo profesional en administración, formación y selección de personal. --------------------------------------------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica y el compareciente nombrado representante persona física en virtud de escritura otorgada el 11 de marzo de 2016 ante el notario de Sevilla don Jose Ruiz Granados con el numero 551 de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. --------------------------------------------------------------------------------

19.- **"SIEMA INVESTMENT, S.L."**, domiciliada en **41014-Sevilla, CL. Energia Solar (CAMPUS PALMAS ALTAS), nº 1**, con C.I.F. número **B84023373**. -------------------------------------------------------------

Inscrita en el Registro Mercantil de Sevilla, al tomo 5489, folio 188, hoja número SE-92959.---------------------------------------------------------

Constituye su objeto social: desarrollo de nuevos negocios en el área de las telecomunicaciones, tecnologías de la información,

Internet y comercio electrónico.-----------------------------------------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica y el compareciente nombrado representante persona física en virtud de escritura otorgada el 17 de marzo de 2016 ante el notario de Madrid, don Jose Miguel Garcia Lombardia con el numero anterior de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. ------------------------------------------------------------------------------

20- **ABENGOA ENERGY CROPS S.A.** domiciliada en **41014-Sevilla, CL. Energia Solar (CAMPUS PALMAS ALTAS), nº 1**, con C.I.F. número **A90125196.-----------------------------------------------------**

Inscrita en el Registro Mercantil de Sevilla, Hoja SE-100840 Tomo 5834 Folio 16 -------------------------------------------------------------

Constituye su objeto social: actuar como sociedad holding o de inversión, participando en otras sociedades, pudiendo al efecto constituir o participar, en concepto de socio o accionista, en otras sociedades, cualquiera que sea su naturaleza u objeto -----------------

La sociedad ABENGOA S.A. fue nombrada Administradora Unica y el compareciente nombrado representante persona física en virtud de escritura otorgada el 17 de marzo de 2016 ante el notario de

Madrid, don Jose Miguel García Lombardía con el numero anterior de orden, de la que me exhibe copia autorizada, siendo a mi juicio y bajo mi responsabilidad suficientes las facultades representativas acreditadas por el compareciente para el otorgamiento de este poder. -------------------------------------------------------------------------------

Manifiesta el compareciente la subsistencia de las Entidades a las que representa, sin que hayan variado las circunstancias de plena capacidad de las mismas, y que los datos de identificación en especial el domicilio y objeto social, permanecen invariables.. ---------

Yo, el Notario, hago constar expresamente que he cumplido con la obligación de identificación del titular real que impone la Ley 10/2010, de 28 de abril, manifestando el compareciente que las sociedades que representa están exentas de comunicar la información sobre titular real de acuerdo con el artículo 15.e) del Real Decreto 304/2014 de 5 de mayo, por el que se aprueba el Reglamento que desarrolla la citada Ley. ----------------------------------

**IDENTIFICACIÓN, JUICIO DE CAPACIDAD Y CALIFICACIÓN. -----**

Le identifico por sus reseñados documentos de identidad, me asevera la subsistencia e ilimitación de la representación que ostenta, y según interviene, le juzgo con la capacidad y legitimación necesarias para otorgar esta escritura de protocolización de acuerdos sociales, a cuyo efecto, ---------------------------------------------

-------------------------------------DISPONE: -------------------------------------

PRIMERO.- APROBACIÓN DE LA OPERACIÓN DE

REESTRUCTURACIÓN DE ABENGOA, S.A. (“ABENGOA”) Y DE CIERTAS SOCIEDADES DE SU GRUPO, ENTRE LAS QUE SE ENCUENTRAN LAS RESEÑADAS EN LA INTERVENCION DE ESTA ESCRITURA (LAS “SOCIEDADES”) -------------------------------

El Administrador Único de la Sociedad aprueba la participación de la Sociedad en la operación de reestructuración y refinanciación del endeudamiento financiero de Abengoa y de ciertas sociedades de su Grupo (ya sea como deudora, garante, obligado o en cualquier otra condición, según proceda), en los términos básicos previstos en la propuesta de reestructuración acordada con los acreedores del Grupo sin perjuicio de las modificaciones que sea necesarias o convenientes realizar durante el proceso de negociación de la correspondiente documentación (la “Propuesta de Reestructuración”), con el objeto de aprobar la firma de uno o varios acuerdos de reestructuración (cualquiera de ellos, el “Acuerdo Marco de Reestructuración”), cuyo fin sea reforzar la viabilidad del Grupo en el corto y largo plazo y la sostenibilidad de su deuda, la reducción progresiva del endeudamiento de Abengoa y su Grupo y el potencial fortalecimiento de la estructura de capital (en adelante, la "Operación de Reestructuración").------------------------------------------------------------

En el marco de la Propuesta de Reestructuración, el Administrador

Único de la Sociedad ha analizado la conveniencia y el interés propio de la Sociedad en relación con la firma de la Operación de Reestructuración, en particular, en la medida en que una parte sustantiva de la deuda suscrita por Abengoa y ciertas sociedades de su Grupo (ya sea como deudora, garante, obligado o en cualquier otra condición, según proceda) resultará afectada tal y como se indica en la Propuesta de Reestructuración. Asimismo, la Sociedad ha analizado la conveniencia y el interés propio de la Sociedad en relación con el otorgamiento, en su caso, de garantías personales o reales en garantía del endeudamiento que incurran otras sociedades de su Grupo en relación con la Operación de Reestructuración. Tras dicho análisis, el Administrador Único concluye que (a) la suscripción del Acuerdo Marco de Reestructuración y el resto de los Documentos de la Operación por la Sociedad y (b) el otorgamiento de las garantías que, en su caso, otorgue la Sociedad: (i) contribuye, directamente, a reforzar la situación financiera en el corto y medio plazo de cada una de las sociedades del Grupo e, indirectamente, de la Sociedad y (ii) es necesario para llevar a término la Propuesta de Reestructuración, que beneficiará a la Sociedad y al Grupo. -------

La Operación de Reestructuración incluye, entre otras, la formalización de los siguientes contratos y operaciones y la realización de los siguientes actos (conjuntamente y sujetos a cualquier ley, los “Documentos de la Reestructuración”): ----------------

(i) la firma del Acuerdo Marco de Reestructuración, así como

cualesquiera otros instrumentos de deuda que se mencionen en el Acuerdo Marco de Reestructuración y/o en la Propuesta de Reestructuración que sean necesarios o convenientes para implementar la Operación de Reestructuración incluyendo, sin carácter limitativo, acuerdos de lock-up, espera (standstill) o cualquier otro tipo de acuerdo;-------------------------------------------------

(ii) la firma de cualesquiera contratos o acuerdos mediante los cuales se materialice la aceptación por los acreedores de Abengoa y de las sociedades de su Grupo de quitas, esperas, conversiones en cualesquiera otros instrumentos de deuda, incluyendo préstamos y obligaciones convertibles de rango, vencimiento o características distintas de la deuda original de Abengoa y de cualesquiera sociedades de su Grupo;-------------------------------------------------------

(iii) la firma de cualesquiera contratos o acuerdos mediante los cuales se materialice la aceptación por los acreedores de Abengoa y de las sociedades de su Grupo de cesiones de bienes o derechos en pago de la totalidad o parte de la deuda original de Abengoa y de cualesquiera sociedades de su Grupo;--------------------------------------

(iv) la firma de cualesquiera contratos o acuerdos mediante los cuales se materialice la conversión de la totalidad o parte de la deuda original de Abengoa y de las sociedades de su Grupo en

acciones de Abengoa o de cualquier otra sociedad de su Grupo o en préstamos subordinados o participativos;-----------------------------------

(v) la suscripción de cualquier nueva financiación en forma de crédito, préstamo, bonos, líneas de circulante, líneas de garantías o cualquier otro tipo de deuda o instrumento convertible o warrant de cualquier tipo que se ponga a disposición de o, según corresponda, se emita por cualquier sociedad del Grupo (ya sea en virtud de una sola operación o de un conjunto de operaciones), incluyendo aquella que modifique, nove, extienda, sustituya la totalidad o parte de la deuda original de Abengoa y de cualesquiera sociedades de su Grupo.------------------------------------------------------------------------------

El Administrador Único de la Sociedad, tras haber analizado la Propuesta de Reestructuración, aprueba expresamente y sin limitación: -------------------------------------------------------------------------

(a) la suscripción y otorgamiento, en documento público o privado, de cualesquiera de los Documentos de la Reestructuración por, entre otros, la Sociedad como deudora, garante, obligado o en cualquier otra condición (según proceda); ----------------------------------

(b) la suscripción y otorgamiento por la Sociedad, en documento público o privado, de cualesquiera documentos accesorios, necesarios o convenientes en relación con los Documentos de la Reestructuración, así como cualesquiera contratos accesorios o relacionados con la Operación de Reestructuración; ---------------------

(c) la suscripción y otorgamiento por la Sociedad de cualesquiera

cartas de comisiones (incluidas, sin limitación, cualesquiera cartas relativas a la Comisión Apertura, la Comisión de Rollover, la Comisión de acceso al Acuerdo Marco de Reestructuración , la Comisión de firma de la Reestructuración, la Comisión Global de Reestructuración y la Comisión de Agencia, la Comisión de suscripción bajo los nuevos instrumentos de deuda) en relación con los Documentos de la Reestructuración; -------------------------------------

(d) si fuera requerida para ello, la suscripción y otorgamiento por la Sociedad, en documento público o privado, de un contrato entre acreedores en virtud del cual se regulen, entre otros, las relaciones entre los acreedores bajo los Documentos de la Reestructuración y/o otros acreedores de la Sociedad; --------------------------------------------

(e) la suscripción y otorgamiento por la Sociedad de cualesquiera acuerdos, contratos o documentos, ya sea en documento público o privado, sujetos a ley española, inglesa o a cualquier otra jurisdicción, en los términos y condiciones que sean convenientes o apropiados, para la constitución, modificación, novación, rectificación, ratificación, extensión, cesión, extinción, renuncia y/o cancelación de cualquier garantía personal o derecho real de garantía (incluyendo, a título enunciativo, hipotecas, mobiliarias o inmobiliarias, prendas con o sin desplazamiento sobre cualquier tipo

de activo o derecho o promesas de prenda o hipoteca) cuyo otorgamiento esté previsto para garantizar el puntual cumplimiento de las obligaciones asumidas por la Sociedad, Abengoa y cualquier sociedad de su Grupo bajo los Documentos de la Reestructuración y/o cualquier otro documento otorgado al amparo o en relación con la Operación de Reestructuración, incluyendo, pero sin limitación, la suscripción de los siguientes documentos de garantía (ya sean de primer rango, segundo rango o cualquier otro rango) sobre los bienes y derechos que en cada momento sean propiedad de la Sociedad en cualquier jurisdicción (en adelante, los "Documentos de Garantía"): -------------------------------------------------------------------------

(i) hipotecas mobiliarias e inmobiliarias sobre activos de la Sociedad;

(ii) prendas sobre las acciones o participaciones sociales que ostente la Sociedad en cualquiera sociedad, así como comparecer a los efectos de darse por notificado en las prendas sobre las acciones y/o participaciones sociales de la Sociedad que, en su caso, otorguen sus socios; -------------------------------------------------------------

(iii) prendas sobre los derechos de crédito que se deriven de cuentas bancarias titularidad de la Sociedad; -----------------------------------------

(iv) prendas sobre los derechos de crédito que se deriven de contratos o pólizas de seguros, así como sobre los derechos de cualquier otro contrato de contenido patrimonial de la Sociedad; ------

(v) prendas sobre los préstamos intragrupo de los que es parte, ya sea como deudor o acreedor de los mismos, en calidad de

pignorante y/o a efectos de darse por notificado, según corresponda;

(vi) prendas sin desplazamiento sobre inventario titularidad de la Sociedad; ------------------------------------------------------------------------

(vii) promesas de prendas con y sin desplazamiento y/o de hipotecas mobiliarias e inmobiliarias sobre cualesquiera activos de la Sociedad; y----------------------------------------------------------------------

(viii) cualesquiera otras garantías, reales o personales, o promesas de garantías que se consideren necesarias o convenientes en garantía de las obligaciones derivadas de los Documentos de la Reestructuración;-----------------------------------------------------------------

(f) el otorgamiento por la Sociedad de cualesquiera poderes irrevocables en relación con los Documentos de Garantía que pudieran otorgarse para garantizar el puntual cumplimiento de las obligaciones asumidas por cada hipotecante, pignorante y/o promitente (en adelante, los "Poderes Irrevocables"), que podrán incluir la facultad de autocontratar; ------------------------------------------

(g) la suscripción y otorgamiento por la Sociedad de cualquier documento de cancelación o novación de garantías reales o personales existentes, así como de cartas de pago y cancelación de cualquier documento de financiación que sea necesario o conveniente otorgar en el contexto de la Operación de

Reestructuración; ----------------------------------------------------------------

(h) la suscripción y otorgamiento por la Sociedad de cualquier documento necesario o conveniente para la entrada en vigor de los Documentos de la Reestructuración y los restantes documentos otorgados en el contexto de la Operación de Reestructuración, incluyendo cualquier documento necesario o conveniente a los efectos de solicitar y tramitar, en su caso, en relación con los Documentos de la Operación (tal y como este término se define a continuación): (i) la homologación judicial prevista en la Disposición Adicional Cuarta de la Ley Concursal Española (la “Homologación Judicial”), (ii) los procedimientos previstos en el Capítulo 11 y Capítulo 15 del Título 11 del Código de Insolvencia de EEUU (Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code) y (iii) cualesquiera otros procedimientos análogos o que tengan efectos similares en la jurisdicción de la Sociedad o en cualquier otra jurisdicción; -------------------------------------------------------

(i) el nombramiento de un representante extranjero de la Sociedad con poderes de delegación y sustitución (el “Representante Extranjero”) en relación con sus bienes y derechos situados en cualquier jurisdicción (incluyendo en EEUU) con el objeto de representar a la Sociedad a los efectos de (i) solicitar y tramitar la apertura del procedimiento previsto en el Capítulo 11 del Título 11 del Código de Insolvencia de EEUU (Chapter 11 of the Title 11 of the US Bankruptcy Code) (ii) solicitar y tramitar el reconocimiento de la

Homologación Judicial y/o de cualquier otro procedimiento análogo en cualquier otra jurisdicción en los términos previstos en el Capítulo 15 del Título 11 del Código de Insolvencia de EEUU (Chapter 15 of the Title 11 of the US Bankruptcy Code), (iii) realizar cualesquiera acciones o actuaciones que sean necesarias o convenientes en el marco del Capítulo 11 y Capítulo 15 del Título 11 del Código de Insolvencia de EEUU (Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code) y (iv) realizar cualesquiera actuaciones en nombre de la Sociedad, incluyendo la presentación de cualquier petición, documentación complementaria y cualesquiera otras que el Representante Extranjero considere necesarias o convenientes para asegurar el buen fin de los procedimientos iniciados, incluyendo, cualquier actuación necesaria para mantener el curso normal de actividad de la Sociedad; -----------------------------------------------------

(j) la autorización al Representante Extranjero para contratar los servicios de DLA PIPER LLP (US) o de cualesquiera otros asesores que fueran necesarios o convenientes para la representación y el asesoramiento de la Sociedad en relación con sus deberes derivados del Capítulo 11 y Capítulo 15 del Título 11 del Código de Insolvencia de EEUU (Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code) y para lal protección de los derechos y

obligaciones de la Sociedad mediante las actuaciones que DLA PIPER LLP (US) o cualesquiera otros asesores consideren necesarios o convenientes para la presentación de cualesquiera escritos; y ---------------------------------------------------------------------------

(k) la autorización al Representante Extranjero para satisfacer los gastos y honorarios incurridos por cualesquiera asesores de la Sociedad (incluyendo a DLA PIPER LLP (US)) en el marco del cualesquiera procedimientos que se inicien bajo el Capítulo 11 y/o Capítulo 15 del Título 11 del Código de Insolvencia de EEUU (Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code) que se inicien. -------------------------------------------------------------

Los documentos descritos en los apartados (a) a (h) anteriores, ambos inclusive, junto con los Documentos de la Reestructuración, serán denominados como los "Documentos de la Operación". ---------

**SEGUNDO.- OTORGAMIENTO DE PODERES ---------------------------**

El Administrador Único decide otorgar poder especial, con facultad de autocontratación, tan amplio y suficiente como en Derecho sea necesario o apropiado a favor de las siguientes personas (los “Apoderados”):------------------------------------------------------------------

**D. Antonio Fornieles Melero**, mayor de edad, de nacionalidad española, con domicilio a estos efectos en c/ Energía Solar 1, Palmas Altas, Sevilla, España y provisto de DNI en vigor núm. 27257168Y,---------------------------------------------------------------------

D**. Joaquín Fernández de Piérola Marín,** mayor de edad, de

nacionalidad española, con domicilio a estos efectos en c/ Energía Solar 1, Palmas Altas, Sevilla, España y provisto de DNI en vigor núm. 16.587.705-J,------------------------------------------------------------

D**. Jesús Ángel García-Quilez**, mayor de edad, de nacionalidad española, con domicilio a estos efectos en c/ Energía Solar 1, Palmas Altas, Sevilla, España y provisto de DNI en vigor núm. 27.320.202-C,------------------------------------------------------------------

**D. Juan Carlos Jiménez Lora**, mayor de edad, de nacionalidad española, con domicilio a estos efectos en c/ Energía Solar 1, Palmas Altas, Sevilla, España y provisto de DNI en vigor núm. 28.584.961-D.------------------------------------------------------------------

**D. Daniel Alaminos Echarri**, mayor de edad, de nacionalidad española, con domicilio a estos efectos en c/ Energía Solar 1, Palmas Altas, Sevilla, España y provisto de DNI en vigor núm. 07.492.396-P,------------------------------------------------------------------

**Mr. Ignacio García Alvear,** mayor de edad, de nacionalidad española, con domicilio a estos efectos en c/ Energía Solar 1, Palmas Altas, Sevilla, España y provisto de DNI en vigor núm. 28.732. 171-L, ----------------------------------------------------------------

**Mr. Miguel Angel Jiménez-Velasco Mazarío**, mayor de edad, de nacionalidad española, con domicilio a estos efectos en c/ Energía

Solar 1, Palmas Altas, Sevilla, España y provisto de DNI en vigor núm. 28.874.696-J,-------------------------------------------------------------

**Dña. Maria del Sol Santana Valencia**, mayor de edad, de nacionalidad española, con domicilio a estos efectos en c/ Energía Solar 1, Palmas Altas, Sevilla, España y provista de D.N.I en vigor núm. 12.329.254-n,-------------------------------------------------------------

**D. Ignacio García Hernández,** mayor de edad, de nacionalidad española, con domicilio a estos efectos en c/ Energía Solar 1, Palmas Altas, Sevilla, España y provisto de DNI en vigor núm. 28.498.718-Q -------------------------------------------------------------------

Para que, cualquiera de ellos actuando solidariamente, es decir, con su sola firma, pueda, en nombre y por cuenta de la Sociedad (actuando esta última por cuenta propia o por cuenta de otra), incluso cuando esto suponga incurrir en autocontratación, doble o múltiple representación y/o conflicto de interés:----------------------------

(a) Firmar, en nombre y representación de la Sociedad, en documento público o privado, el Acuerdo Marco de Reestructuración , así como negociar, suscribir, firmar, otorgar, perfeccionar, ejecutar, cumplir, modificar, novar, ratificar, aclarar, rectificar, extender, subsanar, ceder y/o cancelar como deudor, garante, obligado o en cualquier otra condición cualesquiera otros instrumentos de deuda que se mencionen en el Acuerdo Marco de Reestructuración y/o en la Propuesta de Reestructuración así como cualesquiera otros documentos que puedan resultar necesarios o convenientes en

relación con el otorgamiento, perfección y cumplimiento de los anteriores y, en particular, modificar, en caso de ser necesario, cualquier Documento de la Operación y, a tal efecto, comparecer ante cualquier fedatario público y otorgar cuantos documentos públicos o privados sean necesarios para suscribir los citados documentos, en las condiciones decididas por el Administrador Único en la decisión Primera anterior. ----------------------------------------

(b) Firmar, en nombre y representación de la Sociedad, en documento público o privado, así como negociar, suscribir, firmar, otorgar, perfeccionar, ejecutar, cumplir, modificar, novar, ratificar, aclarar, rectificar, extender, subsanar, ceder y/o cancelar como deudor, garante, obligado o en cualquier otra condición, cualquier nueva financiación en forma de crédito, préstamo, bonos, líneas de circulante, líneas de garantías o cualquier otro tipo de deuda o instrumento convertible o warrant de cualquier tipo que se haya puesto a disposición o se ponga a disposición de o, según corresponda, se haya emitido o se emita por cualquier sociedad del Grupo (ya sea en virtud de una sola operación o de un conjunto de operaciones); ---------------------------------------------------------------------

(c) Negociar, suscribir, firmar, otorgar, perfeccionar, ejecutar, cumplir, modificar, novar, ratificar, aclarar, rectificar, extender,

subsanar, ceder, liberar y/o cancelar cualesquiera garantías personales o reales de cualquier tipo y rango, sobre cualesquiera activos, derechos y bienes muebles o inmuebles propiedad de Abengoa o de cualquier otra sociedad del Grupo situados en cualquier jurisdicción en relación con los Documentos de la Operación y/o cualquier otro documento otorgado al amparo o en relación con o requeridos por la Operación de Reestructuración, incluyendo, sin limitación, prendas sobre acciones y/o participaciones entre otras, de sus sociedades filiales (incluida la suscripción de la prenda sobre las propias acciones / participaciones sociales de la Sociedad a efectos de darse por notificada y asumir determinadas obligaciones), prendas con o sin desplazamiento sobre los derechos de crédito derivados de cualquier tipo de contrato en el que Abengoa o cualquier otra sociedad del Grupo sean parte, incluidos, sin limitación, de contratos de prestación de servicios, de préstamos intragrupos; hipotecas inmobiliarias, hipotecas mobiliarias, cualesquiera otras prendas sin desplazamiento, promesas de garantía sean personales o reales sobre cualesquiera activos y/o bienes muebles o inmuebles propiedad de Abengoa o de cualquier otra sociedad del Grupo, así como contratos equivalentes bajo cualquier jurisdicción extranjera y, a tal efecto, comparecer ante cualquier fedatario público y otorgar cuantos documentos públicos o privados sean necesarios o convenientes a tal efecto y, en particular, los Documentos de Garantía y cualesquiera otras garantía reales o

NOTARIA DE D. JOSE MIGUEL GARCIA LOMBARDIA - MADRID - NIHIL PRIUS FIDE PROTOCOLO 28 MAYO DE 1862

personales que deban otorgarse en relación con el Contrato de Reestructuración y cualesquiera otros Documentos de la Operación.

(d) Otorgar, firmar y suscribir, en documento público o privado y en cualquier condición, cualesquiera documentos de instrumentos financieros derivados o de cobertura incluyendo, con carácter enunciativo pero no limitativo, cualesquiera contratos de cobertura para cubrir el riesgo de tipo de interés derivado de cualesquiera Documentos de la Reestructuración.------------------------------------------

(e) Negociar, suscribir, firmar, otorgar, perfeccionar, ejecutar, cumplir, modificar, novar, ratificar, aclarar, rectificar, extender y/o subsanar cualquier documento de cancelación o novación de garantías reales o personales existentes, así como de cartas de pago y cancelación de cualquier documento de financiación que sea necesario o conveniente otorgar en el contexto de la Operación de Reestructuración.-----------------------------------------------------------------

(f) Otorgar, firmar, suscribir, modificar, novar y/o cancelar cualesquiera otro documento privado o público o documentos otorgados “by way of deed” bajo legislación inglesa o legislación del Estado de New York o cualquier otra legislación que proceda, sea necesario o conveniente para el buen fin de la Operación de Reestructuración y en relación con cualquier Documento de la

Operación. ------------------------------------------------------------------------

(g) Negociar, otorgar, redactar, firmar, celebrar, suscribir, modificar, novar y cancelar, en documento público o privado, en los términos y condiciones que considere oportuno cualesquiera pólizas de avales y/o documentos de garantías y/o contragarantías con cualquier entidad y por cualquier importe y sujetos a cualquier jurisdicción. -----

(h) Otorgar, firmar, suscribir, modificar, novar y/o cancelar cualesquiera documentos de préstamos participativos y/o préstamos intragrupo nuevos y/o existentes de los que la Sociedad sea o pase a ser parte en calidad de acreditante, deudora, garante, obligado o en cualquier otra condición (según proceda). -------------------------------

(i) Comparecer y formalizar las oportunas declaraciones, comunicaciones y actuaciones ante los Registros Públicos (incluido cualquier Registro Mercantil, Registro de la Propiedad o Registro de Bienes Muebles), jueces, tribunales u otros órganos judiciales, organismos de la administración (en cualquiera de los casos anteriores, sean nacionales o extranjeros), en particular, el Banco de España o la Comisión Nacional del Mercado de Valores (o entidades equivalentes en otra jurisdicción), autoridades fiscales y otras autoridades u organismos públicos en relación con los Documentos de la Operación aquí descritos y con el ejercicio de las facultades aquí referidas.---------------------------------------------------------------------

(j) Suscribir y otorgar cuantos documentos públicos o privados sean necesarios o convenientes incluyendo, si fuese necesario, la

publicación de cualesquiera anuncios que sean legalmente exigibles ante cualesquiera organismo nacional o extranjero o instancias públicas o privadas, la inscripción en cualesquiera registros nacional o extranjero resulten oportunos y la realización de cuantos actos y trámites sean necesarios al efecto, así como, entre otras cosas, las facultades de subsanar, aclarar, interpretar, completar, precisar o concretar, en su caso, los acuerdos adoptados, otorgar cuantos documentos públicos de ratificación, rectificación, subsanación y aclaración sean precisos, y, en particular, subsanar los defectos, omisiones o errores que fuesen apreciados, incluso los advertidos en la calificación verbal o escrita del Registro Mercantil (de Sociedades), y que pudieran obstaculizar la efectividad del acuerdo, con la facultad incluso para solicitar la inscripción parcial.---------------

(k) Redactar y suscribir cuantos documentos públicos o privados sean necesarios y realizar cuantos trámites estimen pertinentes ante la Comisión Nacional del Mercado de Valores, la Sociedad de Gestión de los Sistemas de Registro, Compensación y Liquidación de Valores, S.A. (Iberclear), la Sociedad de Bolsas, las Sociedades Rectoras de las Bolsas de Valores y cualesquiera otros organismos competentes y equivalentes nacionales y extranjeros a fin de ejecutar y llevar a buen término los acuerdos aprobados y para la

tramitación de los expedientes y documentación de todo tipo que fueran necesarios ante organismos públicos y privados, y en general cuantas actuaciones relativas a los acuerdos anteriores sean precisas y necesarias para su ejecución. ------------------------------------

(l) Firmar, enviar o certificar en nombre de la Sociedad todos los documentos y comunicaciones que se requieran bajo los Documentos de la Operación en la forma y con las modificaciones que el apoderado a su absoluta discreción pueda considerar necesario o conveniente, incluyendo, pero sin limitación, cualesquiera solicitudes de disposición y certificados de cumplimiento de condiciones y/o certificados de cumplimiento de ratios financieros y/o certificados bajo la forma de un Officer´s Certificate, Formalities Certificate, Compliance Certificate o documento similar o análogo a los anteriores.------------------------------

(m) Suscribir, otorgar o firmar cualquier contrato, instrumento, poder (incluyendo, sin limitación, los Poderes Irrevocables), en documento público o privado, que el apoderado considere necesario o conveniente en relación con los Documentos de la Operación. --------

(n) Firmar, en nombre y representación de la Sociedad, cualesquiera documentos que sean necesarios o convenientes para llevar a efecto la entrada en vigor de los Documentos de la Operación y cualesquiera otros documentos firmados en relación con la Propuesta de Reestructuración, incluyendo cualesquiera documentos que fuera necesario suscribir para solicitar, en su caso,

la Homologación Judicial de los Documentos de la Operación al amparo de la Disposición Adicional Cuarta de la Ley Concursal Española, los procedimiento previstos en el Capítulo 11 y Capítulo 15 del Título 11 del Código de Insolvencia de EEUU (Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code) y cualesquiera otros procedimientos análogos o que tengan efectos similares en la jurisdicción de la Sociedad o en cualquier otra jurisdicción.-------------------------------------------------------------------------

(o) Nombrar a [Joaquín Fernández de Piérola] como Representante Extranjero con poderes de delegación y sustitución en relación con los procedimientos previstos en el Capítulo 11 y Capítulo 15 del Título 11 del Código de Insolvencia de EEUU (Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code) para que, actuando en nombre y representación de la Sociedad, pueda ejercitar las facultades que se mencionan en el apartado i, (j) y (k) del acuerdo Primero y que se confieren expresamente al Representante Extranjero. -----------------------------------------------------

(p) Comparecer ante Notario español y extranjero con el fin de: (i) formalizar y elevar a público los Documentos de la Operación y los Documentos de Garantía, así como cualesquiera actos, documentos y contratos relacionados con los mismos y/o que sean necesarios o

convenientes para la ejecución de las operaciones y de las facultades contenidas en este poder incluyendo sin carácter limitativo, escrituras cero o de protocolo de firma y escrituras de reconocimiento de obligaciones; (ii) realizar todo tipo de declaraciones de voluntad y manifestaciones en nombre de la Sociedad, incluyendo aquellas exigidas de conformidad con lo establecido en las leyes de prevención del blanqueo de capitales y de la financiación del terrorismo, así como cualesquiera otras normas que las desarrollen, complementen o sustituyan; y (iii) otorgar, si fuese necesario, cualesquiera escrituras de subsanación, novación o ratificación de los Documentos de la Operación, así como solicitar copias notariales simples y subsiguientes copias notariales de, entre otros, actas, pólizas, escrituras o testimonios.-----------------

(q) Firmar cualquier documento público o privado de subsanación, rectificación, novación, extensión, modificación, cesión, cancelación o ratificación (incluyendo, pero sin limitación, los que fueran necesarios para la inscripción de cualquier documento público o privado relacionado con los Documentos de la Operación en el Registro de la Propiedad, el Registro de Bienes Muebles o cualquier otro registro público nacional o extranjero que corresponda) y realizar cualquier acto o cosa que los Apoderados consideren necesario o conveniente para cumplimentar la finalidad descrita en este acuerdo Segundo.--------------------------------------------------------

(r) Negociar y acordar los términos y condiciones de los documentos

NOTARIA DE D. JOSE MIGUEL GARCIA LOMBARDIA
NIHIL PRIUS FIDE
PROTOCOLO
28 MAYO DE 1862
- MADRID -

descritos en las facultades anteriores que los Apoderados estimen más convenientes. ---------------------------------------------------------------

(s) Elevar a público y ratificar íntegramente todos los términos de los documentos descritos en las facultades anteriores, pactando las cláusulas que los Apoderados estimen pertinentes, todo ello en los términos y condiciones que los Apoderados estimen convenientes. --

(t) Presentar y liquidar los impuestos, tributos, gastos y aranceles en cualquier jurisdicción que se deriven del otorgamiento de los Documentos de la Operación y de la Operación de Restructuración y cualesquiera actos, documentos y negocios que se deriven del ejercicio del presente poder.----------------------------------------------------

(u) Realizar cuantos actos accesorios, conexos o complementarios sean necesarios o convenientes para la más completa ejecución del mandato recibido, incluyendo, entre otros y sin limitación, efectuar y contestar requerimientos y notificaciones.----------------------------------

(v) Suscribir cuantos documentos públicos o privados resulten necesarios o convenientes al objeto de ejecutar y ejercer las facultades aquí conferidas.-----------------------------------------------------

Ratificar cualquier documento y/o acto llevado a cabo como un mandatario verbal de la Sociedad relativo a las facultades contempladas en los apartados anteriores. ---------------------------------

Asimismo, [el Consejo de Administración acuerda / el Administrador Único] otorgar poderes especiales a favor de Abengoa para que, actuando en su calidad de representante de la Sociedad, realice, a título ejemplificativo pero no limitativo, cualesquiera de las siguientes facultades: -----------------------------------------------------------------------

(a) emitir y recibir cuantas notificaciones y comunicaciones se deriven de los Documentos de la Operación y entregar a las entidades que actúen como agentes bajo los mismos y, en su caso, a las restantes entidades acreedores (o a sus asesores) cuanta documentación e información deba suministrarse conforme a lo previsto en los Documentos la Operación;----------------------------------

(b) emitir instrucciones, adoptar decisiones y prestar su consentimiento a las actuaciones que sean precisas para el desarrollo y cumplimiento de los Documentos la Operación, tanto si están previstas en ellos como si no lo están; -------------------------------

(c) suscribir y formalizar cuantos documentos conexos, complementarios o relacionados con los Documentos la Operación sean necesarios, estando expresamente facultado para ratificar, aclarar y acordar modificaciones de los mismos; -------------------------

(d) efectuar por cuenta de la Sociedad cuantos pagos deban realizarse conforme a los Documentos la Operación; y------------------

(e) en general, otorgar cualquier documento, público o privado, y llevar a cabo cualquier actuación que sea necesaria o conveniente en relación con el desarrollo y cumplimiento de los Documentos la

Operación.-------------------------------------------------------------------------
Las facultades otorgadas en el presente apoderamiento han de ser interpretadas en su sentido más amplio, con el objeto de permitir el fin para el que han sido otorgadas e incluirán, en todo caso, la facultad de autocontratación y/o doble o múltiple representación tanto para los Apoderados como para sus sustitutos, delegados y sub-apoderados.------------------------------------------------------------------

-----------------------------------OTORGAMIENTO:---------------------------

Así lo dice y otorga, después de hechas por mí, el Notario, las correspondientes reservas y advertencias legales, en especial las de carácter fiscal, la referente a la inscripción de la presente en el Registro Mercantil y en los organismos competentes, y la relativa a la lectura de esta matriz, manifestando haberla leído por sí y encontrarla conforme, por lo que consiente y firma. ---------------------

Presentación en el Registro Mercantil. El compareciente, de conformidad con el artículo 249 del vigente Reglamento Notarial, me exime de la presentación por cualquier medio telemático o informático de la presente escritura en el correspondiente Registro Mercantil.-------------------------------------------------------------------------

Protección de Datos. De acuerdo con lo establecido en la Ley Orgánica 15/1999, el compareciente queda informado y acepta la

incorporación de sus datos a los ficheros automatizados existentes en la notaría, que se conservarán en la misma con carácter confidencial, sin perjuicio de las remisiones de obligado cumplimiento. --------------------------------------------------------------------

--------------------------------AUTORIZACIÓN:----------------------------------

Y yo, el notario, autorizo este instrumento público, que queda extendido en veinticinco folios de papel timbrado, números CS3087484, CS3087483, CS3087482, CS3087481, CS3087480, CS3087479, CS3087478, CS3087477, CS3087476, CS3087475, CS3087474, CS3087473, CS3087472, CS3087471, CS3087470, CS3087469, CS3087468, CS3087467, CS3087466, CS3087465, CS3087464, CS3087463, CS3087462, CS3087461 y CS3087460, doy fe de su total contenido, y de que se adecua íntegramente a la legalidad vigente y a la voluntad debidamente informada del compareciente, quien libremente ha consentido, tras explicarle su sentido y trascendencia, por lo que debe reputarse veraz, íntegro, legal y válido.----------------------------------------------------------------------

Están las firmas y rúbricas correspondientes al otorgamiento y al Notario autorizante, el signo de este y el sello.-----------------------------

NOTA.- El mismo día de su autorización, expido copia para las sociedades poderdantes, en veinticinco folios de números CR2532839 y los veinticuatro anteriores en orden correlativo. Doy fe.- Signado. J.M.G. LOMBARDIA. ------------------------------------------

DILIGENCIA.- En Madrid a 22 de marzo de 2016, **COMPARECE**, ante mi, JOSE MIGUEL GARCIA LOMBARDIA, notario del Colegio de Madrid, DON JOAQUÍN FERNÁNDEZ DE PIÉROLA MARÍN, mayor de edad, con domicilio a estos efectos en Sevilla-41014, en Campus Palmas Altas, calle Energía Solar, nº 1 y con D.N.I./N.I.F. número 16.587.705-J. ----

**INTERVIENE** en la representación que consta acreditada en la escritura que antecede, le identifico por su reseñado documento de identidad, me asevera la subsistencia e ilimitación de la representación que ostenta y, según interviene, le juzgo con la capacidad y legitimación necesarias para formalizar esta diligencia y al efecto,-------------------------

----------------------------**DISPONE**-------------------------------------------

Primero.- Que con arreglo al art. 153 del Reglamento Notarial, subsana los errores materiales padecidos en la redacción de la facultad (o) de esta escritura, cuya redacción correcta es del siguiente tenor literal: -----

*"(o) Nombrar a don Christopher Morris, mayor de edad, de nacionalidad norteamericana, con Pasaporte de su nacionalidad expedido 8 de octubre de 2010 y número 475053555, como Representante Extranjero con poderes de delegación y sustitución en relación con los procedimientos previstos en el Capítulo 11 y Capítulo 15 del Título 11 del Código de Insolvencia de EEUU (Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code) para que, actuando en nombre y representación de la Sociedad, pueda ejercitar las facultades que se mencionan en el apartado (i), (j) y (k) del acuerdo Primero y que se confieren expresamente al Representante Extranjero".* -------------------------

Segundo.- Que en lo demás no sufre alteración o modificación el contenido de la escritura subsanada.---------------------------------------------

Sin nada más que hacer constar, por su elección lee el compareciente esta diligencia, extendida a continuación de la escritura que la motiva, en un folio de papel de timbre del estado de uso exclusivo notarial, número CR2546824, de todo lo cual yo el Notario, DOY FE.- Está la firma del compareciente. Signado. J.M.G. LOMBARDIA. Rubricado y sellado.-------

ES COPIA SIMPLE

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

JOSE MIGUEL GARCIA LOMBARDIA
NOTARY
José Ortega y Gasset, 5- 1º izqda.
Phone: 917817170 – Fax 917817180
28006-MADRID

NUMBER ONE THOUSAND AND THIRTY.-------------------------------------

DEED OF SPECIAL POWER OF ATTORNEY EXECUTED BY: ABENGOA GREENFIELD S.A.U, ABENGOA FINANCE S.A.U.,- ABENGOA GREENBRIDGE S.A.U., ABENGOA CONCESSIONS, S.L., SIEMA TECHNOLOGIES, S.L, ASA DESULFURACIÓN, S.A., SOCIEDAD INVERSORA EN ENERGÍA Y MEDIO AMBIENTE, S.A., -ABENGOA SOLAR, S.A., ABENGOA BIOENERGÍA S.A., ABENGOA WATER S.L, ABENGOA HIDRÓGENO S.A., ABENGOA RESEARCH, S.L.,.-EUROPEA DE CONSTRUCCIONES METÁLICAS, S.A., ABEINSA INGENIERÍA Y CONSTRUCCIÓN INDUSTRIAL, S.A., SIMOSA SERVICIOS INTEGRALES DE MANTENIMIENTO Y OPERACIÓN S.A., SIMOSA IT S.A, CENTRO TECNOLÓGICO PALMAS ALTAS S.A, GESTIÓN INTEGRAL DE RECURSOS HUMANOS S.A., ABENGOA ENERGY CROPS S.A. AND SIEMA INVEST MENTS S.L.. ---------------------------

In Madrid, my place of abode, on seventeenth March two thousand and sixteen.-----------------------------------------------------------------------

Before me, JOSE-MIGUEL GARCÍA LOMBARDÍA, Notary of the Notaries Association of Madrid, -----------------------------------------------------------

**----------------------------------APPEARS-----------------------------**

**MR. JOAQUÍN FERNÁNDEZ DE PIÉROLA MARÍN**, of legal age, with domicile for these purposes in Seville-41014, at Campus Palmas Altas, calle Energía Solar, nº 1 and holding Spanish I.D./Tax I.D. number

16587705-J.---------------------------------------------------------------------------

**HE ACTS** in the name and on behalf, as individual legal representative, of the corporation called "ABENGOA S.A.", with domicile in 41014 - Seville, Campus Palmas Altas, Cl. Energía Solar nº 1, holding Spanish Tax I.D. Code number A41002288**;** of indefinite duration, incorporated, as a limited liability company, under the name of "Abengoa S.L.", by means of a deed executed before the notary of Seville, Mr. Francisco Monedero Ruiz, on 4th January 1941; registered at the Companies House of Seville, into volume 573, book 362, folio 94, Page SE-1507, which in turn is the Sole Director of the following companies:.-------------------------------------------------------

1.- **ABENGOA GREENFIELD S.A.U.**, holding Spanish Tax I.D. Code number A-90153677, and corporate domicile in Seville, calle Energía Solar número 1, Campus Palmas Altas, CP 41014.------------------------------------

Registered at the Companies House of Seville, into folio 43, of volume 5904, Section no. 8, page SE-102300, registration no. 1.-------------------

The company's object is: "the operation and development of projects, activities and business in relation with the promotion of the use of renewable energy sources, power transmission systems or energy efficiency improvement in industrial processes in the fields of energy, environment and industry, as well as those activities related to the construction, assembly and installation of electrical, electronic, mechanical, hydraulic, electromechanical, telecommunication or civil

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

engineering works, through directly or indirectly holding shares/equities in the share/stock capital of other companies in any manner, subscription, acquisition, alienation, assignment or encumbrance of all kind of shares or equity interests, as well as of securities representing loans, issued in series or not; financing by any legal means, granting of loans, debt assumptions, any kind of guarantees, provision of sureties, securities or any other kind of collateral for their own obligations or those of a third-party; issues of preferred stocks or other debt financial instruments, the income from which may be used for financing the transactions of the parent company of this company or of other companies in the group or consolidated subgroup of said company." Likewise, the person appearing declares that the National Classification of Economic Activities ("*CNAE*" as per the acronym in Spanish) belonging to this Company, is number 6,499.- The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 8th January 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 39 of protocol, motivating registration no. 12 of the company's page. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol

number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.--------

2.- **ABENGOA FINANCE S.A.U.,** holding Spanish Tax I.D. Code number A-91900266, and corporate domicile in Seville, calle Energía Solar número 1, Campus Palmas Altas, CP 41014 -------------------------------------------

Registered at the Companies House of Seville, into folio 21, of volume 5288, page SE-87408, registration no. 1.--------------------------------------

The company's object is to issue preferred stocks and/or other financial instruments.---------------------------------------------------------------------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 8th January 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 36 of protocol, motivating registration no. 29 of the company's page. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.--------

3.- **ABENGOA GREENBRIDGE S.A.U.,** holding Spanish Tax I.D. Code number A-90158452, and corporate domicile in Seville, calle Energía Solar número 1, Campus Palmas Altas, CP 41014-------------------------------------

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

Registered at the Companies House of Seville, into folio 53, of volume 5913, page SE-102555, registration no. 1.---------------------------------------

The company's object is, among other activities, the implementation and development of projects in relation with the promotion and development of renewable energy sources and power transmission systems.------------------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 8th January 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 41 of protocol, motivating registration no. 50 of the company's page. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.--------

4.- **ABENGOA CONCESSIONS, S.L.,** holding Spanish Tax I.D. Code number B-90108044, and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014-------------------------------------

Registered at the Companies House of Seville into volume 5784, folio 161, page number SE-99466, registration no. 1.--------------------------------------

The company's object is the organization and operation of business and activities in relation [with the implementation] with the promotion of the use of renewable energy sources or energy efficiency improvement.---------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 28th January 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 147 of protocol. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.-----------------------------------------------------------------------------

5.- **SIEMA TECHNOLOGIES, S.L.,** holding Spanish Tax I.D. Code number B-84023340, and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014.------------------------------------

Registered at the Companies House of Seville, into volume 5489, folio 212, page number SE-92605, registration no. 1.--------------------------------------

The company's object is, among other ones, the organization and promotion of business and activities in relation with the promotion of renewable energy sources .-----------------------------------------------------------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 28th January 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 148 of protocol. And the person appearing

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.---------------------------------------------------------------------------

6.- **ASA DESULFURACIÓN, S.A.,** holding Spanish Tax I.D. Code number A-48090823, and corporate domicile in Etxebarri (Biscay), Polígono Barrando, Calle Santa Ana, nº 26, CP 48450 CP.-------------------------------

Registered at the Companies House of Biscay into volume 3486, folio 122, page number BI-18744, registration no. 38.------------------------------------

The main company's object is the construction of a sulfuric acid plant and its subsequent operation, and the purchase, sale, storage, supply of sulfuric acid, oleum and derived products. And also the purchase, sale, storage, supply and treatment of raw materials, waste, scrap and residues of an industrial origin.-------------------------------------------------------------------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 15th February 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 285 of protocol. And the person appearing was appointed individual legal representative by virtue of the

deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.-----------------------------------------------------------

7.- **SOCIEDAD INVERSORA EN ENERGÍA Y MEDIO AMBIENTE, S.A.,** holding Spanish Tax I.D. Code number A-41750977, and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014.---------------------------------------------------------------------------

Registered at the Companies House of Seville into volume 2268, folio 1, page SE-25060, registration no. 1.-----------------------------------------------

The company's object is the organization and operation of business and activities in relation with the promotion of the use of renewable energy sources or energy efficiency improvement in industrial processes in the fields of energy, environment and industry, through direct or indirect investment, subscription, acquisition, alienation, assignment or encumbrance of all kind of shares and equity interests, against payment or free of charge, as well as of securities representing loans, debt assumptions, any kind of guarantees, provision of sureties, securities or any other kind of collateral for their own obligations or those of a third-party. The Company can carry on such activities totally and directly or partially and indirectly, by the ownership of shares or equities in Companies having the same or similar objects. -------------------------------

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 5th February 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 199 of protocol. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.---------------------------------------------------------------------------

8.- **ABENGOA SOLAR, S.A.,** holding Spanish Tax I.D. Code number A-91609982, and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014, of indefinite duration, incorporated under the name of "SOLÚCAR SOLAR, S.A.", by means of a deed executed before the notary of Seville, Mr. José Ruiz Granados, on 18th December 2006, under number 7185 of protocol. Registered at the Companies House of Seville into volume 4568, folio 1, page number SE-71375, registration no. 1.------------------------------------------------------------------------------

The Company's object is the organization and exploitation of business and activities related to the promotion of the use of renewable energy sources or energy efficiency improvements in industrial processes in the fields of Solar Energy, Environment and Industry, including therein the following:

research and development of applications, technologies and materials, design, manufacture and assembly, construction, operation and maintenance of related installations, import and marketing of these products or by-products, as well as consultancy and support services, including financial, economic, legal management, corporate organization, audit and control, tax, human resources, disclosure, commercial management, procurement and risk management. The company shall not perform any activity requiring legal permits or government approvals without having previously obtained the same.----------------------------------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 22nd December 2015, before the notary of Madrid Mr. Jose Miguel García Lombardía, under number 5935 of protocol, motivating registration no. 38. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.--------

9.- **ABENGOA BIONERGÍA S.A.,** holding Spanish Tax I.D. Code number A-91213249, and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014.---------------------------------------------

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

Registered at the Companies House of Seville into folio 104, of volume 3587, page SE-48688, registration no. 11.---------------------------------------

The company's object is the development, promotion, construction and operation of own industrial plants or of a third party, for biofuel manufacturing, such as bioethanol, biodiesel.---- The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 15th February 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 281 of protocol. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.--------

10.- **ABENGOA WATER S.L.,** holding Spanish Tax I.D. Code number B-91826958, and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014-------------------------------------------------

Registered at the Companies House of Seville into volume 5131, folio 150, page number SE-83802, registration no. 1.------------------------------------

The Company's object is the construction, repair, rehabilitation,

consolidation, restoration, decoration, ornamentation, conservation, maintenance, treatment and distribution of any kind of works: buildings, hydraulic, roadways, offshore buildings, earthmovings and drillings, probes, injections and piles, bridges, viaducts and any kind of civil works, forests and gardens and urban furniture, including services of consultancy, projects, technical assistance and project management.----------------------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 8th February 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 214 of protocol. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.---------------------------------------------------------------------------

11.- **ABENGOA HIDRÓGENO S.A.,** holding Spanish Tax I.D. Code No. A-91272682 and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014-------------------------------------------------

Registered at the Companies House of Seville into volume 3659, folio 173, page number SE52060, registration no. 1.--------------------------------------

The Company's object is the organization and operation of business related to studies, reports, projects, construction management and

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

promotion of electric facilities by means of the various technology fuel cells and/or by using hydrogen.--------------------------------------------------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 8th February 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 221 of protocol. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.------------------------------------------------------------------------------

12.- **ABENGOA RESEARCH, S.L.,** holding Spanish Tax I.D. Code number B-91925149, and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014.---------------------------------------------

Registered at the Companies House of Seville into folio 145, of General volume of Companies 5345, page SE-88894, registration no. 1.-------------

The Company's object is the performance of technological research and development activities in the area of sustainable development and energy. This comprises the generation of know-how, its application, the generation and exploitation of patents or other intellectual property rights, the preparation of technical and scientific studies, reports and

projects, as well as the provision of services, such as technical assistance, and technical advisory and consultancy services. Likewise, it comprises the dissemination of the appropriate scientific and technical advances, as well as the training of professionals in such related areas, the organization of forums, technical meetings and similar and/or associated activities.---------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 15th February 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 284 of protocol. And the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.-------------------------------------------------------------

13.- **EUROPEA DE CONSTRUCCIONES METÁLICAS, S.A.,** holding Spanish Tax I.D. Code number A-41031303 and corporate domicile at Ctra. A-376, Sevilla-San Pedro de Alcántara, km 22,3, Utrera, (Seville).-----

Registered at the Companies House of Seville into folio 125 of volume 242, book 95 of section no. 3 of Companies, page SE-20054 (formerly 6145), registration no. 1.----------------------------------------------------------

The Company's object is the organization and operation of activities and business regarding the manufacture, construction of all kind of traffic signalling and beacons, as well as the construction of civil works required;

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

the manufacture, construction, assembly, repair, testing, or trial, purchase, sale and trade in general, both on their own behalf and on behalf of third parties, for its own or for individuals or companies, jointly or in association or in any other way, of any kind of steel, mechanical, concrete structures or objects or of any other material, such as supports, fittings and equipment for high- and low-voltage lines, communication antennas, lighting supports, tools and spare parts, as well as any kind of services related with tests and trials of said structures such as the construction, organization, management and operation of as many facilities, workshops and warehouses as required or useful for the good progress of the company, and the design, manufacture and sale of steel items, composed of plates and sections made of any material, including the surface preparation and finish treatment, for a correct product finish.-- The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 5th February 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 198 of protocol. And the person appearing was appointed individual legal representative by virtue of the deed

executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.---------------------------------------------------------------------------

14.- **ABEINSA INGENIERÍA Y CONSTRUCCIÓN INDUSTRIAL, S.A.,** holding Spanish Tax I.D. Code number A-91251355 and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014.-----------------------------------------------------------------------------

Registered at the Companies House of Seville into volume 3603, folio 23, section no. 8, page SE-50910.----------------------------------------------------

The Company's object is the organization and operation of activities and business in the fields of Energy, Environment and Industry by direct or indirect investment, subscription, acquisition, alienation, assignment or encumbrance of corporate shares and equities, against payment or free of charge, as well as of securities representing loans, issued in series or not; financing by any legal means, granting of loans, debt assumptions, any kind of guarantees, provision of sureties, securities or any other kind of collateral for their own obligations or those of a third-party.---------------------

The company ABENGOA S.A. was appointed Sole Director by virtue of the deed executed on 1st February 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 171 of protocol. And the person appearing was appointed individual legal representative by virtue of the deed

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

executed on 11th March 2016 before the same Notary Mr. Ruiz Granados under protocol number 532, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.---------------------------------------------------------------------------

15.- **SIMOSA SERVICIOS INTEGRALES DE MANTENIMIENTO Y OPERACIÓN S.A.,** holding Spanish Tax I.D. Code number A41763582 and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014-------------------------------------------------------------

Registered at the Companies House of Seville into volume 2297, folio 13, page number SE-25554, registration no. 1.-------------------------------------

The main Company's object is the operation of business regarding the comprehensive maintenance of buildings, offices, industries, dwellings, including the electricity, plumbing, decoration, gardening, fax, photocopiers, security and fire-fighting system.--------------------------------

The company ABENGOA S.A. was appointed Sole Director and the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 549 of protocol, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers

accredited by the appearing person are considered sufficient for granting this power of attorney.-------------------------------------------------------------

16.- **SIMOSA IT S.A.,** holding Spanish Tax I.D. Code number A91849166 and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014.----------------------------------------------------------

Registered at the Companies House of Seville into folio 10, of volume 5169, page SE-84,614, registration no. 1.---------------------------------------

The company's object comprises the provision of information capture services by electronic, computing and telematic means, such as, but not limited to, typing and recording work or data capture by electronic means and digitization or conversion of document formats by using information and communication technologies. 2.- Services for the development and maintenance of computer programmes, such as, but not limited to, planning, analysis, design, construction, testing and maintenance work of information systems (computer programmes and applications). 3.- Services for the maintenance and repair of computer and telecommunication equipment and installations such as, but not limited to, preventive, corrective or perfective maintenance and repair work of hardware and software equipment and systems for processing the information, as well as, information senders and receivers and their corresponding transmission systems and means. 4.- Telecommunication services such as, but not limited to, voice an/or data communication

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

services, rental of circuits for voice and/or data transmission, the provision of technical and human means necessary for the final users of telecommunication networks to access and have a presence in Internet and other value-added services on telecommunication networks. 5.- Services for the operation and control of computer systems and telematic infrastructures, such as, but not limited to, work associated with the start-up, monitoring, management and control of computer equipment and systems and of telematic infrastructures, necessary for the proper operation of computer programmes and applications. 6.- Electronic certificate services, such as, but not limited to, electronic certificate generation, issue, management activities and other related services such as, but not limited to, registration authority and electronic dating services, for electronic signing, electronic authentication, confidentiality and non-repudiation. 7.- Technological assessment and certification services such as, but not limited to, technical work involved in the design, construction and testing that make possible the assessment of a product or system, with regard to certain assessment criteria and methods, in order to determine its behaviour under the features and functionality that are

attributed to it and certify the results obtained. 8- Other computer or telecommunication services. 9.- Organization and operation of activities and business related to the performance, engineering, supply, distribution, import, export, purchase and sale of computer services, telecommunication and electronic installations. 10.- Outsourcing Services for information and management systems. 11.- Own development of corporate customer business. 12.- Integration of solutions and their maintenance. Engineering and integration of corporate network solutions. 13.- Provision of those general services required by the companies including, but not limited to, management, administration, operations, quality and legal counsel services provided by the various companies in its group. 14.- Real estate management, lease and commercial and industrial operation – except for financial lease. ------------------------------------------

The company ABENGOA S.A. was appointed Sole Director and the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 545 of protocol, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.-------------------------------------------------------------

17.- **CENTRO TECNOLÓGICO PALMAS ASLTAS S.A.,** holding Spanish

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

Tax I.D. Code number A91371831 and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014.--------------------

Registered at the Companies House of Seville into folio 60, of volume 3963, section no. 8, page SE-58037, registration no. 1.-----------------------

The company's object is the performance of all type of actions for the acquisition, ownership, management, disposal, sale and in any manner exploitation of rural or urban real estate, whatever their qualification, and the performance of any real estate activities, whether promotion, construction or any other type of activities related to the aforesaid object. The Company can carry on such activities totally or partially, on its own or through other companies having the same of similar object, where the company owns or acquires shares or equities.----------------------------------

The company ABENGOA S.A. was appointed Sole Director and the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 543 of protocol, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for executing

this deed of notarization of power of attorney.---------------------------------

18.- **GESTIÓN INTEGRAL DE RECURSOS HUMANOS S.A.,** holding Spanish Tax I.D. Code number A91241703 and corporate domicile in Seville, Calle Energía Solar número 1, Campus Palmas Altas, CP 41014.----

Registered at the Companies House of Seville into folio 157 of general volume of companies 3577, page SE-50384, registration no. 1.-------------

The company's object comprises the activities for staff management, policy advice on professional development in staff management, training and selection.----------------------------------------------------------------------

The company ABENGOA S.A. was appointed Sole Director and the person appearing was appointed individual legal representative by virtue of the deed executed on 11th March 2016, before the notary of Seville Mr. Jose Ruiz Granados, under number 551 of protocol, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.---------------------------------------------------------

19.- "**SIEMA INVESTMENT, S.L.",** with domicile in **41014-Seville, CL. Energía Solar (CAMPUS PALMAS ALTAS), nº 1,** holding Spanish Tax I.D. Code number **B84023373**.-------------------------------------------------

Registered at the Companies House of Seville into volume 5489, folio 188, page number SE-92959.---------------------------------------------------------

The company's object is the development of new business in the

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

telecommunication, information technology, Internet and e-commerce areas.---------------------------------------------------------------------------------

The company ABENGOA S.A. was appointed Sole Director and the person appearing was appointed individual legal representative by virtue of the deed executed on 17th March 2016, before the notary of Madrid Mr. Jose Miguel Garcia Lombardia, under the preceding protocol number, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.---------------------

20.- **ABENGOA ENERGY CROPS S.A.,** with domicile in **41014-Seville, CL. Energía Solar (CAMPUS PALMAS ALTAS), nº 1,** holding Spanish Tax I.D. Code number **A90125196**.--------------------------------------------

Registered at the Companies House of Seville, Page SE-100840, volume 5834, folio 16-----------------------------------------------------------------------

The company's object is to act as a holding or investment company, through investments in other companies, and the company may, for that purpose, incorporate or take part, as a partner or shareholder, in other companies, whatever their nature or object.------------------------------------

The company ABENGOA S.A. was appointed Sole Director and the person appearing was appointed individual legal representative by virtue of the deed executed on 17th March 2016, before the notary of Madrid Mr. Jose

Miguel Garcia Lombardia, under the preceding protocol number, a certified copy of which is shown to me. And, in my opinion and under my responsibility, the powers accredited by the appearing person are considered sufficient for granting this power of attorney.---------------------

The person appearing declares that the subsistence of the Companies represented by him, without any changes in the circumstances of the full capacity thereof, and that the identity details, in particular the company's domicile and object, remain the same.------------------------------------------

I, the Notary, do hereby expressly state that I have complied with the obligation of identifying the beneficial owner imposed by Act 10/2010, of 28th April, and the person appearing herein declares that the companies represented by him are exempted from providing the information about the beneficial owner in accordance with the provisions set under article no. 15.e) of Royal Decree 304/2014 of 5th May, approving the Regulations under the aforesaid Law.-----------------------------------------------------------

**ATTESTATION OF KNOWLEDGE, JUDGMENT OF COMPETENCE AND QUALIFICATION.-------------------------------------------------**I

I identify him by his aforesaid identity documents. He affirms the subsistence and unlimited nature of his capacity and, as acting herein, in my opinion, he has the necessary competence and capacity for executing this deed of notarization of corporate resolutions, and for that purpose,----

--------------------------------- HE PROVIDES: ----------------------------------

ONE. APPROVAL FOR THE RESTRUCTURING OF ABENGOA, S.A.

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

("ABENGOA") AND OF CERTAIN COMPANIES IN ITS GROUP INCLUDING THE ONES MENTIONED HEREINABOVE (THE "COMPANIES").----------------

The Company's Sole Director approves the Company's involvement in the transaction for the restructuring of Abengoa and certain companies in its Group (as debtor, guarantor, obligor or in any other capacity, as applicable), in the terms contained in the restructuring proposal agreed with the Group's creditors without prejudice of any amendments necessaries or convenient to be made during the negotiation process (the "Restructuring Proposal") to approve and accede into one or several restructuring framework agreements (any of them the "Restructuring Framework Agreement") for the purpose of reinforcing the Group's viability in the short and long term, the sustainability of its debt and the gradual reduction in the indebtedness of Abengoa and of its Group and the potential shoring up of the capital structure (the "Restructuring Transaction").------------------------------------------------------------------------

The Sole Director has analysed the suitability and Company's own interest

*Nota: A31029822 v0.5 Bravo_Borrador Acuerdos Consejo de Administración_Eng ha sido facilitado por Abengoa

in relation with the Restructuring Transaction, in particular, provided that a significant part of Abengoa's and certain Group companies' debt (as debtor, guarantor, obligor or in any other capacity, as applicable) will be affected as set out in the Restructuring Proposal. The Company has also analysed the suitability and Company's own interest in relation with the grant, as the case may be, of security to guarantee the indebtedness to be incurred by other companies in its Group in relation to the Restructuring Transaction. Following that analysis, the Sole Director concludes that (a) the entering into the Restructuring and Framework Agreement and the Transaction Documents and (b) the grant of security, as the case may be, by the Company: (i) contributes, directly, to reinforcing the financial position in the short and mid term of each of the Group companies and, indirectly, of the Company and (ii) is necessary to carry out the Restructuring Transaction, which will benefit the Company and the Group.-

The Restructuring Transaction includes, among others, completion of the following, agreements, transactions and actions (together and subject to any law, the "Restructuring Documents"):-----------------------------------------

(i) The signing and execution as a private or public document, of the

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

Restructuring Framework Agreement together with any other debt documents mentioned in the Restructuring Framework Agreement and/or in the Restructuring Proposal which are needed or convenient to implement the transaction contemplated within the Restructuring Proposal including, without limitation, lock-up agreements, standstill agreements or any other type of agreement;-----------------------------------------------------

(ii) the signature of any agreements in order to conduct the acceptation by the Group creditors and any of the Group companies of any write off (quitas) and/or stay (esperas), to convert the debt in any other debt instrument, including loans or convertible bonds with terms and conditions different to the original debt of Abengoa and any of its Group companies;-

(iii) the signature of any agreements in order to conduct the conversion of the Abengoa or Group debt in shares of Abengoa. or any other company of the Group or in subordinated or participative loans;-------------

(iv) the signature of any agreements in order to conduct the entering into any new financing in the form of credit, loans, bonds, credit lines, guarantee lines or any other type of debt or convertible instrument or

warrant of any kind to be made available by or, as the case may be, to be issued by any company in the Group (whether as a result of a single transaction or a set of transactions); or----------------------------------------

(v) the entering into any novation, amendment, extension or increase in any financing in the form of credit, loans bonds, credit lines, guarantee lines or any other type of debt or convertible instrument or warrant of any kind made available by or, as the case may have been, issued by any company in the Group (whether as a result of a single transaction or a set of transactions) including those that amend, novate, extend all or part of the original debt of Abengoa or any of its Group companies.-----------------

The Company's Sole Director, expressly and unreservedly approves:---------

(a) the signing and execution, as a private or public document, of any of the Restructuring Documents by, among others, the Company as debtor, guarantor, obligor or in any other capacity (as applicable);-----------

(b) the signing and execution by the Company, as a private or public document, of any ancillary documents, necessary or convenient in relation with the Restructuring Documents, as well as any agreements ancillary to or related with the Restructuring Transaction;---------------------------------

(c) the signing and execution by the Company of any fee letters

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

(including, without limitation, any letters relating to the Rollover Fee, Opening Fee, the Arrangement Fee and Agency Fee or any fee related to the subscription of the new debt instruments) in relation with the Restructuring Documents;----------------------------------------------------------

(d) if so required, the signing and execution by the Company, as a private or public document, of an inter-creditor agreement which regulates, among others, relations between the creditors under the Restructuring Documents and/or other Company creditors;-------------------

(e) the signing and execution by the Company of any agreements, contracts or documents, whether as a private or public document, subject to Spanish law, English law or to any other law, on the terms and conditions that are convenient or appropriate, for the creation, amendment, novation, correction, ratification, extension, transfer, extinguishment, withdrawal and/or release of any security (including, by way of example, movable or immovable property mortgages, possessory

or non-possessory pledges over any kind of asset or right or mortgage or pledge commitments) expected to be provided to guarantee due performance of the obligations assumed by the Company, Abengoa and any company in its Group under the Restructuring Documents and/or any other document executed pursuant to or in relation with the Restructuring Transaction, including, but not limited to, the signature of the following documents of security (whether first, second or any other ranking) over the Company’s assets and rights from time to time in any jurisdiction (the "Security Documents"):------------------------------------------------------------

(i) movable or immovable property mortgages over the Company’s assets;-------------------------------------------------------------------------------

(ii) pledges over the Company’s shares in any company, as well as appearance for the purpose of taking acknowledgement of the pledges over the Company’s shares that, as the case may be, are granted by its shareholders;---------------------------------------------------------------------

(iii) pledges over sums standing to the credit of the Company’s bank accounts;-----------------------------------------------------------------------------

(iv) pledges over receivables derived from insurance policies or agreements, as well as over rights to receive payment under any other economic agreement;--------------------------------------------------------------

(v) pledges over the intra-group loans to which it is a party, as debtor or creditor, as pledgor and/or for the purpose of taking acknowledgement, as

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

applicable;--------------------------------------------------------------------------

(vi) non-possessory pledges over the Company's inventories;-----------------

(vii) commitments of possessory and non-possessory pledges and/or of movable or immovable property mortgages over any Company assets; and

(viii) any other security or commitments of security that are considered necessary or convenient to secure the obligations under the Restructuring Documents;--------------------------------------------------------------------------

(f) the Company's grant of any irrevocable powers of attorney in relation with the Security Documents to secure due performance of the obligations assumed by each mortgagor, pledgor and/or promissor (the "Irrevocable Powers of Attorney"), which may include authorisation for self-dealing; -------------------------------------------------------------------------

(g) the signing and execution by the Company of any document for the release or novation of existing security, and receipts of payment and cancellation of any finance document which are necessary or convenient

to execute in the context of the Restructuring Transaction; -------------------

(h) the signing and execution by the Company of any document necessary or convenient for the entry into effect of the Restructuring Documents and other documents executed in the context of the Restructuring Transaction, including any document necessary or convenient for the purposes of applying for and processing, as the case may be, in relation to the Transaction Documents (as this term is defined below): (i) court approval under the fourth additional provision of the Spanish Insolvency Act (*Ley Concursal*) (the "Spanish Court Approval"), (ii) the proceedings set out in Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code and (iii) any other proceedings analogous o with similar effects in the Company's jurisdiction or in any other jurisdiction;----

(i) the appointing of a foreign representative with powers of delegation and substitution (the "Foreign Representative") of the Company and of its property and rights located in any jurisdiction (including US) for the purpose of representing the Company for the purposes of (i) petitioning for the proceeding under Chapter 11 of the Title 11 of the US Bankruptcy Code, (ii) petitioning for recognition of the Spanish Court Approval and (or

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

any analogous procedure in any other jurisdiction in the terms set out in Chapter 15 of the Title 11 of the US Bankruptcy Code, (iii) any actions necessary or convenient in accordance with Chapter 11 and Chapter 15 of the Title 11 of the United States Code and (iv) to carry out any actions on behalf of the Company, including all petitions, schedules, lists and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's business;-------------------------------------------------------

(j) authorise the Foreign Representative to employ the law firm of DLA PIPER LLP (US) or any other professionals necessaries or convenient to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the

Company's rights and obligations, including any pleadings; and-------------

(k) authorise the Foreign Representative to execute appropriate retention agreements, pay appropriate retainers, and to cause the payment of fee statements as and when due for any legal services rendered by any professionals (including DLA PIPER LLP (US)) in relation to any proceedings under Chapter 11 and/or Chapter 15 of the Title 11 of the US Bankruptcy Code.---------------------------------------------------------

The documents described in (a) to (h) inclusive, together with the Restructuring Documents, shall be referred to as the "Transaction Documents".----------------------------------------------------------------------

**TWO. AUTHORISATION-----------------------------------------------**

The Sole Director decides to grant specific powers, with authorisation for self-dealing, as extensive as necessary or appropriate in accordance with the law to the following persons (the "Authorised Representatives"):--------

**Mr. Antonio Fornieles Melero**, of full legal age, of Spanish nationality, with professional address at c/ Energía Solar 1, Palmas Altas, Sevilla, España and holder of D.N.I. in force number 27257168Y,---------------------

**Mr. Joaquín Fernández de Piérola Marín**, of full legal age, of Spanish

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

nationality, with professional address at c/ Energía Solar 1, Palmas Altas, Sevilla, España and holder of D.N.I. in force number 16.587.705-J,--------

**Mr. Jesús Ángel García-Quilez**, of full legal age, of Spanish nationality, with professional address at c/ Energía Solar 1, Palmas Altas, Sevilla, España and holder of D.N.I. in force number 27.320.202-C,--------

**Mr. Juan Carlos Jiménez Lora**, of full legal age, of Spanish nationality, with professional address at c/ Energía Solar 1, Palmas Altas, Sevilla, España and holder of D.N.I. in force number 28584961-D,------------------

**Mr. Daniel Alaminos Echarri**, of full legal age, of Spanish nationality, with professional address at c/ Energía Solar 1, Palmas Altas, Sevilla, España and holder of D.N.I. in force number 07.492.396-P,-----------------

**Mr. Ignacio García Alvear**, of full legal age, of Spanish nationality, with professional address at c/ Energía Solar 1, Palmas Altas, Sevilla, España and holder of D.N.I. in force number 28.732. 171-L,-----------------

**Mr. Miguel Angel Jiménez-Velasco Mazarío**, of full legal age, of Spanish nationality, with professional address at c/ Energía Solar 1,

Palmas Altas, Sevilla, España and holder of D.N.I. in force number 28.874.696-J,-----------------------------------------------------------------------

**Ms. Maria del Sol Santana Valencia**, of full legal age, of Spanish nationality, with professional address at c/ Energía Solar 1, Palmas Altas, Sevilla, España and holder of D.N.I. in force number 12.329.254-n,--------

**Mr. Ignacio García Hernández**, of full legal age, of Spanish nationality, with professional address at c/ Energía Solar 1, Palmas Altas, Sevilla, España and holder of D.N.I. in force number 28.498.718-Q--------

so that any of them acting individually, i.e. with a single signature, may in the name and on behalf of the Company (the Company acting on its own account or for another), even where this involves self-dealing, double or multiple representation and/or conflicts of interest:----------------

(a) Sign and execute on behalf of the Company, as a private or public document, of the Restructuring Framework Agreement, as well as negotiate, enter into, sign, execute, perfect, perform, comply with, amend, novate, ratify, clarify, correct, extend, remedy, transfer and/or cancel as debtor, guarantor, obligor or in any other capacity, the any other debt documents mentioned in the Restructuring Framework Agreement and/or in the Restructuring Proposal, and any other documents that could be necessary or convenient in relation with the grant, perfection and

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

performance of the above and, in particular, amend, if necessary, any Transaction Document and, to that effect, appear before any notary public and execute any and all private or public documents that are necessary to enter into those instruments, on the terms decided by the Sole Director in first decision above. ---------------------------------------------------------------

(b) Sign and execute on behalf of the Company, as a private or public document, negotiate, enter into, sign, execute, perfect, perform, comply with, amend, novate, ratify, clarify, correct, extend, remedy, transfer and/or cancel as debtor, guarantor, obligor or in any other capacity any new financing in the form of credit, loans, bonds, credit lines, guarantee lines or any other type of debt or convertible instrument or warrant of any kind made available or to be made available by or, as the case may be, to be issued by any company in the Group (whether as a result of a single transaction or a set of transactions).---------------------------------------------

(c) Negotiate, enter into, sign, execute, perfect, perform, comply with, amend, novate, ratify, clarify, correct, extend, remedy, transfer, release

and/or cancel any security of any type and rank, over any assets, rights and movable or real estate properties owned by Abengoa or any other company of the Group located in any jurisdiction, in relation with or required by the Transaction Documents and/or any other document executed pursuant to or in relation with the Restructuring Transaction, including, without limitation, pledges over shares (*acciones*) and/or quotas (*participaciones sociales*), among others, in its affiliate companies, (including the pledge over the Company's own shares, to take acknowledgement and accept certain obligations), pledges with or without transfer of possession over the credit rights arising from any types of agreements to which Abengoa (or any other companies belonging to the Group) are a party, including, without limitation, services agreements, sale and purchase agreements, intra-group loans; mortgages, chattel mortgages, any other pledges without transfer of possession, promissory guarantees and/or promissory security interests over any assets and/or movable or real estate properties owned by Abengoa (or any other companies belonging to the Group), and equivalent agreements under any foreign jurisdiction and, to that effect, appear before any notary public and execute any and all private or public documents that are necessary or convenient to that effect and, in particular, the Security Documents any

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

other security that must be provided in relation with the Restructuring Transaction and any other Transaction Documents.----------------------------

(d) Sign and execute on behalf of the Company, as a private or public document, any hedging agreement to be entered into in connection with any of the Restructuring Documents.--------------------------------------------

(e) Negotiate, enter into, sign, execute, perfect, perform, comply with, amend, novate, ratify, clarify, correct, extend and/or remedy any document for the release or novation of existing security, and receipts of payment and cancellation of any finance document that are necessary or convenient to execute in the context of the Restructuring Transaction.------

(f) Sign, execute, amend and/or cancel any other private or public document granted "by way of deed" under English law or New York law or any other applicable law, provided that this is necessary or convenient for the Restructuring Transaction and in relation to any Transaction

Document.------------------------------------------------------------------------------

(g) Negotiate, execute, sign, amend, novate and cancel, by means of a private or public document, in the terms deemed convenient any guarantees and/or counterguarantees entered into with any party and for any amount and subject to any jurisdiction.-------------------------------------

(h) Execute, sign, amend, novate and/or cancel any new or existing subordinated or participative loans entered into or to be entered into as lender, borrower, guarantor, obligor or any other capacity.---------------------

(i) Appear before and complete the appropriate declarations and communications and processes for public registers (including any commercial, land or movable property register), judges, courts or other judicial bodies, government authorities (in any case, national or foreign), in particular, the Bank of Spain or securities regulator, Comisión Nacional del Mercado de Valores (or analogous body in other jurisdiction), tax and other authorities or public authorities in relation with the Transaction Documents described herein and exercising the authority referred to herein.---------------------------------------------------------------------------------

(j) Enter into and execute any and all private or public documents that are necessary or convenient including, if necessary, any legally required

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

public disclosures to any public or private, national or foreign bodies or courts, registration at any national or foreign registers that are appropriate and the completion of any and all processes and procedures that are necessary for the purpose, as well as, among other things, authorisation to remedy, clarify, interpret, complete or specify, as the case may be, the resolutions adopted, execute any and all public documents of ratification, correction, remedy and clarification that are required, and, in particular, remedy any identified faults, omissions or errors, even those advised of by written or verbal warning from the commercial register, and which could prevent the resolution from being effective, with authorisation even to apply for partial registration.-----------------------------------------------------

(k) Draft and enter into any and all private or public documents that are necessary and complete any all processes considered relevant before the Comisión Nacional del Mercado de Valores, Sociedad de Gestión de los Sistemas de Registro, Compensación y Liquidación de Valores, S.A. (Iberclear), the Spanish securities exchange and stock exchange regulating associations and any other competent and equivalent national and foreign bodies to comply with and successfully carry out the

***Nota: A31029822 v0.5 Bravo_Borrador Acuerdos Consejo de Administración_Eng ha sido facilitado por Abengoa**

resolutions passed and for the processing of the cases and documents of all types that are necessary at public and private bodies, and in general all processes relating to the above resolutions that are required and necessary for their implementation.-----------------------------------------------

(l) Sign, send or certify in the Company's name all documents and communications that are required under the Transaction Documents in the manner and with the changes that the Authorised Representative with their full discretion may consider necessary or convenient including, but not limited to, any utilisation requests and certified statements of the fulfilment of conditions and/or of financial covenants and/or Officer's Certificates, Formalities Certificates, Compliance Certificate or similar or analogous document.-----------------------------------------------------------------

(m) Enter into, execute or sign any agreement, instrument, power of attorney (including but not limited to the Irrevocable Powers of Attorney), as a private or public document, which the Authorised Representative considers necessary or convenient in relation with the Transaction Documents.---------------------------------------------------------------------------

(n) Sign and execute on behalf of the Company of any document necessary or convenient for the entry into effect of the Restructuring Documents and other documents executed in the context of the Restructuring Proposal, including any document necessary or convenient

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

for the purposes of applying for and processing, as the case may be, court approval of the Restructuring Documents under the fourth additional provision of the Spanish Insolvency Act (*Ley Concursal*), the proceedings set out in Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code and any other proceedings analogous o with similar effects in the Company's jurisdiction or in any other jurisdiction.-----------------------------

(o) Appoint Joaquín Fernandez de Piérola Marín as Foreign Representative with powers of delegation and substitution for the purpose of the proceedings set out under Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code and to exercise the faculties described in paragraphs (i), (j) and (k) of Section One above.-------------------------------

(p) Appear before any Spanish or foreign Notary Public in order to: (i) formalise and raise to public status the Transaction Documents and the Security Documents, together with any acts, documents and agreements related to them and/or which are necessary or convenient for the

execution of the transactions and of the incumbencies contained in this power of attorney; (ii) make any declarations and representations on behalf of the Company, including those required according to Act 10/2010, of 28 April, Prevention of Money Laundering and Financing of Terrorism, as well as any other rules which may implement, complement or replace it in the future; and (iii) grant, if necessary, any deeds of rectification, amendment or confirmation of the Restructuring Documents and the Security Documents, and to request the issue of second and subsequent copies of any public deed.---------------------------------------------------------

(q) Sign any private or public document of remedy, correction, novation, extension, amendment, transfer, cancellation or ratification (including but not limited to those necessary for the registration of any private or public document related with the Transaction Documents at the corresponding land, movable property or any other public register national or foreign) and to complete any other process or do any thing that the Authorised Representatives consider necessary or convenient to achieve the aim described in this second resolution.-------------------------------------

(r) Negotiate and agree the terms and conditions of the documents

***Nota: A31029822 v0.5 Bravo_Borrador Acuerdos Consejo de Administración_Eng ha sido facilitado por Abengoa**

described above which the Authorised Representatives consider most suitable.-----------------------------------------------------------------------------

(s) Execute as a deed and ratify in full all the terms of the documents described above, agreeing to the clauses that the Authorised Representatives consider pertinent, on the terms and conditions that the Authorised Representatives deem suitable.--------------------------------------

(t) File returns and settle the taxes, levies, charges and duty in any jurisdiction derived from the execution of the Transaction Documents, the Restructuring Transaction and any other documents and acts deriving from the completion of the operations and transactions described herein.---------

(u) To take any and all ancillary, related or supplementary actions that are necessary or convenient for the most complete fulfilment of the mandate received, including among others but not limited to making and answering requests and notifications.--------------------------------------------

(v) Sign any and all private or public documents that are necessary or convenient to perform and carry out the powers conferred herein.-----------

Ratify any document and/or action taken as a verbally appointed agent of the Company relating to the authorisations set out in the previous sections.----------------------------------------------------------------------------

The [Board of Directors / the Sole Director] also grants specific powers to Abengoa SA, acting as representative of the Company, to do, by way of example but not limited to, any of the following things:-----------------------

(a) issue and receive any and all notices and communications derived from the Transaction Documents and deliver to the institutions that act as agent under the Transaction Documents and, as the case may be, to the other creditors institutions any and all documents and information that must be provided in accordance with the Transaction Documents;-----------

(b) issue instructions, adopt decisions and provide its consent to the actions that are required for the implementation and fulfilment of the Transaction Documents, whether or not provided for in these;----------------

(c) enter into and execute any and all documents related or supplementary to the Transaction Documents that are necessary, being specifically authorised to ratify, clarify and agree amendments thereof; ----

(d) to make on the Company's behalf all payments that must be made in accordance with the other Transaction Documents; and-------------------

(e) in general, execute any private or public document and take any other action that is necessary or convenient in relation with the development and fulfilment of the Transaction Documents.------------------

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

The powers granted in this authorisation must be construed in their broadest sense, in order for them to fulfil the purpose for which they have been granted, and shall include, in any event, authorisation for self-dealing and/or double or multiple representation for the Authorised Representatives and for those who replace them, are delegated to by them or to whom they grant further powers of attorney.-----------------------

**-------------------------------EXECUTION:-------------------------------**

The appearing party thus states and executes this deed, after all the legal warnings and reservations have been made by me, the Notary, specially the tax reserves, the registration of this deed at the Companies House and at the competent bodies and the one regarding the reading hereof. He declares to have read it and to have found it in order, and therefore he agrees and signs. ----------------------------------------------------------------

Filing at the Companies House. The appearing party, pursuant to the provisions set under article 249 of the Notarial Regulations in force, exonerates me from the online filing of this deed at the pertinent Companies House. --------------------------------------------------------------

Data Protection. According to the provisions set under Spanish Public General Act of Parliament 15/1999, the person appearing before me has

been informed and accepts that his personal details are included into the Notary's office automated files, which shall be kept in confidence therein, subject to references that must be complied with. ----------------------------------

-------------------------------**CERTIFICATION:** -----------------------------

And, I, the Notary, certify this public deed, which is issued on twenty five pieces of stamped impressed paper, numbers CS3087484, CS3087484, CS3087483, CS3087482, CS3087481, CS3087480, CS3087479, CS3087478, CS3087477, CS3087476, CS3087475, CS3087474, CS3087473, CS3087472, CS3087471, CS3087470, CS3087469, CS3087468, CS3087467, CS3087466, CS3087465, CS3087464, CS3087463, CS3087462, CS3087461, and CS3087460. I certify its total contents, and its full compliance with the legislation in force and with the duly informed will of the person appearing, who willingly has given his consent after explaining him its sense and significance, and therefore this must be considered true, complete, legal and valid.-------------------------------------------

The signatures and forms corresponding to the execution and to the certifying Notary, his sign and seal are herein affixed.-------------------------------------------

NOTE.- On the same date when it was certified, I issue a copy for the grantor companies, on twenty-five pieces of paper, numbers CR2532839 and the twenty-four previous ones in correlative order. I DO ATTEST.- Initialled.- J.M.G. LOMBARDÍA. ---------------------------------------------------------------------------

[Seal: NOTARY'S OFFICE OF MR. JOSÉ MIGUEL GARCÍA LOMBARDÍA. NIHIL PRIUS FIDE. MADRID]

RECORD.- In Madrid on 22nd March 2016, **APPEARS**, before me, JOSE MIGUEL GARCÍA LOMBARDÍA, Notary of the Notaries Association of Madrid, MR. JOAQUÍN FERNÁNDEZ DE PIÉROLA MARÍN, of legal age, with domicile for these purposes in Seville-41014, at Campus Palmas Altas, calle Energía Solar, nº 1 and holding Spanish I.D./Tax I.D. number 16587705-J.-----------------------

**HE ACTS** in the capacity which is recorded as accredited in the deed above, I identify him by his aforesaid identity document. He affirms the subsistence and unlimited nature of his capacity and, as acting herein, in my opinion, he has the necessary competence and capacity for executing this record, and for that purpose,----------------------------------------------------------

**-----------------------------HE PROVIDES-----------------------------**

One.- That pursuant to sect. 153 of the Notaries Regulations, this amends the material errors occurred in the wording of power (o) herein, the correct wording of which reads literally as follows:-------------------------------------------

*"(o) Appoint Mr. Christopher Morris, of legal age, of North American nationality, holding U.S. passport issued on 8th October 2010 and number 475053555, as Foreign Representative with powers of delegation and substitution for the purpose of the proceedings set out under Chapter 11 and Chapter 15 of the Title 11 of the US Bankruptcy Code so that, acting in the name and on behalf of the Company, he may exercise the powers described in paragraphs (i), (j) and (k) of Section One above and which are expressly granted to the Foreign Representative."*-----

Two.- In all other particulars, no alteration or amendment is made to the contents of the amended deed.-------------------------------------------------------

And with nothing further to add, the appearing party, as per his choice, reads this record, issued below the deed motivating this amendment, on one State-stamped piece of paper exclusive for notarial purposes, number CR2546824. All the aforesaid is CERTIFIED by me, the Notary.- Here is affixed the signature of the appearing party. Initialled. J.M.G LOMBARDIA. Flourished and sealed.--------

NON-CERTIFIED COPY

# EXHIBIT D
## (5 bis Proceedings (with English Translation))

**Al Juzgado de lo Mercantil de Sevilla que por turno corresponda**

Solicitante: **ABENGOA, S.A. Y VARIAS SOCIEDADES DE SU GRUPO**

Procurador: D. JAVIER OTERO TERRÓN

**COMUNICACIÓN DE NEGOCIACIONES**

## AL JUZGADO

D. JAVIER OTERO TERRÓN, Procurador de los Tribunales de Sevilla, de la mercantil ABENGOA, S.A. (en adelante, "**ABENGOA**"), y de varias sociedades de su grupo que aparecen relacionadas en el documento que se acompaña a la presente comunicación como Documento núm. 1 (en adelante, las "**Solicitantes**"), según acreditaré mediante la oportuna comparecencia *apud acta*, actuando bajo la dirección letrada de D. FRANCISCO MÁLAGA DIÉGUEZ, Colegiado ICAB nº 29.402 y D. JUAN OÑATE DANCAUSA, Colegiado ICAM nº 71.928, pertenecientes al despacho colectivo LINKLATERS SLP, ante el Juzgado comparezco y, como mejor proceda en Derecho,

## DIGO

Que por medio del presente escrito y en virtud de lo dispuesto en el artículo 5 bis de la Ley 22/2003, de 9 de julio, Concursal (en adelante, "**LC**"), formulo **ESCRITO DE COMUNICACIÓN** a los efectos de poner en conocimiento del Juzgado que mis mandantes han iniciado negociaciones con sus acreedores para alcanzar un acuerdo de refinanciación de su deuda, todo ello con base en los siguientes

## HECHOS

### PRIMERO.- LAS SOLICITANTES

1 ABENGOA, S.A. es una sociedad cotizada de nacionalidad española, con domicilio social en Sevilla, en la calle Energía Solar número 1 del Campus Palmas Altas y con CIF número A41002288. Figura inscrita en el Registro Mercantil de Sevilla, tomo 573, libro 362, folio 94, hoja número SE-1507.

2 Fue constituida el 4 de enero de 1941 mediante escritura pública autorizada por el Notario de Sevilla D. FRANCISCO MONEDERO RUÍZ. Posteriormente, mediante escritura autorizada por el Notario de Sevilla D. JUAN PABLO BARRERO DEL NOVAL, fue transformada en sociedad anónima con la denominación de ABENGOA, S.A. MONTAJES ELÉCTRICOS. El 21 de julio de 1980 cambió su denominación por la actual mediante escritura autorizada por el Notario de Sevilla D. ALFONSO CRUZ AUÑÓN.

3 Su objeto social es la promoción y realización de obras civiles de construcción, restauración, mejora y conservación, tanto públicas como privadas, incluyendo toda clase de construcciones industriales, obras y urbanización de terrenos.

4 En la actualidad, ABENGOA es una compañía internacional que aplica soluciones tecnológicas innovadoras para el desarrollo sostenible en los sectores de energía y medioambiente, generando electricidad a partir de recursos renovables, transformando biomasa en biocombustibles o produciendo agua potable a partir del agua de mar.

5 Para abreviar la presente comunicación, aportamos un listado completo de todas las Solicitantes con sus datos identificativos como Documento núm. 1

**Documento núm. 1:** Listado de las sociedades del grupo ABENGOA que suscriben la presente comunicación.

### SEGUNDO.- INICIO DE LAS NEGOCIACIONES CON LOS ACREEDORES

6 Como es público y notorio, las sociedades están manteniendo una serie de negociaciones con sus principales acreedores al objeto de alcanzar un acuerdo global de

reestructuración de sus pasivos que les permita garantizar la viabilidad del grupo en el medio y largo plazo.

## FUNDAMENTOS DE DERECHO

### I COMPETENCIA

7 De conformidad con lo dispuesto en los artículos 86 ter de la Ley Orgánica del Poder Judicial, 10.1 y 5 bis LC, es competente para recibir la presente comunicación el Juzgado de lo Mercantil de Sevilla que por turno corresponda, por estar en Sevilla el domicilio social de la cabecera del grupo, ABENGOA ,y de la mayoría de las Solicitantes y por ser Sevilla el centro de intereses principales de las Solicitantes.

### II LEGITIMACIÓN

8 La legitimación para presentar este escrito de comunicación al Juzgado corresponde exclusivamente a las Solicitantes por ser las entidades deudoras y/o garantes solidarias de las deudas, de conformidad con lo dispuesto en el apartado 1 del artículo 5 bis LC, que dispone:

> El deudor podrá poner en conocimiento del juzgado competente para la declaración de su concurso que ha iniciado negociaciones para alcanzar un acuerdo de refinanciación de los previstos en el artículo 71 bis. 1 y en la Disposición adicional cuarta o para obtener adhesiones a una propuesta anticipada de convenio en los términos previstos en esta Ley.

9 Por lo tanto, mis mandantes ostentan legitimación activa para solicitar la declaración voluntaria de concurso y, por ende, para efectuar la comunicación previa del artículo 5 bis LC, en su condición de deudores y/o garantes solidarios, conforme a lo dispuesto en el artículo 3.1 LC.

10 La decisión de presentar esta solicitud de 5 bis ha sido adoptada por el órgano de administración de cada una de las solicitantes, en aplicación analógica de lo previsto en el artículo 3.1 LC para la solicitud de concurso voluntario.

## III EFECTOS DE LA COMUNICACIÓN

11 Resulta de aplicación lo dispuesto en el apartado 2 del artículo 5 bis LC en cuanto a la no exigibilidad al deudor que efectúe la comunicación prevista en este artículo del deber de presentar la solicitud de concurso voluntario en el plazo de dos meses:

> Esta comunicación podrá formularse en cualquier momento antes del vencimiento del plazo establecido en el artículo 5. **Formulada la comunicación antes de ese momento, no será exigible el deber de solicitar la declaración de concurso voluntario.**

12 También resulta de aplicación lo previsto en el apartado 4 del artículo 5 bis LC que, en relación con las ejecuciones judiciales de bienes o derechos que resulten necesarios para la continuidad de la actividad profesional o empresarial del deudor —con excepción de las ejecuciones administrativas de derecho público, que quedan expresamente excluidas de lo previsto en este artículo— establece que

> 4. Desde la presentación de la comunicación no podrán iniciarse ejecuciones judiciales o extrajudiciales de bienes o derechos que resulten necesarios para la continuidad de la actividad profesional o empresarial del deudor, hasta que se produzca alguna de las siguientes circunstancias:
>
> a) Se formalice el acuerdo de refinanciación previsto en el artículo 71 bis;
>
> b) se dicte la providencia admitiendo a trámite la solicitud de homologación judicial del acuerdo de refinanciación;
>
> c) se adopte el acuerdo extrajudicial de pagos;
>
> d) se hayan obtenido las adhesiones necesarias para la admisión a trámite de una propuesta anticipada de convenio;
>
> e) o tenga lugar la declaración de concurso.

13 En relación con las ejecuciones de dichos bienes que estén en tramitación, resulta de aplicación lo dispuesto en el tercer párrafo del apartado 4 del artículo 5 bis LC:

> Las ejecuciones de dichos bienes que estén en tramitación se suspenderán por el juez que estuviere conociendo de las mismas con la presentación de la resolución del secretario judicial dando constancia de la comunicación.

14 Igualmente resultan de aplicación los artículos 15.3 y 22.1 *in fine* LC, por lo que (i) no se admitirán otras solicitudes de concurso presentadas con posterioridad a la presente comunicación, e igualmente, en el eventual caso de que finalmente se instase el concurso

por el deudor y, (ii) la solicitud de concurso voluntario que, en su caso, instasen mis mandantes, se retrotraerá a la fecha de la presentación de esta comunicación.

Por lo expuesto,

## SUPLICO

Al Juzgado que, teniendo por presentado este escrito junto con los documentos acompañados, se sirva admitirlos y tenga por efectuada en tiempo y forma la comunicación prevista en el artículo 5 bis LC a los efectos previstos en este precepto y los demás que resulten de aplicación, entre ellos, los artículo 15.3 y 22.1 LC por parte de ABENGOA, S.A., ABENGOA FINANCE, S.A.U., ABENGOA GREENFIELD, S.A., ABENCOR SUMINISTROS, S.A., INSTALACIONES INABENSA, S.A., ABENER ENERGÍA, S.A., ABENGOA GREENBRIDGE, S.A., ABEINSA, INGENIERÍA Y CONSTRUCCIÓN INDUSTRIAL, S.A., ABENGOA BIOENERGÍA, S.A., ABENTEL TELECOMUNICACIONES, S.A., ABEINSA INFRAESTRUCTURAS MEDIO AMBIENTE, S.A., ECOAGRÍCOLA, S.A., NEGOCIOS INDUSTRIALES Y COMERCIALES, S.A., BIOETANOL GALICIA, S.A., TEYMA GESTIÓN DE CONTRATOS DE CONSTRUCCIÓN E INGENIERÍA, S.A., EUROPEA DE CONSTRUCCIONES METÁLICAS, S.A., SIEMA TECHNOLOGIES, S.L., ABENGOA WATER, S.L.U., ABENGOA SOLAR ESPAÑA, S.A., ABENGOA SOLAR NEW TECHNOLOGIES, S.A., ABENGOA SOLAR, S.A., ABEINSA INVERSIONES LATAM, S.L., ABENGOA CONCESSIONS, S.L., ABEINSA ASSET MANAGEMENT, S.L. y ASA DESULFURACIÓN, S.A. y, en consecuencia acuerde:

(i) tener por presentada la comunicación de inicio de negociaciones con los acreedores de las sociedades anteriormente citadas;

(ii) declarar que mientras se encuentren vigentes los efectos de esta comunicación no podrán iniciarse ejecuciones singulares sobre los bienes necesarios para la actividad empresarial;

(iii) declarar que, en caso de iniciarse procedimientos de ejecución de garantías reales frente a las sociedades anteriores, éstos quedan inmediatamente suspendidos hasta que expire el plazo de vigencia de esta comunicación, e

(iv) inadmitir cualquier solicitud de concurso necesario que se presente durante el plazo de tres meses más un mes desde la presentación de esta comunicación.

A30768502

## OTROSÍ DIGO

Que se interesa que este Juzgado fije día y hora para que los legales representantes de las sociedades solicitantes otorguen los correspondientes poderes *apud acta*.

## SUPLICO

Al Juzgado que tenga por efectuada la anterior solicitud y, en su virtud, se sirva fijar día y hora para que los legales representantes de las sociedades solicitantes otorguen los correspondientes poderes *apud acta*.

En Sevilla, a 25 de noviembre de 2015.

FRANCISCO MÁLAGA DIÉGUEZ
Letrado ICAB 29402

JAVIER OTERO TERRÓN
Procurador

JUAN PABLO OÑATE DANCAUSA
Letrado ICAM 71928

A30768502

| | Sociedad | Domicilio social | Datos registrales | CIF |
|---|---|---|---|---|
| 1 | ABENGOA, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, tomo 573, libro 362, folio 94, hoja SE-1507 | A-41002288 |
| 2 | ABENGOA FINANCE, S.A.U. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, tomo 5288, folio 22, hija SE-87408 | A-91900266 |
| 3 | ABENGOA GREENFIELD, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, tomo 5904, folio 43, hoja SE-102300 | A-90153677 |
| 4 | ABENCOR SUMINISTROS, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, tomo 587, hoja SE-13095 | A-41002312 |
| 5 | INSTALACIONES INABENSA, S.A. | Calle Manuel Velasco Pando 7, Sevilla | Registro Mercantil de Sevilla, folio 51, tomo 2056, hoja SE-20724 | A-41694266 |
| 6 | ABENER ENERGÍA, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 117, tomo 2056, hoja SE-20734 | A-41679788 |
| 7 | ABENGOA GREENBRIDGE, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, tomo 5913, folio 53, hoja SE-102555 | A-90158452 |
| 8 | ABEINSA, INGENIERÍA Y CONSTRUCCIÓN INDUSTRIAL, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 28, tomo 3606, hoja SE-50910 | A-91251355 |
| 9 | ABENGOA BIOENERGÍA, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 149, tomo 3487, hoja SE-48688 | A-41002312 |

A30769161

| | | | | |
|---|---|---|---|---|
| 10 | ABENTEL TELECOMUNICACIONES, S.A. | Avenida del Reino Unido 1, Sevilla | Registro Mercantil de Sevilla, folio 212, tomo 2865, hoja SE- 36548 | A-41980178 |
| 11 | ABEINSA INFRAESTRUCTURAS MEDIO AMBIENTE, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 23, tomo 1298, hoja SE-1768 | A-41290792 |
| 12 | ECOAGRÍCOLA, S.A. | Carretera Nacional 343, Km 7.5, Valle de Escombreras, Cartagena (Murcia) | Registro Mercantil de Murcia, folio 45, sección 8, tomo 1827, hoja MU-38638 | A-30751986 |
| 13 | NEGOCIOS INDUSTRIALES Y COMERCIALES, S.A. | Paseo del General Martínez Campos 15, Madrid | Registro Mercantil de Madrid, folio 1, tomo 13332, hoja M-212340 | A-41008640 |
| 14 | BIOETANOL GALICIA, S.A. | Carretera Nacional 634, Km 664.3, Polígono industrial Teixeiro, Teixeiro-Curtis, A Coruña | Registro Mercantil de A Coruña, folio 169, sección 8ª, libro 1953, hoja CO-28072 (antes PO-19446) | A-36822146 |
| 15 | TEYMA GESTIÓN DE CONTRATOS DE CONSTRUCCIÓN E INGENIERÍA, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, tomo 4881, folio 101, hoja SE-78337 | A-91735852 |
| 16 | EUROPEA DE CONSTRUCCIONES METÁLICAS, S.A. | Carretera A376 Sevilla-San Pedro de Alcántara, Km. 22.3, Utrera (Sevilla) | Registro Mercantil de Sevilla, folio 125, tomo 242, hoja SE-20054 | A-41031303 |
| 17 | SIEMA TECHNOLOGIES, S.L. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 212, tomo 5489, hoja SE-92605 | B-84023340 |
| 18 | ABENGOA WATER S.L.U. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 5131, tomo 150, hoja SE-83802 | B-91826958 |

| | | | | |
|---|---|---|---|---|
| 19 | ABENGOA SOLAR ESPAÑA, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 185, tomo 5368, hoja SE-47290 | A-91185314 |
| 20 | ABENGOA SOLAR NEW TECHNOLOGIES, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 160, tomo 4267, hoja SE-64699 | A-91492116 |
| 21 | ABENGOA SOLAR, S.A. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 1, tomo 4568, hoja SE-71375 | A-91609982 |
| 22 | ABEINSA INVERSIONES LATAM, S.L. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 18, tomo 5360, hoja SE-89281 | B-85719680 |
| 23 | ABENGOA CONCESSIONS, S.L. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 161, tomo 5784, hoja SE-99466 | B-90108044 |
| 24 | ABEINSA ASSET MANAGEMENT, S.L. | Calle Energía Solar número 1 del Campus Palmas Altas, Sevilla | Registro Mercantil de Sevilla, folio 81, tomo 1725, hoja SE-13166 | B-78654597 |
| 25 | ASA DESULFURACIÓN, S.A. | Calle Santa Ana 26, Polígono Barrondo, Etxebarri (Vizcaya) | Registro Mercantil de Vizcaya, folio 116, tomo 1529, hoja BI-18744 | A-48090823 |

A30769161

**To the Mercantile / Commercial court of Seville whose turn it is in the rotation**

Applicant: ABENGOA, S.A. AND SEVERAL SUBSIDIARIES / COMPANIES OF ITS GROUP

Attorney: Mr. JAVIER OTERO TERRÓN

COMMUNICATION OF NEGOTIATIONS

## THE COURT

Mr. JAVIER OTERO TERRÓN, Attorney of Seville's Court, of the company ABENGOA, S.A. (hereinafter, "ABENGOA"), and of several subsidiaries / companies of its group that are detailed in the attached document to this communication as Document no. 1 (hereinafter, the "Applicants"), according to the appropriate appearance *apud acta,* acting under legal representative of Mr. FRANCISCO MÁLAGA DIÉGUEZ, Collegiate Court ICAB no. 29.402 and Mr. JUAN OÑATE DANCAUSA, Collegiate Court ICAM no. 71.928, belonging to the joint office LINKLATERS SLP, appearing before the Court and, in best accordance with Law,

## STATE

By means of this document and in accordance with rule 5 bis of the Law 22/2003, of July 9, pertaining to Bankruptcy Proceedings (hereinafter, "BL"), puts forward WRITTEN COMMUNICATION for the purposes of bringing to notice of the Court that my clients have begun negotiations with their creditors to reach an agreement for the refinancing of their debt, all based on the following

## FACTS

### FIRST.– THE APPLICANTS

1 ABENGOA, S.A. Is a listed company of Spanish nationality, with registered office in Seville, on Energía Solar Street, no. 1 of Campus Palmas Altas and Tax ID Number A41002288. Inscribed in the Trade Registry of Seville, volume 573, book 362, folio 94, page number SE-1 507.

2 It was incorporated on January 4, 1941 by public deed authorized by the Notary Public of Seville MR. FRANCISCO MONEDERO RUÍZ. Subsequently, by means of deed authorized by the Notary Public of Seville MR. JUAN PABLO BARRERO DEL NOVAL, it was converted into a public-limited company under the name ABENGOA, S.A. MONTAJES ELÉCTRICOS. On July 21, changed its name for the currently used by means of deed authorized by the Notary Public of Seville MR. ALFONSO CRUZ AUÑÓN.

3 Its company purpose is the promotion and completion of civil engineering construction, reconstruction, improvement and conservation, both public and private, including all types of industrial constructions, civil works and land development.

4 At the present time, ABENGOA is an international company that applies technological innovative solutions for the sustainable development in the sectors of energy and environment, generating energy from renewable resources, transforming the biomass in biofuels or producing drinking water from salt water.

5 In order to shorten this communication, we provide a complete listing of all the Applicants with all their identification details being Document no. 1

| | |
|---|---|
| Document no. 1: undersigned | Listing of Company's subsidiaries ABENGOA that this communication |

### SECOND.– BEGINNING OF NEGOTIATIONS WITH CREDITORS

6 As made public and given notice, the subsidiaries are establishing a series of negotiations with their principal creditors in order to reach a global agreement for the restructuring of their liabilities that allow them to guarantee the group's viability in the medium and long term.

A30768502

## LEGAL GROUNDS

### I JURISDICTION / POWER / AUTHORITY

7 In accordance with the provisions of articles 86 ter of the Organic Law of the Judiciary, 10.1 y 5 bis BL, it is appropriate for the Mercantile / Commercial Court of Seville whose turn it is in the rotation to receive this communication, pertaining to Seville as the registered office of the head company of the group, ABENGOA, AND of most Applicants and by being Seville the centre of main interest of the Applicants.

### II LEGAL STANDING / LEGITIMATION / CAPACITY

8 The legal capacity to present this communication to the appropriate Court belongs exclusively to the Applicants as they are the debtor companies and/or joint warrantor of the debts, in accordance with the section 1 of the article 5 bis BL, providing:

> The debtor may raise awareness to the appropriate court for the declaration of its bankruptcy that it has initiated negotiations to reach agreement on refinancing provided in article 71 bis. 1 and in the fourth additional provision or to obtain acceptances for a proposal of agreement with the creditors in the terms provided in this Law.

9 Therefore, my clients hold the active and legitimate power to voluntarily seek the court's assistance in order to be declared bankrupt and, for that matter, to conduct the prior communication of article 5 bis BL, in the status of debtor and/or joint warrantor, in accordance with the article 3.1 BL

10 The decision to submit this request of 5 bis has been adopted by the administrative body of each of the Applicants, in the analogous application provided in article 3.1 BL for the request of voluntary bankruptcy.

## III PURPOSES OF THE COMMUNICATION

11 Section 2 of article 5 bis BL shall apply as far as the non-enforceability of the debtor that conducts the communication provided in this article for the obligation of submitting the voluntary bankruptcy request within a period of two months:

> This communication may be presented any time before the established expiry of the period in article 5. If communication is submitted before that moment, the obligation for declaration request for voluntary bankruptcy will not be enforceable.

12 Also applicable as provided in section 4 of Article 5bis BL is that, in accordance to judicial executions of assets or rights that are necessary for the continuity of professional or business activity of the debtor —with the exception of the administrative executions of public law, that are expressly excluded from this provided article— stipulates that

> 4. From the submission of communication no judicial or extra judicial executions of assets or rights that are necessary for the continuity of professional or business activity of the debtor may be initiated, until any of the following circumstances takes place:
> a) Refinancing agreement is formalized as provided in article 71 bis;
> b) providence is issued permitting to proceed for the request of approval by the courts of the refinancing agreement.
> c) extra judicial payment agreement is established;
> d) Joint acceptances have been obtained for the permission to proceed for a proposal of agreement;
> e) or declaration of bankruptcy takes place.

13 Regarding to the executions of assets that are in process, provided third paragraph of section 4 of article 5 bis BL is applicable:

> The execution of the assets that are in process will be suspended by the judge having knowledge of them with the submission of the judicial clerk's court ruling providing confirmed evidence of communication.

14 Articles 1 5.3 y 22.1 are also applicable *in fine* BL, therefore (i) other bankruptcy requests will not be admitted that are submitted after this communication, and furthermore, in the unlikely event of bankruptcy being finally called on by the creditor and, (ii) the voluntary bankruptcy request that, where appropriate, are called on by my clients, will be retreated to the date of this communication's submission.

For all these reasons,

## PLEA

**To the Court that, in view of the lodging of this pleading and the documents attached to it, to please admit them and consider carried out in due form and time the communication provided in article 5 bis BL for the purposes in this legal provision and others that are applicable, among them, articles 1 5.3 y 22.1 BL on behalf of** ABENGOA, **S.A.,** ABENGOA FINANCE, **S.A.U.,** ABENGOA CREENFIELD, **S.A.,** ABENCOR SUMINISTROS, **S.A.,** INSTALACIONES INABENSA, **S.A.,** ABENER ENERGÍA, **S.A.,** ABENGOA GREENBRIDGE, **S.A.,** ABEINSA, INGENIERÍA Y CONSTRUCCIÓN INDUSTRIAL, **S.A.,** ABENGOA BIOENERGÍA, **S.A.,** ABENTEL TELECOMUNICACIONES, **S.A.,** ABEINSA INFRAESTRUCTURAS MEDIO AMBIENTE, **S.A.,** ECOAGRÍCOLA, **S.A.,** NEGOCIOS INDUSTRIALES Y COMERCIALES, **S.A.,** BIOETANOL GALICIA, **S.A.,** TEYMA GESTIÓN DE CONTRATOS DE CONSTRUCCIÓN E INGENIERÍA, **S.A.,** EUROPEA DE CONSTRUCCIONES METÁLICAS, **S.A.,** SIEMA TECHNOLOGIES, **S.L.,** ABENGOA WATER, **S.L.U.,** ABENGOA SOLAR ESPAÑA, **S.A.,** ABENGOA SOLAR NEW TECHNOLOGIES, **S.A.,** ABENGOA SOLAR, **S.A.,** ABEINSA INVERSIONES LATAM, **S.L.,** ABENGOA CONCESSIONS, **S.L.,** ABEINSA ASSET MANAGEMENT, **S.L. and ASA** DESULFURACIÓN, **S.A. and, therefore agrees that:**

(i) consider as submitted the communication of negotiation initiation with the creditors of the previously stated subsidiaries;

(ii) declare that while the effects of this communication are in force special executions will not be initiated upon the assets that are necessary for the continuity of professional or business activity;

(iii) declare that, in case of collateral guarantees enforcement proceedings are commenced against the previously stated companies, these will be immediately suspended until the period of validity of this communication has expired, and

(iv) not admit any necessary bankruptcy request that is submitted during the period of three months plus a month from submission of this communication.

## ADDITIONAL PLEADING

That it is of interest that this Court sets day and time for the legal representatives of the companies grant the appropriate powers apud *acta*.

## PLEA

To the Court has as the previous request as carried out and, by virtue, sets day and time for the legal representatives of the companies grant the appropriate powers apud *acta*.

Seville, November 25, 201 5.

FRANCISCO MÁLAGA DIÉCUEZ Lawyer ICAB 29402

JAVIER OTERO TERRÓN Attorney

JUAN PABLO OÑATE DANCAUSA

**Lawyer ICAM 71928**

| | Company | Registered office | Registration details | Tax ID Number |
|---|---|---|---|---|
| 1 | Abengoa, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, volume 573, book 362, folio 94, page SE-1 507 | A-41002288 |
| 2 | Abengoa Finance, S.A.U. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, volume 5288, folio 22, page SE-87408 | A-91900266 |
| 3 | Abengoa Greenfield, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, volume 5904, folio 43, page SE-T 02300 | A-90153677 |
| 4 | Abencor Suministros, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, volume 587, page SE— T 3095 | A-41002312 |
| 5 | Instalaciones Inabensa, S.A. | Manuel Velasco Pando Street, no. 7, Seville | Trade Registry of Seville, folio 51, volume 2056, page SE-20724 | A-41694266 |
| 6 | Abener Energía, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 11 7, volume 2056, page SE-20734 | A-41679788 |
| 7 | Abengoa Greenbridge, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, volume 591 3, folio 53, page SE-102555 | A-90158452 |
| 8 | Abeinsa, Ingeniería Y Construcción Industrial, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 28, volume 3606, page SE-50910 | A-91251355 |
| 9 | Abengoa Bioenergía, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 149, volume 3487, page SE-48688 | A-41002312 |

| | | | | |
|---|---|---|---|---|
| 10 | ABENTEL TELECOMUNICACIONES, S.A. | Reino Unido Avenue, no. 1, Seville | Trade Registry of Seville, folio 212, volume 2865, page SE- 36548 | A-41980178 |
| 11 | ABEINSA INFRAESTRUCTURAS MEDIO AMBIENTE, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 23, volume 1 298, page SE-1 768 | A-41290792 |
| 12 | ECOAGRICOLA, S.A. | National Route 343, Km 7.5, Valle de Escombreras, Cartagena (Murcia) | Trade Registry of Murcia, folio 45, section 8, volume1827, page MU-38638 | A-30751986 |
| 13 | NEGOCIOS INDUSTRIALES Y COMERCIALES, S.A. | Paseo del General Martínez Campos 1 5, Madrid | Trade Registry of Madrid, folio 1, volume 1 3332, page M-212340 | A-41008640 |
| 14 | BIOETANOL GALICIA, S.A. | National Route 634, Km 664.3, Industrial estate of Teixeiro, Teixeiro- Curtis, A Coruña | Trade Registry of A Coruña, folio 169, section 8th, book 1953, page CO- 28072 (former PO-19446) | A-36822146 |
| 15 | TEYMA GESTIÓN DE CONTRATOS DE CONSTRUCCIÓN E INGENIERÍA, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, volume 4881, folio 101, page SE-78337 | A-91735852 |
| 16 | EUROPEA DE CONSTRUCCIONES METÁLICAS, S.A. | Route A376 Seville-San Pedro de Alcántara, Km. 22.3, Utrera (Seville) | Trade Registry of Seville, folio 125, volume 242, page SE-20054 | A-41031303 |
| 17 | SIEMA TECHNOLOGIES, S.L. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 212, volume 5489, page SE-92605 | B-84023340 |
| 18 | ABENGOA WATER S.L.U. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 5131, volume 1 50, page SE-83802 | B-91826958 |

| | | | | |
|---|---|---|---|---|
| 19 | ABENGOA SOLAR ESPAÑA, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 185, volume 5368, page SE-47290 | A-91185314 |
| 20 | ABENGOA SOLAR NEW TECHNOLOGIES, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 160, volume 4267, page SE-64699 | A-91492116 |
| 21 | ABENGOA SOLAR, S.A. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 1, volume 4568, page SE-71 375 | A-91609982 |
| 22 | ABEINSA INVERSIONES LATAM, S.L. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 18, volume 5360, page SE-89281 | B-85719680 |
| 23 | ABENGOA CONCESSIONS, S.L. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 161, volume 5784, page SE-99466 | B-90108044 |
| 24 | ABEINSA ASSET MANAGEMENT, S.L. | Energía Solar Street, number 1 of Campus Palmas Altas, Seville | Trade Registry of Seville, folio 81, volume 1 725, page SE-13166 | B-78654597 |
| 25 | ASA DESULFURACIÓN, S.A. | Santa Ana Street, no. 26, Industrial estate of Barrondo, Etxebarri (Biscay) | Trade Registry of Biscay, folio 116, volume 1529, page BI-18744 | A-48090823 |

# JUZGADO DE LO MERCANTIL Nº 2 DE SEVILLA

C/ Vermondo Resta, S/N Edificio Viapol Planta Tercera
Tlf.: 955519098-99 ; 662977872-73. Fax: 955921010
NIG: 4109142M20150006170
**Procedimiento: Comunicación art. 5.3 de la Ley Concursal 2694/2015. Negociado: 8**
Sobre: PRE-CONCURSO
De: D/ña. ABENGOA, S.A.
Procurador/a Sr./a.: JAVIER OTERO TERRON
Letrado/a Sr./a.: FRANCISCO MALAGA DIEGUEZ

JAVIER OTERO TERRON
LCDO. EN DERECHO
PROCURADOR DE LOS TRIBUNALES
C/. Juan Sebastian Elcano, 19 - 5º Izq.
Teléf./Fax: 954 45 90 02 41011 SEVILLA

15 DIC 2015

**DECRETO Nº 277/15**

**DOÑA ISABEL MARIA ROCA NAVARRO**

En Sevilla, a catorce de diciembre de dos mil quince.

## HECHOS

Por el/la Procurador JAVIER OTERO TERRON, en nombre y representación de ABENGOA, S.A. Y OTRAS, se presenta escrito solicitando se tenga por hecha en tiempo y forma la comunicación establecida en el artículo 5 bis de la Ley Concursal.

## RAZONAMIENTOS JURÍDICOS

**PRIMERO.-** La Ley 9/25 de Medidas Urgentes en Materia Concursal introduce modificaciones en el texto del ART 5 BIS, que queda redactado de la ss manera:

1. El deudor podrá poner en conocimiento del juzgado competente para la declaración de su concurso que ha iniciado negociaciones para alcanzar un acuerdo de refinanciación de los previstos en el artículo 71 bis.1 y en la Disposición adicional cuarta o para obtener adhesiones a una propuesta anticipada de convenio en los términos previstos en esta Ley.
En el caso en que solicite un acuerdo extrajudicial de pago, una vez que el mediador concursal propuesto acepte el cargo, el registrador mercantil o notario al que se hubiera solicitado la designación del mediador concursal deberá comunicar, de oficio, la apertura de las negociaciones al juzgado competente para la declaración de concurso.
2. Esta comunicación podrá formularse en cualquier momento antes del vencimiento del plazo establecido en el artículo 5. Formulada la comunicación antes de ese momento, no será exigible el deber de solicitar la declaración de concurso voluntario.
3. El secretario judicial ordenará **la publicación en el Registro Público Concursal** del "extracto de la resolución" por la que se deje constancia de la comunicación presentada por el deudor o, en los supuestos de negociación de un acuerdo extrajudicial de pago, por el notario o por el registrador mercantil, en los términos que reglamentariamente se determinen.
Caso de solicitar expresamente el deudor el carácter reservado de la comunicación de negociaciones, no se ordenará la publicación del extracto de la resolución.
El deudor podrá solicitar el levantamiento del carácter reservado de la comunicación en cualquier momento.
4. Desde la presentación de la comunicación no podrán iniciarse ejecuciones judiciales o extrajudiciales de bienes o derechos que resulten necesarios para la continuidad de la actividad profesional o empresarial del deudor, hasta que se produzca alguna de las siguientes circunstancias:
a) Se formalice el acuerdo de refinanciación previsto en el artículo 71 bis.1;
b) se dicte la providencia admitiendo a trámite la solicitud de homologación judicial del acuerdo de

refinanciación;
c) se adopte el acuerdo extrajudicial de pagos;
d) se hayan obtenido las adhesiones necesarias para la admisión a trámite de una propuesta anticipada de convenio;
e) o tenga lugar la declaración de concurso.
**En su comunicación el deudor indicará qué ejecuciones se siguen contra su patrimonio y cuáles de ellas recaen sobre bienes que considere necesarios para la continuidad de su actividad profesional o empresarial, que se harán constar en el decreto por el cual el secretario judicial tenga por efectuada la comunicación del expediente. En caso de controversia sobre el carácter necesario del bien se podrá recurrir aquel decreto ante el juez competente para conocer del concurso.**
Las ejecuciones de dichos bienes que estén en tramitación **se suspenderán** por el juez que estuviere conociendo de las mismas con la presentación de la resolución del secretario judicial dando constancia de la comunicación. Las limitaciones previstas en el primer párrafo del presente apartado quedarán levantadas si el juez competente para conocer del concurso resolviera que los bienes o derechos afectados por la ejecución no son necesarios para la continuidad de la actividad profesional o empresarial y, en todo caso, una vez transcurridos los plazos previstos en el apartado siguiente.
Tampoco podrán iniciarse o, en su caso, quedarán suspendidas las ejecuciones singulares, judiciales o extrajudiciales, promovidas por los acreedores de pasivos financieros a los que se refiere la disposición adicional cuarta sobre cualesquiera otros bienes o derechos del patrimonio del deudor siempre que se acredite documentalmente que un porcentaje no inferior al 51 por ciento de pasivos financieros han apoyado expresamente el inicio de las negociaciones encaminadas a la suscripción del acuerdo de refinanciación, comprometiéndose a no iniciar o continuar ejecuciones individuales frente al deudor en tanto se negocia.
Lo dispuesto en los cuatro párrafos anteriores no impedirá que los acreedores con garantía real ejerciten la acción real frente a los bienes y derechos sobre los que recaiga su garantía sin perjuicio de que, una vez iniciado el procedimiento, quede paralizado mientras no se haya realizado alguna de las actuaciones previstas en el primer párrafo de este apartado o haya transcurrido el plazo previsto en el siguiente apartado.
Quedan, en todo caso, excluidos de las previsiones contenidas en este apartado los procedimientos de ejecución que tengan por objeto hacer efectivos créditos de derecho público.
5. Transcurridos tres meses desde la comunicación al juzgado, el deudor, haya o no alcanzado un acuerdo de refinanciación, o un acuerdo extrajudicial de pagos o las adhesiones necesarias para la admisión a trámite de una propuesta anticipada de convenio, deberá solicitar la declaración de concurso dentro del mes hábil siguiente, a menos que ya lo hubiera solicitado el mediador concursal o no se encontrara en estado de insolvencia.
6. Formulada la comunicación prevista en este artículo, no podrá formularse otra por el mismo deudor en el plazo de un año."

Los efectos de dicha comunicación son varios: la ampliación del plazo en el que el deudor tiene el deber de solicitar el concurso establecido en el artículo 5.1, esto es, dos meses desde que se conoce o se hubiera debido conocer el estado de insolvencia; y la paralización de las solicitudes de concurso necesario, ya que según dispone el nuevo artículo 15.3 LC, en la redacción dada por la Ley 38/11 de Reforma de la Ley Concursal "una vez realizada la comunicación prevista en el artículo 5 bis y mientras no transcurra el plazo de tres meses previsto en dicho precepto, no se admitirán solicitudes de concurso a instancia de otros legitimados distintos del deudor. Las solicitudes que se presenten con posterioridad sólo se proveerán cuando haya vencido el plazo de un mes hábil previsto en el citado artículo si el deudor no hubiera presentado solicitud de concurso. Si el deudor presenta solicitud de concurso en el citado plazo se tramitará en primer lugar conforme al artículo 14. Declarado el concurso, las solicitudes presentadas previamente y las que se presenten con posterioridad, se unirán a los autos, teniendo por comparecidos a los solicitantes."

**SEGUNDO.-** Del tenor del precepto se deduce que la ley no establece ningún requisito que deba reunir la comunicación previa, tan solo que se presente ante el juzgado competente para la declaración del concurso.

No regula la ley la forma en que ha de tramitarse dicha declaración. Se trata de una mera comunicación, esto es, una puesta en conocimiento del juzgado competente de de unas circunstancias que concurren en el deudor: o que se encuentra en situación de insolvencia actual o que ha iniciado negociaciones con sus acreedores para obtener adhesiones a una propuesta anticipada de convenio o las negociaciones necesarias para alcanzar un acuerdo de refinanaciacion de los previstos en el Art 71bis1 y en la DA 4ª, o de reestructuración de los pasivos que permita garantizar la viabilidad del grupo en el medio y largo plazo.

Cuestión distinta es que, si a lo largo del procedimiento se comprobase que las circunstancias comunicadas por el deudor no concurrían , éste pueda perder los beneficios derivados de dicha comunicación. Será en un momentos posterior cuando se pueda valorar cómo ha actuado el deudor y cómo ha hecho uso de esta facultad. Del texto legal de ley se deduce que existe obligación de solicitar el concurso en el nuevo plazo legal, y es entonces cuando se han de acreditar los presupuestos necesarios para su declaración, dando cuenta al juez competente y este deberá resolver lo procedente.

**TERCERO.-** En el caso de autos, la comunicación se presenta ante el Juzgado que se considera inicialmente competente y al que se solicita que se tenga por hecha en tiempo y forma, sin perjuicio de la decisión final sobre competencia que corresponde valorar al juez en el momento de la declaración del concurso correspondiente y al que se solicita que la tenga por hecha en tiempo y forma. Por el deudor se manifiesta que ha iniciado negociaciones con sus acreedores que le permitan alcanzar un acuerdo de refinanciación de su deuda y de reestructuración de los pasivos.

Teniendo en cuenta los argumentos expuestos, procede tener por presentada dicha comunicación a los efectos legales oportunos, dejándose constancia de la misma como señala la ley.

**CUARTO.-** Conforme a lo dispuesto en el artículo 5 bis.4 de la LC, resulta procedente señalar las ejecuciones que el deudor tiene frente a su patrimonio e indicar cuales recaen sobre bienes que el mismo considere necesarios para la continuidad de su actividad profesional o empresarial.

No se tiene conocimiento de que se haya iniciado ninguna ejecución sobre bienes necesarios para la continuación de la actividad, según escrito presentado por la instante con fecha 10/12/2015.

La comunicación valorando las necesidades de funcionamiento de esta sede, corresponde a la propia parte, actuando su deber de colaboración y mas elemental diligencia, haciendo valer directamente la presente declaración en los respectivos procedimientos y expedientes que tuviere pendiente.

En atención a lo expuesto

**DISPONGO:** Se tiene por presentada la comunicación previa anterior a la solicitud de concurso voluntario de acreedores, presentada por el Procurador JAVIER OTERO TERRON, en nombre y representación de

ABENGOA, S.A.- C.I.F. A-41002288

ABENGOA FINANCE, S.A.U. -C.I.F. A-91900266

ABENGOA GREENFIELD, S.A.- C.I.F. A-90153677

ABENCOR SUMINISTROS, S.A.- C.I.F. A-41002312

INSTALACIONES INABENSA, S.A.- C.I.F. A-41694266

ABENER ENERGIA, S.A.- C.I.F. A-41679788

ABENGOA GREENBRIDGE, S.A. C.I.F. A-90158452

ABEINSA, INGENIERIA Y CONSTRUCCION INDUSTRIAL, S.A. C.I.F. A-91251355

ABENGOA BIOENERGIA, S.A. C.I.F. A-41002312

ABENTEL TELECOMUNICACIONES, S.A. C.I.F. A-41980178

ABEINSA INFRAESTRUCTURAS MEDIO AMBIENTE, S.A. C.I.F. A-41290792

ECOAGRICOLA, S.A. C.I.F. A-30751986

NEGOCIOS INDUSTRIALES Y COMERCIALES, S.A. C.I.F. A-41008640

BIOETANOL GALICIA, S.A. C.I.F. A-36822146

TEYMA GESTION DE CONTRATOS DE CONSTRUCCION E INGENIERIA, S.A. C.I.F. A-91735852

EUROPEA DE CONSTRUCCIONES METALICAS, S.A. C.I.F. A-41031303

SIEMA TECHNOLOGIES, S.L. C.I.F. B-84023340

ABENGOA WATER, S.L.U. C.I.F. B-91826958

ABENGOA SOLAR ESPAÑA, S.A. C.I.F. A-91185314

ABENGOA SOLAR NEW TECHNOLOGIES, S.A. C.I.F. A-91492116

ABENGOA SOLAR, S.A. C.I.F. A-91609982

ABEINSA INVERSIONES LATAM, S.L. C.I.F. B-85719680

ABENGOA CONCESSIONS, S.L. C.I.F. B-90108044

ABEINSA ASSET MANAGEMENT, S.L. C.I.F. B-78654597

ASA DESUFULRACION, S.A. C.I.F. A-48090823;

todo ello, sin perjuicio de la valoración, en cu caso, sobre competencia para admitir el concurso que pudiera plantearse.

Acuerdo que durante el plazo de **tres meses** desde la presentación de esta solicitud no se provea ninguna de las solicitudes de concurso necesario que pudieran presentarse contra dicha entidad. Transcurrido dicho plazo, la entidad deberá presentar solicitud de concurso voluntario en el plazo de **un mes**, a contar desde la fecha de la comunicación presentada en el Decanato con fecha 25/11/2015 y cuyo plazo finaliza el 28/03/2016.

Expídanse a la representación del preconcursado los testimonios que le fueren necesarios de la presente resolución para que pueda hacer valer directamente, y a su instancia, la misma en los respectivos procedimientos y expedientes que tuviere pendiente a los efectos que enderecho le comprendan.

Conforme al apartado tercero, se ordena la publicación en el Registro Público Concursal del extracto de la presente resolución, sin perjuicio de expedir igualmente los testimonios necesarios, a fin de que se lleve a cabo dicha publicación por la instante del expediente , advertidas las dificultades técnicas acaecidas en anteriores asuntos análogos para llevarlo a efecto por el propio

juzgado, y en aras a su mejor diligenciado, dando cuenta del resultado.

**MODO DE IMPUGNACIÓN : Contra la presente resolución cabe interponer Recurso de Revisión en el plazo de cinco días desde la notificación del mismo, si bien dicho recurso sólo puede afectar al pronunciamiento sobre el carácter necesario del bien y no al resto de la resolución.**

**Para lleva a efecto el mismo los ejecutantes y los que se crean perjudicados por la declarcion de necesidad del bien podran recurrir la resolucion personandose en el presente procedimiento dentro de los 5 dias ss a que tuvieran conocimiento de la presente resolucion por cualquier medio,notificandoseles la misma en forma y comenzando correr el plazo de recurso desde dicha notificacion.**

Lo acuerdo y firmo

LA LETRADA DE LA ADMINISTRACION DE JUSTICIA

# COMMERCIAL COURT NO. 2 OF SEVILLE

C/ Vermondo Resta, S/N Edificio Viapol Planta Tercera
Tel.: 955519098-99; 662977872-73. Fax: 955921010
NIG:4109142M20150006170
**Proceedings: Notice Article 5.3 of [Spain's] Bankruptcy and Insolvency Act 2694/2015. Department: 8**
On: PRE-BANKRUPTCY
Of: D/ña. ABENGOA, S.A.
Attorney/Paralegal: Javier Oterio Terron Esq.
Legal Counsel: Francisco Malaga Dieguez

**JAVIER OTERIO TERRON ESQ.**
LICENSED TO PRACTISE LAW
ATTORNEY/PARALEGAL OF THE COURTS
C/. Juan Sebastián Elcano, 19- 5° Izq.
Tel./Fax: 954 45 90 02 41011 SEVILLA

## DECREEE NO. 277/15

**DOÑA ISABEL MARIA ROCA NAVARRO**

At Seville, on the fourteenth day of December of two thousand and fifteen. 15 DIC 2015

## FACTS

Through the Attorney/Paralegal Javier Oterio Terron, for and on behalf of ABENGOA, S.A. AND OTHERS, an application is made in writing to request that the notice specified in Article 5 bis of [Spain's] Bankruptcy and Insolvency Act be completed in a timely manner.

## LEGAL GROUNDS

**ARTICLE ONE**.- Law 9/25 of the Urgent Measures in Bankruptcy Matters introduces amendments to the text of ARTICLE 5 BIS, while leaving the rest of the document unchanged:

1. The debtor may inform the competent court seized of its bankruptcy proceedings that it has begun negotiations to reach an agreement on refinancing provided for in Article 71(1) and in the fourth additional Provision or to obtain acceptances for a proposal of early agreement under the terms provided in this Act.
In case an application is made with respect to a court settlement payment, once the proposed insolvency mediator accepts the appointment, the commercial registrar or notary who had requested the appointment of the insolvency mediator shall, on its own initiative, disclose the opening of negotiations to the competent court seized of these bankruptcy proceedings.
2. This notice may be made at any time before the deadline set out in Article 5. If this notice is made before the deadline date, there will be no requirement to file for voluntary bankruptcy.
3. The clerk shall order **the publication in the Bankruptcy Public Register** of the “extract of the resolution” acknowledging that the notice was filed by the debtor or, in the cases of negotiating a court settlement payment, by the notary or the commercial registrar, under the terms established by regulation.
If the debtor expressly requests that the notice of negotiations be confidential, the publication of the extract of the resolution shall not be ordered.
The debtor may request that the confidential nature of the notice be lifted at any time.
4. From the time that the notice has been filed, the judicial or extrajudicial foreclosure of

assets and rights that are necessary for the continuity of the professional or business activity of the debtor may not be initiated until one of the following circumstances has occurred:a) the refinancing agreement under Article 71(i) has been formalized;
b) the ruling is issued accepting the process of the application for judicial approval of the refinancing agreement;
c) the court settlement of payments is adopted;
d) the necessary accessions for accepting the process of a proposal of early agreement;
e) or the filing for bankruptcy has taken place.
**In its notice the debtor shall indicate that there are still outstanding foreclosures against its assets and which of those assets affected by these foreclosures that it deems necessary for the continuity of its professional or business, which shall be recorded in the decree where the court clerk make effective the notice for the record. In case of dispute about the necessity of the asset, that decree may be appealed before the competent court to hear the bankruptcy proceedings.**
The pending foreclosures against these properties **shall be suspended** by the judge seized of these proceedings with the filing of the resolution of the court clerk providing a record of the notice. The restrictions set out in the first paragraph of this provision shall remain lifted if the competent court to hear these bankruptcy proceedings rules that the assets or rights affected by the foreclosure are not necessary for the continuity of the professional or business activity and, in any case, once the deadlines specified in the following provision have elapsed.
nor they may be initiated or, where appropriate, are suspended Extrajudicial or judicial singular foreclosures, promoted by creditors of financial liabilities to which the fourth additional provision on any other assets or rights of the debtor's assets is referred provided that there is documentary proof that a percentage of no less than fifty-one percent (51%) of financial liabilities have expressly supported the initiation of negotiations for the signing of the refinancing agreement, it being agreed that individual foreclosures against the debtor shall not be initiated or continued so long as the negotiations for the refinancing agreement are ongoing.
The provisions of the preceding four paragraphs shall not preclude secured creditors from exercising real action against the assets and rights they hold as secured collateral notwithstanding that, once the process has been initiated, it is suspended while any of the actions set out in the first paragraph of this provision has not been completed or the period set out in the following provision has elapsed.
In any case, the foreclosure proceedings to make public law claims effective remain excluded from the provisions contained in this provision.
5. Three months after notice to the court, the debtor, whether or not a refinancing agreement or an extrajudicial settlement of payments has been reached or the accessions necessary for accepting the process of a proposal of early agreement, shall file for bankruptcy within the following business month, unless the bankruptcy mediator had already requested it or it will not be in a state of insolvency.
6. Once the notice under this article has been made, another one need not be made by the same debtor within a year."

The effects of this notice are different: the extension of the period in which the debtor must file for bankruptcy pursuant to Article 5.1, that is, two months from the time that the state of insolvency was known or ought to have been known; and the suspension of the applications for necessary bankruptcy, because according to the new Article 15.3 of [Spain's] Bankruptcy and Insolvency Act, as amended by Reform Law 38/11 of [Spain's] Bankruptcy and Insolvency Act "once the notice provided for in Article 5a has been made and while the period of three months has not elapsed provided for in that provision, applications for

bankruptcy from other legitimate parties other than the debtor shall not be accepted. Applications submitted after shall only be provided once the period of one business month set out in the aforementioned article has elapsed if the debtor had not filed an application for bankruptcy. If the debtor files an application for bankruptcy within the aforementioned period, It will be processed first under Article 14. Once bankruptcy has been filed, the previously and subsequently filed applications shall be added to the court records, and appearance by the applicants was held."

**ARTICLE TWO**.- It is clear from the wording of the provision that the law does not establish any requirement that prior notice should fulfill, so long as it is filed with the competent court for the filing of bankruptcy.

The law does not regulate how that filing is to be processed. It is merely a notice, i.e. disclosing certain circumstances related to the debtor to the competent court: or that it is in a situation of actual insolvency or has begun negotiations with its creditors to obtain accessions for a proposal of early agreement or the negotiations required for reaching a refinancing agreement referred to in Art 71(1) and the DA 4th or the restructuring of liabilities that would ensure the viability of the group in the medium and long term.

It is a different matter if, throughout the proceedings, it is found that the circumstances reported by the debtor were not met, the benefits of such notice may be lost. How the debtor has acted and how it has made use of this power will be assessed at a later time. It is clear from the legal text of the law that there is an obligation to apply for bankruptcy in the new legal term, and that is when the budgets required for its filing must be accredited, informing the competent court and this shall resolve what arose therefrom.

**ARTICLE THREE**.- In the case of court records, the notice comes before the Court initially deemed competent and where it is requested that it be taken for granted in a timely manner, without prejudice to the final decision on competency which corresponds to assessing the court at the time of filing the corresponding bankruptcy and and to which it is requested that it be taken for granted in a timely manner. The debtor states that it has begun negotiations with its creditors to reach an agreement on refinancing its debt and restructuring of liabilities.

Given the arguments put forward, this notice should be considered filed for legal purposes, leaving a record of it as prescribed by law.

**ARTICLE FOUR**.- Pursuant to the provisions of Article 5(4) of [Spain's] Bankruptcy and Insolvency Act, it is appropriate to point out the foreclosures that the debtor has against its assets and indicate which assets are affected by these foreclosures that it deems necessary for the continuity of its business or professional activity.

It is not aware of any foreclosure proceedings that have been commenced on assets required for the continuation of the activity, as currently lodged with the date 12/10/2015.

The notice assessing the operational requirements of this office, corresponds to the part itself, acting its duty of cooperation and elementary diligence, making this filing a direct validation in the respective pending proceedings and records.

In light of the foregoing

**I ORDER THAT**: The previous notice prior to the first application for voluntary bankruptcy of creditors, filed by Attorney/Paralegal Javier Oterio Terron, for and on behalf of

ABENGOA, S.A.- C.I.F. A-41002288

ABENGOA FINANCE, S.A.U. -C.I.F. A-91900266

ABENGOA GREENFIELD, S.A.- C.I.F. A-90153677

ABENCOR SUMINISTROS, S.A.- C.I.F. A-41002312

INSTALACIONES INABENSA, S.A.- C.I.F. A-41694266

ABENER ENERGIA, S.A.- C.I.F. A-41679788

ABENGOA GREENBRIDGE, S.A. C.I.F. A-90158452

ABEINSA, INGENIERIA Y CONSTRUCCION INDUSTRIAL, S.A. C.I.F. A-91251355

ABENGOA BIOENERGIA, S.A.- C.I.F. A-41002312

ABENTEL TELECOMUNICACIONES, S.A. C.I.F. A-41980178

ABEINSA INFRAESTRUCTURAS MEDIO AMBIENTE, S.A. C.I.F. A-41290792

ECOAGRICOLA, S.A. C.I.F. A-30751986

NEGOCIOS INDUSTRIALES Y COMERCIALES, S.A. C.I.F. A-41008640

BIOETANOL GALICIA, S.A. C.I.F. A-36822146

TEYMA GESTION DE CONTRATOS DE CONSTRUCCION E INGENIERIA, S.A. C.I.F. A-91735852

EUROPEA DE CONSTRUCCIONES METALICAS, S.A. C.I.F. A-41031303

SIEMA TECHNOLOGIES, S.L. C.I.F. B-84023340

ABENGOA WATER, S.L.U. C.I.F. B-91826958

ABENGOA SOLAR ESPANA, S.A. C.I.F. A-91185314

ABENGOA SOLAR NEW TECHNOLOGIES, S.A. C.I.F. A-91492116

ABENGOA SOLAR, S.A. C.I.F. A-91609982

ABEINSA INVERSIONES LATAM, S.L. C.I.F. B-85719680

ABENGOA CONCESSIONS, S.L. C.I.F. B-90108044

ABEINSA ASSET MANAGEMENT, S.L. C.I.F. B-78654597

ASA DESUFULRACION, S.A. C.I.F. A-48090823;

all without prejudice to the assessment, if any, on jurisdiction for accepting the bankruptcy that may arise.

It is agreed that during the period of **three months** from the filing of this application, no application for required bankruptcy that may be filed against this entity may be provided. After this period has expired, the entity shall file for voluntary bankruptcy within **one month** from the date the notice was filed in the Court Clerk's Office dated 11/25/2015 and whose deadline is 03/28/2016.

Please forward to the representation of the bankrupt the final decree that will be necessary for this resolution so that it can be directly enforced, and at its request, the same in the respective pending proceedings and records for the purposes that in law are understood.

Under the third provision, it is ordered that the extract of this resolution shall be published in the Bankruptcy Public Registry, without prejudice to issuing also the final necessary decree so that this publication may be carried out by the time of the file, warned of technical difficulties that occurred in previous analogous matters to take effect by the court's own affairs, and in the interests of its best diligence, taking into account the result.

**HOW TO APPEAL: An appeal for review must be brought within five days of notification of this resolution, although this appeal may only affect the decision on the necessity of the asset and not on the rest of the resolution.**

**To carry it out the enforcers and those who were prejudiced by the filing of necessity of the asset may appeal against the resolution in person in these proceedings within 5 days of becoming aware of this resolution by any means, they being notified of same in form and the period of appeal commencing to run from this notification.**

I hereby agree and sign

THE LEGAL COUNSEL FOR THE ADMINISTRATION OF JUSTICE

# EXHIBIT E
## (Judicial Confirmation Request and Decree (with English Translation))

JUZGADO DECANO DE SEVILLA
OFICINA DE REPARTO
28 MAR. 2016
PRESENTADO

*Solicitud de Homologación Judicial del Acuerdo de Refinanciación. ABENGOA, S.A. y sociedades filiales.*
*NIG: 4109142M20150006170*
*Juzgado Mercantil número 2 de Sevilla*

## AL JUZGADO DE LO MERCANTIL NÚMERO 2 DE SEVILLA

D. Javier Otero Terrón, Procurador de los Tribunales de Sevilla, en nombre y representación de ABENGOA, S.A. (en adelante, "**ABENGOA**" o "**Compañía**", indistintamente), y de las sociedades de su grupo domiciliadas en España cuya denominación y datos se relacionan en la lista adjunta como **documento número 1** (en adelante, y conjuntamente con ABENGOA, "**Solicitantes**"), según acredito mediante las escrituras de poder que se acompañan como **documento número 2**, solicitando sean testimoniadas y me sean devueltas, por necesitarlas para otros usos, bajo la dirección de los abogados de la firma CORTES, ABOGADOS, D. Jaime Cano Ruiz, del Ilustre Colegio de Abogados de Madrid con el número 42.841 y D. José Machado Plazas, del Ilustre Colegio de Abogados de Manresa con el número 612, ante el Juzgado comparezco y como mejor proceda en Derecho,

### DIGO:

Que, por la representación que ostento y siguiendo las instrucciones de mis mandantes, solicito por la presente la HOMOLOGACIÓN JUDICIAL DEL ACUERDO DE REFINANCIACIÓN que se adjunta como **documento número 3** , de conformidad con la Disposición Adicional Cuarta y concordantes de la Ley Concursal (en adelante, "**LC**"). Solicitud que fundamento en los siguientes

### HECHOS:

**PRIMERO.- Características de las Solicitantes**

1. ABENGOA tiene su domicilio social en Sevilla, Campus Palmas Altas, calle Energía Solar número 1. Se encuentra inscrita en el Registro Mercantil de esta provincia, al tomo 573, libro 362, folio 94, hoja número SE-1507, y está provista con número de identificación fiscal A-41002288, tal y como resulta de la nota

simple informativa expedida por el Registro Mercantil de Sevilla que se acompaña como **documento número 4**.

2. ABENGOA es la sociedad dominante de un grupo internacional de sociedades con más de 75 años de actividad, y sede de dirección efectiva en Sevilla que, al cierre del ejercicio de 2015, estaba integrado por casi 700 sociedades, domiciliadas en prácticamente todo el mundo.

3. ABENGOA es esencialmente una empresa de ingeniería que aplica soluciones tecnológicas innovadoras para el desarrollo sostenible en los sectores de energía y medioambiente, generando electricidad a partir de recursos renovables, transformando biomasa en biocombustibles o produciendo agua potable a partir del agua de mar. ABENGOA ha articulado su negocio en torno a tres actividades: (i) Ingeniería y construcción: En ingeniería y construcción aglutina su actividad tradicional de ingeniería en energía y agua. Es especialista en la ejecución de proyectos complejos "llave en mano": plantas termosolares, híbridas solar-gas, de generación convencional y de biocombustibles; infraestructuras hidráulicas, incluyendo grandes desaladoras, y líneas de transmisión de energía eléctrica, entre otros. (ii) Infraestructuras de tipo concesional: Cuenta con una amplia cartera de activos propios de carácter concesional, donde los ingresos están regulados mediante contratos de venta a largo plazo, tipo compra garantizada ("*take or pay*") o suministro-venta de energía ("*power purchase agreement*"). Incluye en esta actividad la operación de plantas de generación eléctrica (solares, cogeneración o eólicas) y de desalación, así como de líneas de transmisión. (iii) Producción industrial: En esta última actividad se agrupan los negocios con un alto componente tecnológico, como los biocombustibles o el desarrollo de tecnología solar. En estas actividades, la Compañía ostenta una posición de liderazgo importante en los mercados geográficos donde opera.

4. Las particularidades más destacables de ABENGOA son las siguientes:

   (i) ABENGOA y el total de sus filiales proporciona empleo directo a más de 21.932 personas en todo el mundo, de las cuales más de 6000 trabajan en

España y 4000 en Andalucía. Se trata, en su mayo parte, de empleo de alta cualificación profesional. Durante el año 2014, la Compañía trabajó con, aproximadamente, 15.000 proveedores en 81 países, generando un elevado volumen de empleo indirecto, que sólo en Andalucía se eleva a 8.000 empleos. Una hipotética liquidación y cierre de la Compañía añadiría en torno a seis décimas de incremento la cifra del paro andaluz, actualmente situada en el 31,2 por 100.

(ii) El impacto directo de ABENGOA en el conjunto de la economía andaluza constituye un 1,8 por 100 del PIB andaluz. Por otra parte, la inversión de la Compañía en I+D+i asciende a 530 millones de Euros, lo que representa el 15 por 100 en Andalucía.

(iii) A pesar de las dificultades derivadas del actual contexto económico global y particular, que han supuesto una disminución del volumen de negocio de ABENGOA, la Compañía cerró el año 2015 con una facturación de 5.755 millones de Euros y un EBITDA de 515 millones de Euros, según se desprende de los *Estados financieros resumidos consolidados correspondientes al segundo semestre del ejercicio 2015*, publicados en el Registro oficial de la Comisión Nacional del Mercado de Valores, (en adelante, "**CNMV**"), que se acompañan como **documento número 5**.

(iv) En cuanto a la diversificación geográfica de ABENGOA, América del Sur y América del Norte, que representan un 38 por 100 y un 26 por 100, respectivamente, de las ventas del año fiscal 2015, son las regiones clave para ABENGOA. Las áreas geográficas restantes permanecen prácticamente estables: España representa el 14 por 100; el resto de Europa, el 11 por 100; África, el 8 por 100; y Oriente Medio y Asia, el 3 por 100.

(v) Una de las características históricas del negocio de ABENGOA es que reinvierte un elevado porcentaje de la liquidez que genera en nuevos negocios. Es decir, es un negocio muy intensivo en capital. Igualmente, es destacable que los proyectos de ingeniera y de construcción de ABENGOA

requieren de forma recurrente la aportación de avales técnicos y financieros, necesarios para la adjudicación y contratación de nuevos proyectos.

(vi) ABENGOA, de acuerdo con el Plan de Viabilidad Industrial a largo plazo realizado por la firma internacional Álvarez & Marsal (incluido en este escrito como parte del **documento número 6**), es una empresa viable que centrará sus actividades en construcciones para terceros y en proyectos llave en mano y concesiones, con los que lograría un margen de entre el 8,75 por 100 y el 14 por 100. Se puede afirmar, según las conclusiones de Álvarez & Marsal que ABENGOA actualmente vale siete veces más como empresa en funcionamiento que en un escenario de liquidación.

(vii) ABENGOA es una sociedad cotizada en el Mercado Continuo, con una capitalización bursátil aproximada, a fecha de hoy, de 290 millones de Euros y con un capital flotante o *"free-float"*, esto es, con un porcentaje susceptible de ser negociado habitualmente en bolsa y no propiedad de accionistas de control de forma estable, alrededor de un 49 por 100.

(viii) ABENGOA tiene un accionista mayoritario, en concreto, Inversión Corporativa, IC, S.A., quien, directa e indirectamente, controla una participación total de un 51,79 por 100 de los derechos de voto y que, siendo uno de los firmantes del Acuerdo de Refinanciación, apoya el proceso de restructuración iniciado.

5. En el documento número 5, los *Estados Financieros Resumidos Consolidados correspondientes al segundo semestre del ejercicio 2015*, se explica con mayor detalle la estructura de ABENGOA, sus principales actividades y las cifras más significativas de su negocio.

**SEGUNDO.- Proceso de refinanciación**

6. ABENGOA, conjuntamente con todas sus filiales, es un grupo internacional viable, que, desde junio de 2015, tal y como ahora desarrollaremos, está inmersa en un plan de optimización de su estructura financiera y de negocios, en el que se

incluye el Acuerdo de Refinanciación para las empresas del grupo domiciliadas en España, cuya solicitud de homologación judicial se presenta hoy, y que se proyecta y completa con la ejecución de un Plan de Viabilidad global.

7. A principios del segundo semestre de 2015, ABENGOA, tras la formulación de los estados financieros intermedios resumidos consolidados de 30 de junio de 2015, y ante la situación de los mercados, inició un plan de optimización de su estructura financiera con el objetivo de reforzar su posición financiera y de negocio.

8. A tales efectos, con fechas de 3 de agosto y 24 de septiembre de 2015, ABENGOA comunicó al mercado y a la CNMV la intención de llevar a cabo determinadas medidas dirigidas a obtener nueva financiación ("fresh money"), reducir los requerimientos de inversión, así como disminuir el nivel de endeudamiento. En concreto, el Consejo de Administración tomó la decisión de proponer a una Junta General Extraordinaria: i) la aprobación de una ampliación de capital con derechos de suscripción preferente por un importe de 650 millones de Euros en el que participaría el accionista principal y algunos bancos acreedores; ii) un plan adicional de desinversión en activos; y, iii) la adaptación de su actual modelo de negocio a menores requerimientos de inversión (capex) con el objetivo de reforzar la posición financiera de ABENGOA y reducir su nivel de dependencia en el endeudamiento. Véase al respecto **documentos número 7 y número 8** en los que se incluyen el hecho relevante de 3 de agosto de 2015 número 227258 y el hecho relevante de 24 de septiembre de 2015 número 228656.

9. El 23 de septiembre de 2015, ABENGOA y ciertas entidades financieras firmaron un acuerdo de préstamo sindicado de 125.000.000 de Euros ("Revolving Facilities") con el objetivo de atender las necesidades de tesorería y de proyectos del grupo.

10. El 10 de octubre de 2015 se celebró la Junta General Extraordinaria en la que se aprobaron las medidas referidas en el apartado 8 anterior, y, en especial, se acordó un aumento de capital por la cantidad de 650.000.000 de Euros así como determinadas instrucciones al Consejo de Administración de observancia de un

límite máximo a los compromisos de inversión (el contenido completo de estos acuerdos se encuentra en el **documento número 9**, hecho relevante de 10 de octubre de 2015, número 229580).

11. El 22 de octubre de 2015, se firmó otro préstamo de 135.000.000 de Euros entre la sociedad filial de nacionalidad inglesa Abengoa Concessions Investment Limited y Talos Capital Limited (the "TCI Margin Loan"), que contribuyó al sostenimiento económico del Grupo.

12. El 8 de noviembre de 2015, siguiendo con la estrategia iniciada en junio de 2015, ABENGOA anunció al mercado la firma de un Acuerdo de bases para la inversión en ABENGOA de la empresa Gonvarri Corporación Financiera que contaba, además, con el apoyo de Inversión Corporativa, IC. S.A., accionista de referencia de ABENGOA, véase al respecto hecho relevante de 8 de noviembre de 2015 número 230769, aportado como **documento número 10**. El Acuerdo regulaba la inversión de Gonvarri en el marco del aumento de capital aprobado por la Junta General de accionistas del 10 de octubre de 2015, y, se había previsto que una parte de su inversión, por un importe de 250.000.000 Euros, se ejecutara en una ampliación de capital con exclusión de derecho de suscripción preferente. El Acuerdo de Inversión estaba sometido a diversas condiciones. El resultado de la operación hubiera significado que Gonvarri, tras la ampliación de capital, hubiera alcanzado el 28 por 100 de la totalidad de los derechos de voto de la sociedad.

13. Sin embargo, el 25 de noviembre de 2015 Gonvarri Corporación Financiera comunicó al mercado que desistía de la realización de dicha operación.

14. En esas circunstancias, ABENGOA decidió iniciar un proceso de negociación con sus acreedores financieros tendente a asegurar la necesaria estabilidad financiera que permitiera la revisión de su estrategia, la realización de un nuevo plan de negocio y asegurase la continuidad del Grupo a medio y largo plazo. Con objeto de permitir que dicho proceso pudiera desarrollarse con la necesaria seguridad, el Consejo de Administración de ABENGOA consideró que lo más adecuado era presentar la comunicación prevista en el artículo 5 bis de la LC, en cuanto a un cierto número de sociedades del grupo domiciliadas en España, que, como

veremos, se ha ido ampliando a otras sociedades a medida que transcurrían las negociaciones. Se aporta copia del hecho relevante de 27 de noviembre de 2015 número 231488 como **documento número 11.**

15. Los hitos principales de este proceso de negociación iniciado a partir del 25 de noviembre de 2015 han sido los siguientes:

(i) El 25 de noviembre de 2015, ABENGOA junto a 24 sociedades más de su grupo puso en conocimiento al Juzgado el inicio de negociaciones con sus acreedores para alcanzar un acuerdo de refinanciación de su deuda en virtud de lo dispuesto en el artículo 5 bis LC. La tramitación, con el número 2694/2015, negociado 8°, recayó en el Juzgado de lo Mercantil n. 2 de Sevilla (véase, **documento número 12**) .

(ii) Durante el mismo mes de noviembre, la Compañía invitó a los principales acreedores para que se agruparan en torno a un Comité de Coordinación (en adelante, el "**CoCom**") formado por sus seis principales entidades financieras, y se organizaron también los titulares de una parte significativa de la deuda representada por bonos (en adelante, "el **Comité Ad-hoc**").

(iii) Para afrontar este proceso de negociación la Compañía creó también un Comité de Seguimiento interno en el que además participaron y se integraron asesores legales (Cortés, Abogados) y asesores financieros (Lazard).

(iv) Finalmente, en las mismas fechas, se encomendó a Álvarez & Marsal el análisis y presentación de un plan de viabilidad industrial, lo que exigía la revisión y análisis uno por uno de los más de 200 proyectos que la Compañía desarrolla en todo el mundo, con objeto de determinar su rentabilidad y sus necesidades de tesorería, así como la cartera de proyectos de inminente iniciación tanto a corto como a largo plazo.

(v) Todo este proceso ha estado y está simultáneamente siendo monitorizado por KPMG, el asesor financiero designado por las entidades financieras.

(vi) El 3 de diciembre de 2015, seis sociedades más de su grupo comunicaron al mismo Juzgado que también estaban incluidas en el perímetro de las negociaciones que se estaban teniendo con los acreedores a los efectos del artículo 5 bis LC. Esta segunda comunicación recayó igualmente en el Juzgado de lo Mercantil Núm. 2 de Sevilla y se tramita con el número de procedimiento 2729/2015, Negociado 8º (véase **documento número 13**).

(vii) El 15 diciembre se amplió, sucesivamente, la solicitud del 5 bis LC a otras sociedades del grupo (15 más en total), recayendo en el Juzgado de lo Mercantil número 2 de Sevilla, y se tramita con el número de procedimiento 2756/2015, Negociado 8º (véase **documentos número 14**).

(viii) En este contexto y en el marco de las negociaciones que se estaban manteniendo con diversos acreedores financieros, y con la finalidad de disponer de la tesorería necesaria, la Compañía Abengoa Concessions Investment Limited suscribió el 24 de diciembre de 2015 un contrato de préstamo por importe de 106 millones de Euros con un conjunto de entidades financieras.

(ix) A finales del mes de enero de 2016, Álvarez & Marsal finalizó el Plan de Viabilidad Industrial proponiendo los términos esenciales y estratégicos de la actividad industrial de la Compañía en los próximos cinco años, y determinando las necesidades globales de tesorería para llevarlo a efecto. Este Plan de Viabilidad Industrial fue comunicado al mercado y a la CNMV por medio del hecho relevante número 234267 con fecha de 26 de enero de 2016 (aportado como **documento número 15**).

(x) El Plan de Viabilidad Industrial permite garantizar la transformación de la vieja ABENGOA en la nueva ABENGOA gracias a un nuevo enfoque de sus actividades y negocios que permite evolucionar desde una Compañía que requería participar como un inversor financiero en sus proyectos integrados a corto y largo plazo, a una Compañía que ha

centrando sus áreas de negocio en el desarrollo de proyectos técnicos integrados de construcción y de energía para terceras personas y financiados por terceros y que además busca inversores para la financiación de sus propios proyectos de ingeniería. Se trata de un nuevo modelo de Compañía que se centra en proyectos con unos requerimientos acotados de capital (véase al respecto documento número 6).

(xi) Sobre la base de dicho plan, los asesores financieros del grupo, Lazard, prepararon y acordaron con los asesores financieros de las entidades acreedoras una propuesta de restructuración financiera necesaria para continuar su actividad y operar de forma competitiva y sostenible en el futuro.

(xii) En fecha 16 de marzo de 2016, la Compañía, con el apoyo de KPMG (asesores de las entidades financieras acreedoras) y de Houlihan Lokey (asesor de los bonistas), informó en una presentación pública de las bases y términos esenciales de un acuerdo de restructuración de su deuda financiera y recapitalización del grupo, alcanzado con el CoCom y el Comité Ad-hoc, que permiten el desarrollo del Plan de Viabilidad Industrial global de ABENGOA (ver documento número 6).

(xiii) Las bases y términos esenciales de este acuerdo de reestructuración son:

(a) El importe del dinero nuevo que se prestará a la Compañía ascenderá a una cantidad de entre 1.500 millones y 1.800 millones de Euros por un plazo máximo de 5 años.

(b) Se aportarán nuevas líneas de avales técnicos hasta el importe máximo de 800 millones de Euros, para facilitar al Grupo emprender nuevos proyectos.

(c) La deuda histórica financiera correspondiente a las líneas de liquidez concedidas al Grupo con fecha de 23 de septiembre y 24 de diciembre de 2015 por un importe total de 231 millones de Euros (más gastos

financieros devengados) será objeto de refinanciación mediante la extensión de su plazo por dos (2) años ("Roll-over money").

(d) Los acreedores financieros, previa quita del 70 por 100 del dinero viejo, tendrán derecho a recibir un 95 por 100 del capital repartido de la siguiente manera: los prestamistas de nueva liquidez, un 55 por 100 del capital, los nuevos avales, un 5 por 100, y la deuda existente un 35 por 100, reservándose para los actuales accionistas un 5 por 100 del capital social que, cumplidas ciertas condiciones, podrá incrementarse hasta un 10 por 100.

(e) Todo este proceso de refinanciación requerirá, efectivamente, ser aprobado por la Junta General de accionistas. Al respecto, es importante destacar y subrayar que el accionista mayoritario tiene el compromiso de votar a favor de esta restructuración.

(f) En definitiva, este acuerdo de reestructuración de la deuda financiera es un acuerdo fundamentado en grandes retos de dinero nuevo, grandes sacrificios de dinero viejo y de la propiedad con el que se quiere garantizar la continuidad de la empresa, su gran valor industrial y tecnológico, además de su gran valor laboral.

16. En el marco de este contexto de negociaciones con los acreedores financieros de ABENGOA, con fecha de 21 de marzo de 2016, la sociedad Abengoa Concessions Investments Limited ("ACI"), filial de la Compañía, ha suscrito un contrato de préstamo con algunos de los bonistas por una cantidad de 137.094.751,30 de Euros con la finalidad de satisfacer las necesidades generales del negocio de la Compañía y sus filiales (véase hecho relevante de 22 de marzo de 2016 con número 236611, **documento número 16**). La fortaleza del respaldo de los acreedores financieros se aprecia en las aportaciones de dinero nuevo recientemente realizadas y con la previsión de las futuras aportaciones contenida en la cláusula 10 del Acuerdo de Refinanción.

17. El Acuerdo de Refinanciación cuya solicitud de homologación se presenta por parte de las Solicitantes, dotado de autonomía y plena eficacia jurídica propia, se

integra funcionalmente en este Plan de Viabilidad Industrial que garantiza la viabilidad de ABENGOA.

**TERCERO.- El Acuerdo de Refinanciación**

18. El Acuerdo de Refinanciación (esto es, el *Standstill Agreement*), se encuentra recogido en la póliza, número 726, otorgada entre el 18 y el 27 de marzo de 2016 intervenida por el Notario de Madrid, D. José Miguel García Lombardía que se acompaña como documento número 3.

19. El Acuerdo de Refinanciación está suscrito entre ABENGOA y 71 sociedades de su grupo y una pluralidad de entidades acreedoras, así como por el accionista mayoritario de ABENGOA (por medio de las dos sociedades a través de las cuales ostenta su participación en la Sociedad).

20. El objetivo del Acuerdo de Refinanciación es, de acuerdo con la cláusula 2, ordenar las condiciones bajo las cuáles las partes acuerdan **una espera en relación con la Deuda Afectada hasta (e incluido) el 28 de Octubre de 2016**, permitiendo a las partes durante este periodo (el Período de Espera o *Standstill period*) concluir las negociaciones con el objetivo de cerrar antes del referido término, la restructuración de la deuda financiera del grupo, obtener tesorería adicional por un importe muy relevante y proceder a su recapitalización. En este sentido, la cláusula 4ª del Acuerdo establece una serie de obligaciones tanto para los acreedores (acreditantes, 4.1) como para las sociedades deudoras (acreditados, 4.2) y accionistas mayoritarios (4.3).

21. De acuerdo con la cláusula 4.1 del Acuerdo de Refinanciación, dada la espera o prórroga acordada, los Acreedores (acreditantes) se obligan, durante este período de siete meses, respecto de la deuda comprendida en el Acuerdo de Refinanciación, a:

(i)Abstenerse de reclamar o aceptar el pago de cualquier importe adeudado por cualquier sociedad del Grupo en concepto de amortización corriente o de pagos anticipados del principal o de pago de intereses en virtud de los Instrumentos de Deuda Afectada, así como de cargar intereses de demora sobre los pagos con motivo del impago de dichos importes (a menos que la obligación del pago

anticipado en cuestión derive de disposiciones de activos cedidos en garantía que cubran uno o varios Instrumentos de Deuda Garantizada No Afectada).

(ii) Abstenerse de ejercer cualquier derecho de apropiación, compensación u otro derecho de naturaleza similar con el objeto de reducir sus posiciones acreedoras en virtud de los Instrumentos de Deuda Afectada.

(iii) Abstenerse de iniciar ninguna acción para ejecutar o acelerar cualquier Deuda Afectada, o de exigir o aceptar el pago anticipado o la liquidación de cualquier Instrumento de Deuda Afectada por cualquiera de las sociedades del Grupo (a menos que la obligación de pago anticipado en cuestión derive de una disposición autorizada de un activo cedido garantía que cubra uno o varios Instrumentos de Deuda Garantizada No Afectada).

(iv) Abstenerse de presentar o de continuar (o de dar instrucciones al agente, fideicomisario o equivalente pertinente para que presente o continúe) cualquier reclamación o demanda de Medida de Ejecución relativa a los Instrumentos de Deuda Afectada.

(v) Abstenerse de presentar cualquier solicitud de concurso necesario (o solicitud equivalente en cualquier otra jurisdicción) en relación con cualquiera de las sociedades del Grupo, y de apoyar o colaborar de cualquier otro modo con Terceros dispuestos a presentar una solicitud de concurso necesario.

(vi) Abstenerse de solicitar o aceptar la concesión de garantías personales adicionales o reales de una caución a favor de las cuentas a cobrar derivadas de Instrumentos de Deuda Afectada (a menos que la garantía real en cuestión derive de una obligación en ese sentido en virtud de cualquiera de los Instrumentos de Deuda Garantizada No Afectada).

(vii) Abstenerse de ceder o transmitir la totalidad o parte de sus derechos u obligaciones en virtud de, o de declarar o crear ningún fideicomiso sobre ninguno de sus derechos, titularidad, interés o beneficios relacionados con los Instrumentos de Deuda Afectada (directamente o de cualquier otra forma), o, de reducir por cualquier otra vía su participación en los mismos, a menos que el cesionario o

comprador acepte y se adhiera a los términos y condiciones estipulados en el presente Acuerdo.

(viii)Ejercer los derechos políticos correspondientes a los Instrumentos de Deuda Afectada de forma congruente con los compromisos adquiridos en virtud del presente Acuerdo.

(ix)Abstenerse de incrementar los márgenes, comisiones u otras condiciones económicas, así como de modificar cualquier otro término o condición de los Instrumentos de Deuda Afectada de los que son parte.

22. La vigencia y efectividad de este Acuerdo de Refinanciación se encuentra condicionada a: (a) la presentación de un "*Industrial Viability. Plan Extract 2016*", que se incorpora como Anexo Schedule 3.1. (i) al propio Acuerdo de Refinanciación, ver <u>documento número 3</u>; (b) la firma del mismo por un porcentaje de acreedores que representen al menos el 60 por 100 de la deuda financiera; y (c) la emisión por parte de los Auditores de los certificados acreditativos de la obtención de las mayorías previstas en la Disposición Adicional Cuarta de la Ley Concursal; y (d), finalmente, la presentación de esta solicitud de homologación judicial.

**<u>CUARTO</u>.- <u>Apoyo de las Entidades financieras al Acuerdo de Refinanciación</u>**

23. El Acuerdo de Refinanciación ha sido suscrito por un número de acreedores de pasivos financieros que superan con creces los porcentajes mínimos previstos por la Disposición Adicional cuarta de la LC, como se acredita mediante los Certificados emitido por el Auditor, la entidad Deloitte y que se acompañan como **<u>documento número 17.</u>**

**<u>QUINTO</u>.- <u>Entidades no participantes y efectos de la homologación</u>**

24. Dado esencialmente el escaso tiempo disponible, no ha sido posible recabar el consentimiento del 100 por 100 de los acreedores financieros al Acuerdo de Refinanciación, razón por la cual es necesario, solicitar su homologación judicial al objeto de, en todo caso, (i) acoger el Acuerdo de Refinanciación a la protección establecida por el primer párrafo de la Disposición Adicional Cuarta de la Ley Concursal y (ii) extender sus efectos a las entidades que no han suscrito, ni se han

adherido posteriormente al Acuerdo de Refinanciación (las "Entidades no participantes").

25. Debe tenerse presente, no obstante, que, a tenor de la cláusula 3.3 del Acuerdo de Refinanciación, dichas entidades pueden adherirse al Acuerdo hasta el día anterior a la fecha del Auto por el que se resuelva la presente solicitud de homologación judicial, por lo que no es descartable que, con posterioridad a la presentación de ésta solicitud, se puedan poner en conocimiento de este Juzgado sucesivas adhesiones.

26. En definitiva, con la solicitud de la homologación judicial del Acuerdo de Refinanciación a este Juzgado, consistente en la espera de siete meses, se están promoviendo los requisitos necesarios para alcanzar una restructuración global del grupo ABENGOA fundamentada en el Plan de Viabilidad Industrial presentado por la Sociedad y apoyado por los acreedores que permite garantizar la viabilidad y el valor de ABENGOA, ya que, a día de hoy, el valor de ABENGOA en funcionamiento es siete veces mayor que en un escenario de liquidación de la Compañía.

27. Con ello se consigue cumplir con la letra y el espíritu de la legislación concursal que, de acuerdo con la exposición de motivos, pretende, a través de este tipo de Acuerdos de Refinanciación, sanear empresas viables desde un punto de vista operativo, con el fin de que la deuda remanente sea soportable, permitiendo así que la empresa siga atendiendo sus compromisos en el tráfico económico, conjugándose con el respeto a las legítimas expectativas de los acreedores, los cuales habrán de participar activamente en estos procedimientos de alivio de carga financiera con las máximas garantías y, en última instancia, evitar el concurso en beneficio de las partes.

28. Todas y cada una de estas medidas tendentes a continuar con la viabilidad de ABENGOA y de sus filiales han sido recibidas muy positivamente por el mercado. A título de ejemplo queremos destacar la reacción de una prestigiosa agencia crediticia (Moddy's) que ha anunciado su intención de mejorar la calificación de

ABENGOA si la Compañía ejecuta con éxito este Plan de Viabilidad (ver la noticia incluida en el **documento número 18)**.

29. La homologación judicial de este Acuerdo de Refinanciación y la extensión de sus efectos es el primer paso necesario para el cumplimiento del Plan de Viabilidad, la condición necesaria para la preservación de una empresa de gran valor.

30. La falta de cumplimiento de este Plan de Viabilidad, incluida la inadmisión de esta solicitud, supondría el hundimiento de ABENGOA y de sus filiales, la liquidación de la Compañía, la pérdida de más de 21.932 empleos, la pérdida de un grupo internacional sevillano de alta tradición tecnológica, la pérdida de la posibilidad de recuperación de los créditos concedidos por las entidades financieras y los bonistas, la desaparición de un gran número de pequeñas y medianas empresas proveedoras de este grupo en España y Andalucía. En definitiva, sería un gran golpe para la economía española y andaluza porque se perdería una de sus empresas emblemáticas a nivel mundial, y en Andalucía, concretamente, significaría la pérdida de más de 12.000 empleos, tanto directos como indirectos, y un aumento significativo de la tasa de paro de esta Comunidad que, a día de hoy, se eleva a un 31,2 por 100.

31. A los anteriores **HECHOS** son aplicables los siguientes

## FUNDAMENTOS DE DERECHO

### PRIMERO.- JURISDICCIÓN Y COMPETENCIA

32. Es competente el Juzgado de lo Mercantil, al que tengo el honor de dirigirme, a tenor de lo dispuesto en el apartado 5 de la Disposición Adicional Cuarta de la Ley Concursal en relación con los artículos 25.4 y 10.1 de dicha Ley, por estar la entidad dominante del grupo, Abengoa, SA, domiciliada en Campus Palmas Altas, Calle Energía solar núm.1 (Sevilla), estando en la citada localidad su centro de intereses en los términos que exige la Ley.

33. Por lo tanto, mi mandante está ubicada dentro del ámbito geográfico en el que este Juzgado tiene competencia objetiva y territorial para conocer de las declaraciones de concurso que se promuevan y, en consecuencia, para tramitar esta solicitud de homologación.

34. Asimismo, ha de tenerse en cuenta que el Juzgado de lo mercantil nº. 2 de Sevilla es el que ha conocido de las referidas comunicaciones previas ex art. 5bis de la LC y, por tanto, es el que tiene competencia para el conocimiento del presente escrito de solicitud de homologación judicial. Este es el criterio acogido en las vigentes normas de reparto de asuntos mercantiles de los Juzgados mercantiles de Sevilla y el defendido por la doctrina más reciente (v. AZNAR, *La comunicación del art. 5 bis de la Ley concursal*, 2 ed., Valencia, 2016, pág. 127)

**SEGUNDO.- LEGITIMACIÓN PARA INSTAR LA SOLICITUD DE HOMOLOGACIÓN**

35. De conformidad con lo dispuesto en el apartado 5. II de la Disposición Adicional Cuarta de la Ley Concursal, la solicitud de homologación puede ser formulada por el deudor o por cualquier acreedor que haya suscrito el Acuerdo de Refinanciación. Consecuentemente, mis mandantes tienen legitimación para instar la solicitud de homologación ante el juzgado competente.

36. La presente solicitud de homologación se formula, en consecuencia, por la entidad dominante y por otras 44 sociedades miembros de su Grupo, que se relacionan en el documento número 1, que son parte del Acuerdo de Refinanciación y que se encuentran domiciliadas en España. La presente solicitud no se efectúa por las otras sociedades del Grupo, igualmente parte del Acuerdo de Refinanciación, pero que no se encuentran domiciliadas en España, y que serán objeto de protección en el extranjero mediante procedimientos similares (como el "Chapter 15" de la Ley de Quiebras de los Estados Unidos de América, habiéndose designado a estos

efectos en el Acuerdo de Refinanciación a Mr. Chris Morris como Representante de las citadas compañías).

**TERCERO.- LOS REQUISITOS LEGALES PARA PROCEDER A LA HOMOLOGACIÓN JUDICIAL Y SU CONTROL JUDICIAL**

37. ***1. El control judicial sobre los requisitos legales y su alcance:*** En el nuevo régimen de la refinanciación de la deuda, el juez competente tiene una función esencial de *control formal o de legalidad* en la homologación de los acuerdos de refinanciación sobre los requisitos legales generales y sobre las mayorías exigidas en cada caso. El alcance de dicho control viene previsto en el apartado 6 de la Disposición Adicional 4ª, a cuyo tenor: "El juez otorgará la homologación siempre que el acuerdo reúna los requisitos previstos en el apartado primero de esta disposición y declarará la extensión de los efectos que corresponda cuando el auditor certifique la concurrencia de las mayorías requeridas en los apartados tercero o cuarto".

38. En este momento, corresponde al juez el control sobre la existencia de un Acuerdo de Refinanciación, de la aportación del Plan de Viabilidad y demás documentación adjunta al Acuerdo de Refinanciación y de la certificación del auditor sobre la suficiencia de las mayorías exigidas legalmente. Asimismo, el juez constatará que el Acuerdo se ha formalizado en instrumento público. Si se cumple todo ello, el juez acuerda la homologación del Acuerdo de Refinanciación, su irrescindibilidad y la extensión de sus efectos a las entidades no participantes (v. Auto del Juzgado de lo Mercantil de Madrid número 3, de 24 de junio de 2014).

39. Para resolver sobre la homologación, por tanto, no se requiere que el juez analice si la extensión de los efectos del Acuerdo de Refinanciación entraña sacrificio desproporcionado a las entidades no participantes, ni que realice un proceso de revisión de la tarea efectuada por el auditor. Sólo si alguna de las entidades no participantes decide impugnar el referido Auto, exponiendo las particulares razones y motivos tasados por la Ley, se requiere una revisión y análisis de estos extremos.

40. Esta es la posición unánime de los jueces de lo mercantil españoles. Así, esta interpretación es seguida, por muchos, por el Auto del Juzgado de lo Mercantil nº. 7 de Madrid, de 12 de febrero de 2015, "tras la última reforma concursal, ese control judicial no se verifica *ex ante*, sino con posterioridad a la homologación y sólo en caso de impugnación del acreedor afectado. El control judicial previo se limita al control formal del contenido del acuerdo y su acomodo a las previsiones del apartado 1º de la Disposición Adicional 4ª. Consecuencia de ello es que solo podrá homologarse judicialmente el acuerdo de refinanciación que habiendo sido suscrito por acreedores que representen al menos el 51 por 100 de los pasivos financieros, reúna en el momento de su adopción, las condiciones previstas en la letra a) y en los números 2 y 3 de la letra b) del apartado 1 del art. 71bis".

41. En doctrina, el criterio ha sido acogido, sin excepción, por todos los concursalistas. Así la profesora Juana PULGAR EZQUERRA (en "Refinanciación, reestructuración de deuda empresarial y reforma concursal", *Diario La Ley*, nº 8271, 14 Marzo 2014), defiende que el juez, en sede de homologación, no realiza "juicio alguno de oportunidad sobre el sacrificio desproporcionado que suponga éste para los titulares de pasivos financieros disidentes o no participantes, relegándose la valoración de dicho sacrificio a una eventual sede de impugnación del acuerdo por los acreedores legitimados") y más recientemente, sigue esta opinión el magistrado Ignacio SANCHO GARGALLO, "Homologación, eficacia e impugnación y rescisión de los acuerdos de refinanciación", en DIAZ MORENO/LEON SANZ, *Acuerdos de refinanciación, convenio y reestructuración*, Cizur Menor, 2015, págs. 148 y ss.).

42. En definitiva, si antes de la reforma introducida por el Real Decreto-Ley 4/2014, el legislador atribuía al juez la competencia de examinar de oficio el *contenido* del acuerdo de refinanciación pudiendo incluso denegar la homologación judicial si consideraba que tal acuerdo suponía un sacrificio patrimonial desproporcionado para los acreedores no participantes, tras la reforma concursal, se suprime ese control judicial de contenido *a priori*, y el juez limita su función a verificar si la solicitud cumple o no con los requisitos legales.

43. Como destaca, en síntesis, el Auto del Juzgado de lo Mercantil nº. 1 de Barcelona, cumpliéndose los requisitos legales, el juez homologa "el acuerdo de refinanciación y extendiendo sus efectos frente a terceros disidentes deja para un momento posterior la posibilidad de analizar si el mismo supone o no un sacrificio patrimonial injustificado para éstos, previa denuncia de parte".

44. Dicho esto, ha de destacarse que el Acuerdo de Refinanciación cuya solicitud de homologación se presenta, consistente en la espera de siete meses, no entraña, en absoluto, sacrificio desproporcionado alguno.

45. ***2. Los requisitos legales:*** En relación a los requisitos legales, la Disposición Adicional Cuarta de la Ley Concursal, vigente tras las últimas reformas concursales, establece, en su primer apartado, que:

"1. Podrá homologarse judicialmente el Acuerdo de Refinanciación que habiendo sido suscrito por acreedores que representen al menos el 51 por ciento de los pasivos financieros, reúna en el momento de su adopción, las condiciones previstas en la letra a) y en los números 2.º y 3.º de la letra b) del apartado 1 del artículo 71 bis. Los acuerdos adoptados por la mayoría descrita no podrán ser objeto de rescisión conforme a lo dispuesto en el apartado 13 (...)".

Estos requisitos legales son los siguientes:

46. ***A) La existencia de un Acuerdo de Refinanciación. La espera como contenido propio y legítimo de un Acuerdo de Refinanciación***: En este caso, como ya hemos destacado, el Acuerdo de Refinanciación contiene una espera hasta el 28 de octubre de 2016, inclusive, conforme al contenido de sus cláusulas 2 y 4.

47. Como hemos destacado en el Hecho Tercero, el Acuerdo de Refinanciación tiene como contenido básico una espera de siete meses que, amparada y justificada, tanto por el Plan de Viabilidad, a largo plazo, que se acompaña como documento 6, como por el Plan de Viabilidad relativo al ejercicio 2016, y que se encuentra

adjunto al Acuerdo de Refinanciación como anexo 3.1 (i) del documento número 3 permite y facilita la viabilidad del Grupo a corto y medio plazo.

48. No cabe la menor duda de que un Acuerdo de Refinanciación puede contener exclusivamente una espera con efectos propios, por autónomamente válidos, legítimos y plenamente eficaces y susceptibles de ser objeto de extensión a las entidades no participantes.

49. Precisamente, en el apartado a) del art. 71 bis, al que se remite expresamente el apartado 1° de la Disposición Adicional 4ª, se hace referencia, con toda claridad, a la espera como contenido del Acuerdo de Refinanciación: "en virtud de éstos (negocios, actos y pagos) se proceda, al menos, a **la ampliación significativa del crédito disponible, o a la modificación o extinción de sus obligaciones, bien mediante prórroga de su plazo de vencimiento** o el establecimiento de otras contraídas en sustitución de aquéllas, siempre que respondan a un **plan de viabilidad** que permite la continuidad de la actividad profesional o empresarial en el corto y medio plazo".

50. No existe, por tanto, duda sobre la validez de la espera pactada en el Acuerdo de Refinanciación en sus cláusulas 2 y 4, como contenido básico y autónomo, que responden al Plan de Negocio o Viabilidad, que la justifica, dentro, en este caso, de un plan de reestructuración de ámbito global.

51. Que la espera es, en sí misma y de forma autónoma, uno de los contenidos típicos admitidos por la normativa, doctrina y jurisprudencia es un hecho irrefutable (v. en doctrina, por todos, PULGAR, "Preconcursalidad y acuerdos de refinanciación", en *El concurso de acreedores*, Madrid, págs. 96 y ss.; ROJO, "El Derecho preconcursal", en *Lecciones de Derecho mercantil*, II, Cizur Menor, 2015, pág. 573; CERDA, "La extensión de los efectos del acuerdo de refinanciación, homologado judicialmente, a los acreedores financieros disidentes o no partícipes", *ADCo*, 33, 2014, pág. 153; CERVERA, "El procedimiento de homologación de acuerdos de refinanciación", *ADCo*, 33, 2014, pág. 116) y que constituye un contenido frecuente en la *praxis* de los Acuerdos de Refinanciación (v., recientemente, entre

muchos, Auto del JM nº. 10 de Barcelona, de 12 de enero de 2014; Auto del JM nº 3 de Madrid, de 24 de junio de 2014; Auto del JM nº. 12 de Madrid, de 22 de septiembre de 2014; Auto del JM nº. 4 de Madrid, de 19 de diciembre de 2014; Auto del JM nº.7 de Madrid, de 12 de febrero de 2015; Auto del JM nº.2 de Pontevedra, de 13 de febrero de 2015; Auto del JM nº 2 de Bilbao, de 13 de febrero de 2015; Auto del JM nº. 1 de Barcelona, de 27 de febrero de 2015 (corregido por Auto de 4 de marzo de 2015); Auto del JM nº. 3 de Barcelona, de 2 de marzo de 2015; Auto del JM nº. 3 de Barcelona, de 13 de marzo de 2015; Auto del JM nº. 3 de Barcelona, de 29 de abril de 2015; Auto del JM de las Palmas de Gran Canaria, de 29 de abril de 2015;Auto del JM nº 12 de Madrid, de 5 de junio de 2015; Auto del JM nº. 1 de Madrid, de 30 de junio de 2015; Auto del JM nº. 1 de Donosti-San Sebastián, de 17 de junio de 2015; Auto del JM de Castellón, de 1 de julio de 2015 (que homologa un acuerdo de refinanciación que contiene exclusivamente una espera de siete años, )Auto del JM de Murcia, de 17 de julio de 2015; Auto del JM nº. 1 de Bilbao, de 20 de julio de 2015).

52. Las sociedades que se benefician de la espera, han recibido dinero nuevo para afrontar las necesidades más perentorias de liquidez, como se ha destacado detalladamente en el Hecho Segundo. Los acreedores que han prestado dicho *fresh money* son acreedores altamente cualificados que han apoyado con decisión firme el Plan de Viabilidad industrial.

53. ***B) La concurrencia de un apoyo de más del 51 por 100 de los pasivos financieros, conforme a la Certificación del Auditor.*** A los efectos de que el Acuerdos de Refinanciación goce de la irrescindibilidad, es preciso que éste haya sido suscrito por el 51% de los pasivos financieros, como se desprende del primer párrafo del apartado primero de la Disposición Adicional Cuarta, así como que se cumplan las *condiciones previstas* en la letra a) y en los números 2.º y 3.º de la letra b) del apartado 1 del artículo 71 bis de la Ley Concursal.

54. En el presente caso, el Acuerdo de Refinanciación ha sido suscrito por acreedores que representan **más** del 51% de los pasivos financieros del deudor en la fecha del Acuerdo de Refinanciación, tal como se acredita con los Certificados del Auditor

de las sociedades solicitantes que se acompañan como documento número 17. Los certificados emitidos acreditan la suficiencia del pasivo para dotar al Acuerdo de Refinanciación de irrescindibilidad.

55. En atención de su mera función del control formal, como se destaca en la doctrina más autorizada, "*en este momento de la homologación, el juez tan sólo constatará la existencia del certificado y que en él se recoge la concurrencia de las mayorías exigidas por la Ley para obtener los efectos pretendidos*" (v. SANCHO GARGALLO, "Homologación", *cit.*, pág. 151 y DIAZ, *Los acuerdos de refinanciación*, Cizur menor, 2015, pág. 145).

56. Conforme a los preceptivos Certificados del Auditor, aportado como documento número 17, concurre un porcentaje muy superior al exigido legalmente.

57. A los efectos del referido porcentaje no se han tenido en cuenta los pasivos financieros titularidad de acreedores que tengan la consideración de persona especialmente relacionada conforme al apartado 2 del artículo 93 de la Ley Concursal.

58. Se ha considerado acreedores de pasivos financieros a los titulares de cualquier endeudamiento financiero con independencia de que estén o no sometidos a supervisión financiera, excluyéndose de tal concepto los acreedores por operaciones comerciales y los acreedores de pasivos de derecho público

59. ***C) La existencia de un Plan de Viabilidad*:** El Plan de Viabilidad, que se aporta, fundamenta la racionalidad de la espera de siete meses en el marco de un Plan de Viabilidad industrial global. La espera -y su homologación- constituye un elemento necesario para el Plan de Viabilidad Industrial global y queda plenamente justificada por el Plan de Viabilidad a corto y medio plazo (*Industrial Viability Plan. Extract 2016,* véase Anexo 3.1 del documento número 3). En consecuencia, no cabe la menor duda de que se trata de un Plan de Viabilidad razonable y realizable que cumple las exigencias de la Ley Concursal.

60. ***D) Elevación a instrumento público*:** El Acuerdo de Refinanciación se ha formalizado en instrumento público, al que se han unido los documentos que

acreditan su contenido y el cumplimiento del resto de los requisitos establecidos por la Disposición Adicional Cuarta y en la letra a) y en los números 2. ° y 3. ° de la letra b) del apartado 1 del artículo 71 bis de la Ley Concursal, tal y como se ha acreditado mediante el documento número 3.

61. En definitiva, se cumplen, como se puede apreciar, sin duda alguna, ***todos*** los requisitos o condiciones legales para homologar el Acuerdo de Refinanciación y además para dotarlo de plena irrescindibilidad.

## CUARTO.-. LA EXTENSIÓN DE LOS EFECTOS A LAS ENTIDADES NO PARTICIPANTES.

62. Además de la irrescindibilidad como efecto de la homologación del juez, la clave de bóveda de todo el sistema de refinanciación es la *extensión legal* de los efectos del Acuerdo de Refinanciación a las entidades no participantes (v., por todos, YAÑEZ EVANGELISTA/NIETO DELGADO, "Refinanciaciones: rescisión y extensión de efectos", *ADCo*, 32, mayo-agosto, 2014, págs. 155 y ss.; NIETO, "La refinanciación como alternativa al concurso", en *El procedimiento concursal en toda su dimensión,* Madrid, 2014, págs.. 13 y ss y más recientemente, NIETO, "Derecho preconcursal y acuerdos de refinanciación", *Concursal 2015*, Madrid, 2015, págs. 9 y ss.; y RODRIGUEZ DE QUIÑONES, "Tipología de los acuerdos de refinanciación", en *Acuerdos de Refinanciación, cit.*, págs. 76 y ss.).

63. Así, el número 3 de la Disposición Adicional Cuarta de la Ley Concursal establece la mayoría necesaria para extender los efectos del Acuerdo de Refinanciación por medio de la homologación judicial, "a los acreedores de pasivos financieros que no hayan suscrito el acuerdo de refinanciación o que hayan mostrado su disconformidad al mismo y cuyos créditos no gocen de garantía real o por la parte de los créditos que exceda del valor de la garantía real".

64. En el presente caso, en cuanto la solicitud de homologación del Acuerdo de Refinanciación persigue, como ya se ha indicado, puramente una extensión a las entidades no participantes de una espera de siete meses (una espera hasta el 28 de octubre de 2016, inclusive), cuyo contenido se describe, de forma detallada, en la

cláusula 4ª del Acuerdo, la mayoría requerida por la Ley es, por lo tanto, del 60 por ciento del pasivo financiero, mayoría que, en el presente caso, se alcanza suficientemente conforme a los Certificados del Auditor de las sociedades, documento número 17, que indican que la mayoría alcanzada por los acreedores que han suscrito o se han adherido al Acuerdo es, en base individual, más del 60 por100 y en base consolidada el 75,04 por 100.

65. Así, el párrafo a) del núm. 3 de la Disposición Adicional Cuarta de la Ley concursal, exige para que se produzca el efecto de extensión, que el acuerdo haya sido "*suscrito por acreedores que representen al menos el 60 por 100 del pasivo financiero,* ***las esperas, ya sea de principal, de intereses o de cualquier otra cantidad adeudada,*** *con un plazo no superior a cinco años (...)*". Como hemos ya destacado, el acuerdo ha sido suscrito por un porcentaje muy superior al exigido por la Ley.

66. A los efectos del referido porcentaje no se han tenido en cuenta los pasivos financieros titularidad de acreedores que tengan la consideración de persona especialmente relacionada conforme al apartado 2 del artículo 93 de la Ley Concursal.

67. Se han excluido igualmente los acreedores por operaciones comerciales y los acreedores de pasivos de derecho público.

## QUINTO.- HOMOLOGACIÓN QUE SE SOLICITA

68. La Disposición Adicional Cuarta de la Ley Concursal establece diferentes efectos de la homologación. Tales efectos, según se desprende del apartado primero de dicha disposición ("Los acuerdos adoptados por la mayoría descrita no podrán ser objeto de rescisión conforme a lo dispuesto en el apartado 13. Para extender sus efectos serán necesarias las mayorías exigidas en los apartados siguientes"), son dos: (i) la protección rescisoria y (ii) la extensión de efectos a las entidades no participantes.

69. Parece, por lo tanto, cuestión asentada que en la vigente redacción de la Disposición Adicional Cuarta se "manejan" distintos porcentajes de aceptación del

acuerdo por los pasivos financieros que comprenden un nivel mínimo (al menos 51%) con el que sólo se obtiene protección rescisoria y otros niveles superiores que permiten añadir a la estricta "homologación" la extensión de efectos del Acuerdo de Refinanciación, en este caso, la espera de siete meses (hasta el 28 de octubre de 2016, inclusive), conforme a las cláusulas 2 y 4 del Acuerdo suscrito.

70. En consecuencia, mediante el presente escrito se solicita sustancialmente del Juzgado:

71. **1.** **La irrescindibilidad del Acuerdo de Refinanciación**: Se solicita que no pueda ser objeto de acciones de rescisión el Acuerdo de Refinanciación. Así se expresa claramente el número 13 de la Disposición Adicional 4ª de la Ley concursal, al disponer que "No podrán ser objeto de acciones de rescisión los acuerdos de refinanciación homologados judicialmente(...)" (sobre dicho efecto, además de las obras anteriormente citadas, véase SANCHO GARGALLO, "La refinanciación desde la perspectiva de las acciones de reintegración", *separata*, 2011 y "Homologación", cit., págs.. 177 y ss.; SANJUAN Y MUÑOZ, "Los acuerdos de refinanciación y reestructuración de deudas", en *El Derecho de la insolvencia*, Valencia, 2015, págs. 80 y ss.; y el estudio completo de FERNANDEZ SEIJO, "Acuerdo de refinanciación y rescisión concursal", en *La reintegración en el concurso de acreedores*, 2 ed., Cizur Menor, 2014, págs. 321 y ss.; AZNAR, *La reforma concursal del Real Decreto-Ley 4/2014, en materia de refinanciación y reestructuración de deuda empresarial*, Valencia, 2014, págs. 95 y ss.; y MARRERO, "Los acuerdos de refinanciación", en *Tratado judicial de la insolvencia*, I, Cizur Menor, 2012, págs. 326 y ss.).

72. **2.** Se solicita, igualmente, que el ejercicio de las demás acciones de impugnación que, en su caso, puedan ejercitarse frente al Acuerdo de Refinanciación, se sometan a lo dispuesto por el artículo 72.2 de la Ley Concursal.

73. **3.** **La extensión de los efectos de la espera hasta el 28 de octubre de 2016, inclusive (7 meses) a las entidades no participantes, conforme al contenido de las cláusulas 2 y 4 del Acuerdo de Refinanciación**: Se pide la extensión de la espera, que tiene por sí misma efectos legítimos propios y válidamente autónomos,

sin perjuicio de que forme parte de un proceso de restructuración global, tal y como se ha descrito en el Hecho Segundo de la presente solicitud.

## SEXTO.- LA PARALIZACIÓN DE LAS EJECUCIONES SINGULARES

74. A los efectos de evitar frustración de la finalidad perseguida, interesa que se proceda a acordar la paralización de las ejecuciones singulares promovidas o que pudieran instarse por acreedores contra las Solicitantes que sean parte del Acuerdo de Refinanciación hasta la fecha en la que el Juzgado resuelva sobre la homologación aquí solicitada y esta resolución esté dotada de firmeza.

75. Esta parte no tiene conocimiento de que ninguna entidad haya iniciado la ejecución singular de derecho de crédito alguno contra mis mandantes.

76. Ciertamente, el inicio o práctica de dichas ejecuciones individuales y, particularmente por los importes adeudados, perjudicaría seriamente la tesorería de ABENGOA y perturbaría su funcionamiento, e incluso pondría en riesgo el mantenimiento del Acuerdo de Refinanciación, por lo que es no solamente prudente, sino necesario, acordar la paralización de ejecuciones singulares hasta la homologación judicial del Acuerdo de Refinanciación.

77. La paralización de las ejecuciones singulares se encuentra expresamente prevista en la Disposición Adicional Cuarta, debiéndose acordar dicha paralización si se cumplen los requisitos formales para la admisión a trámite de la solicitud de homologación, lo cual ha quedado acreditado de forma más que suficiente en el caso de la presente solicitud.

78. A los efectos de que la paralización de las ejecuciones singulares sea eficaz y proteja a los intereses jurídicos tutelados en virtud de la Disposición Adicional Cuarta, la paralización deberá mantenerse, como es lo razonable, hasta que adquiera <u>firmeza</u> el Auto de homologación judicial, en línea con lo dispuesto por la resolución dictada por el Juzgado de lo Mercantil de Santa Cruz de Tenerife en el incidente concursal 44/2013, que establece literalmente que:

"SEGUNDO.- En el presente caso, la solicitud de homologación del acuerdo de refinanciación se ha presentado ante el órgano judicial competente, no se aprecia ningún defecto formal, dado que se elevó a escritura pública aportada a los presentes autos; por lo que se acuerda su admisión a trámite, con paralización de las ejecuciones singulares hasta que adquiera firmeza el auto de homologación judicial".

Por todo lo expuesto,

**SUPLICO AL JUZGADO DE LO MERCANTIL** que, teniendo por presentado este escrito, con la documentación que se adjunta, tenga por solicitada en tiempo y forma la homologación judicial del Acuerdo de Refinanciación que se acompaña como documento número tres y, al amparo de lo dispuesto por la Disposición Adicional Cuarta de la Ley Concursal, proceda a:

1. Admitir a trámite la presente solicitud de homologación mediante Providencia.

2. Declarar la paralización de las ejecuciones singulares, iniciadas o de posterior iniciación, así como de cualquier actuación judicial que afecte al patrimonio del deudor hasta que sea firme el Auto por el que se acuerde la homologación.

3. Ordenar al Letrado de la Administración de Justicia (Secretario judicial) la publicación de la Providencia referida en el Registro Público Concursal por medio de un anuncio que contendrá los datos que identifiquen: a los deudores solicitantes, al juez competente, al número del procedimiento judicial de homologación, la fecha del Acuerdo de Refinanciación y los efectos de aquellas medidas que, en el mismo, se contienen (espera hasta el 28 de octubre de 2016, inclusive, conforme a las cláusulas 2 y 4 del Acuerdo de Refinanciación), con la indicación de que el Acuerdo suscrito está a disposición de los acreedores en este Juzgado Mercantil donde se ha depositado para la publicidad, incluso telemática, de su contenido.

4. Acordar la homologación judicial del Acuerdo de Refinanciación, la irrescindibilidad del mismo y la extensión a las entidades no participantes de los efectos de la espera hasta el 28 de octubre de 2016, inclusive, prevista conforme a las cláusulas 2 y 4 del Acuerdo de Refinanciación.

5. Publicar el Auto de homologación del Acuerdo de refinanciación en el Registro Público Concursal y en el Boletín Oficial de Estado por medio de extracto haciendo constar los datos anteriores.

Es de Justicia, que, respetuosamente, pedimos en Sevilla, a 28 de marzo de 2016.

**PRIMER OTROSÍ DIGO**:

Que, de conformidad con el artículo 231 de la LEC, mi mandante manifiesta su voluntad de cumplir, en todos los actos procesales, con los requisitos exigidos por la LEC, solicitando que, si fuera el caso, se permita la subsanación de los defectos de que pudiera adolecer el presente escrito.

Es de Justicia, que, respetuosamente, pedimos en Sevilla, a 28 de marzo de 2016.

D. Jaime Cano Ruiz

Abogado

D. José Machado Plazas

Abogado

D. Javier Otero Terrón

Procurador

**Application for Court Approval of a Refinancing Agreement. ABENGOA S.A. and 44 subsidiary companies.**
**General Identification No.: 4109142M20150006170**
**Commercial Court No. 2 of Seville**

## To Commercial Court No. 2 of SEVILLE

I, Mr Javier Otero Terrón, Solicitor of the Courts of Seville, on behalf of and representing ABENGOA, S.A. (hereinafter referred to as "**ABENGOA**" or the "**Company**" interchangeably), and the companies of its group with their headquarters in Spain, whose names and particulars are located on the list attached as **Document No. 1** (hereafter, and together with ABENGOA, referred to as the "**Petitioners**"), being authorized by the powers of attorney, attached as **Document No. 2**, hereby request that they be attested, and be returned to me, as needed for other uses, and under the direction of the attorneys from the CORTES LAW FIRM, the LAWYERS, Mr Jaime Cano Ruiz, of the Distinguished Bar Association of Madrid with the number 42841 and Mr José Machado Plazas, of the distinguished Bar Association of Manresa with the number 612, I appear before the Court and in accordance with the Law,

## I DECLARE:

That, by the representation right that I hold, and following the instructions of my principals, I hereby request that the COURT APPROVE THE REFINANCING AGREEMENT attached as **Document No. 3** in accordance with the Fourth Additional Provision and related provisions of the Bankruptcy Law (hereinafter referred to as "Bankruptcy Law"). The application is based on the following

## FACTS:

### FIRST.- Details about the Petitioners

1 ABENGOA has its registered office in Seville, Campus Palmas Altas, Calle Energía Solar, 1. It is registered in the Commercial Register of that province in Volume 573, Book 362, Folio 94, Sheet No. SE-1507, and is provided with a Tax Identification No. A-41002288, as resulting from a simple information note issued by the Commercial Registry of Seville, attached as **Document No. 4**.

2. ABENGOA is the parent company of an international group of companies, with more than 75 years of activity and with its principal place of business in Seville, which at year-end 2015 consisted of nearly 700 companies, having head offices virtually all over the world.

3. ABENGOA is essentially an engineering company that applies innovative technology solutions for sustainable development in the energy and environment sectors, generating electricity from renewable resources, transforming biomass into biofuels or producing potable water from seawater. ABENGOA has built its business around three activities: (i) Engineering and construction: Engineering and construction brings together traditional engineering activities in energy and water spheres. It specializes in implementing complex "turnkey" projects in the hybrid solar-gas, conventional generation, and biofuels projects; water infrastructure, including large desalination plants, and transmission lines for electricity, among others large desalination plants, and transmission lines of electricity, among others. (ii) Concession-type infrastructures: The company has a broad portfolio of own assets of concessional character, where revenues are regulated by long-term sales contracts, of the guaranteed purchase type ("*take or pay*") or supply and sale of energy ("*power purchase agreement*"). This activity includes the operation of power generation plants (solar, cogeneration, and wind) and desalination plants as well as transmission lines. (iii) Industrial production: In this last activity, the businesses are grouped based on a high technological component, such as biofuels and the development of solar technologies. In these activities, the Company holds important leadership positions in the geographical markets where it operates.

4. The most notable characteristics of ABENGOA are as follows:

(i) ABENGOA, combined with its subsidiary companies provides direct employment to over 21,932 people worldwide, of which more than 6,000 work in Spain and 4,000 in Andalusia. This, for the most part, highly-qualified professional employment. During the year 2014, the Company worked with approximately 15,000 suppliers in 81 countries, generating a high volume of indirect employment, with just in Andalusia increasing the number of jobs to 8,000. A hypothetical liquidation and closure of the Company would lead to a 0.6% increase in the Andalusian unemployment rate, which currently stands at 31.2%.

(ii) ABENGOA's direct impact on the entire regional economy, in terms of

turnover, is 4,600 million Euros, i.e., 1.8% of the Andalusian GDP. Moreover, the Company's investments into Research, Development and Innovation amount to 530 million Euros, which represents 15% of all such investments in Andalusia.

(iii) Despite the difficulties arising from the current global economic context. and in particular, which have resulted in a decrease in the volume of turnover of ABENGOA, the Company finished the year 2015 with a turnover of 5,755 million Euros and EBITDA of 515 million Euros, as can be seen in the *Consolidated Summary Financial Statements for the Second Half of 2015*, published in the Official Register of the National Securities Market Commission (hereinafter referred to as, "CNMV"), which are attached as **Document No. 5**.

(iv) As for the geographical diversification of ABENGOA, South America and North America, representing 38% and 26%, respectively, of sales in fiscal 2015, are the key regions for ABENGOA. The remaining geographical areas remain virtually unchanged: Spain represents 14%; the rest of Europe – 11%; Africa - 8%; and the Middle East and Asia - 3%.

(v) One of the historical features of ABENGOA's business is that the company reinvests a high percentage of the liquidity generated from new business activities. That is, it is a very capital-intensive business. It is also worth noting that ABENGOA's engineering and construction projects repeatedly require the provision of technical and financial guarantees, necessary for the awarding of, and signing of, contracts for new projects.

(vi) ABENGOA, according to the Long-term Industrial Viability Plan created by the international firm Alvarez & Marsal (included in this written report as part of **Document No. 6**), is a viable company that can focus its activities on construction work for third parties, as well as turnkey projects and concessions, which achieve margins between 8.75 and 14.00%. It can be said, according to the findings of Alvarez & Marsal, that ABENGOA is currently worth seven times more as a going concern, than if were to be liquidated.

(vii) ABENGOA is a company listed on the Continuous Market (Madrid Stock Exchange), with an approximate market capitalization, as of today, of 290 million Euros, and with a floating capital or "free-float", i.e., with a

percentage of shares freely traded, and not being the permanent property of controlling shareholders, of around 49%.

(viii) ABENGOA has a majority shareholder, namely the company Inversión Corporativa, IC, S.A., which directly and indirectly controls a total of 51.79% of the voting rights, and this company, being one of the signatories to the Refinancing Agreement, supports the restructuring process that has been initiated.

5. In the Document No. 5, the *Consolidated Summary Financial Statements for the Second Half of 2015,* are found explanations in greater detail about the structure of ABENGOA, its main activities and the most significant figures of its business.

**SECOND.- Refinancing process**

6. ABENGOA, together with all its subsidiary companies, is a viable international group, which since June 2015, as we are now developing, is immersed in a plan to optimize its financial structure and business, in which the Refinancing Agreement is included for the companies of the groups that have their headquarters in Spain, whose application for court approval is being presented today, and is being designed and completed with the implementation of the Global Viability Plan.

7. Early in the second half of 2015, ABENGOA, following the formulation of the condensed consolidated interim financial statements dated 30 June 2015, and given the market situation, initiated a plan to optimize its financial structure in order to strengthen its financial position and business.

8. For this purpose, on the dates of 3 August and 24 September 2015, ABENGOA communicated to the market and the CNMV, its intentions to carry out certain measures aimed at obtaining new financing ("fresh money"), reduce investment requirements, and reduce debt levels. In particular, the Board of Directors decided to propose at an Extraordinary General Meeting of Shareholders: i) the approval of an increase in capital with preferential subscription rights in an amount of 650 million Euros, in which would participate the major shareholder and some creditor banks; ii) an additional plan for the divestiture of assets; and, iii) the adjustment of its current business model towards lower investment requirements (capex), in order to strengthen the financial position of ABENGOA and reduce its level of dependence on debt financing. For more information concerning this matter, see **Document Nos. 7 and 8**, which contain the relevant communication of 3 August

2015 No. 227258 and the relevant communication of September 24, 2015 No. 228656.

9. On 23 September 2015, ABENGOA and certain financial institutions signed a syndicated loan agreement for 125,000,000 Euros ("Revolving Facilities") with the aim of meeting the financial needs of the company's treasury and projects of the group.

10. On 10 October 2015, the Extraordinary General Meeting of Shareholders was held, in which the measures referred to in Paragraph 8 above were approved, and in particular, approved was an increase in capital in the amount of 650,000,000 Euros and certain instructions to the Board of Directors to ensure an enforcement of a ceiling on investment commitments (the full content of these agreements is found in **Document No. 9**, relevant communication of 10 October 2015 No. 229580).

11. On 22 October 2015, another loan agreement for 135 million Euros was signed between the British-based subsidiary of ABENGOA – Abengoa Concessions Investment Limited and Talos Capital Investment Limited (the "TCI Margin Loan"), which contributed to providing additional financial support for the Group.

12. On 8 November 2015, following the strategy initiated in June 2015, ABENGOA announced to the market the signing of a Base Agreement for investments into ABENGOA by the company Gonvarri Corporacion Financiera, which was, furthermore, counting on the support of company Inversión Corporativa, IC, S.A., the majority shareholder of ABENGOA, see the relevant communication of 6 November 2015 No. 230769, attached as **Document No. 10**. The Agreement regulated the investments of Gonvarri in connection with the increase in capital approved by the General Meeting of Shareholders on 10 October 2015, and it was planned that a part the investment by this company, in the amount of 250,000,000 Euros, would be executed as an increase in capital, without any preferential subscription rights. The Investment Agreement was subject to various conditions. The result of this operation would have meant that Gonvarri, after the increase in capital, would have acquired 28% of the total voting rights in the company.

13. However, on 25 November 2015, the Gonvarri Finance Corporation informed the market that it would not be carrying out such an operation.

14. Under these circumstances, ABENGOA decided to initiate a process of negotiation with its creditors, aimed at ensuring the necessary financial stability, to

allow it to revise its strategy, implement its new business plan and assure the survival of the Group in the medium and long term prospects. In order to ensure that this process could be developed with the necessary security, the Board of Directors of ABENGOA decided that the most appropriate thing to do, was to issue the communication stipulated in Article 5 et seq. of the Bankruptcy Law, as regards the number of companies of the group with headquarters in Spain, which, as we shall see, has been expanded to other companies in the course of negotiations. A copy of the relevant communication of 27 November 2015, No. 231488, is attached as **Document No. 11**.

15. The major milestones of this negotiation process, which started on 25 November 2015, were as follows:

(i) On 25 November 2015, ABENGOA, together with 24 of the companies of its group, informed the court on the start of negotiations with its creditors to reach an agreement on refinancing its debts under Article 5 et seq. of the Bankruptcy Law. The application for this procedure, bearing the number 2694/2015, 8th Negotiation, was received in Commercial Court No. 2 of Seville (see **Document No. 12**).

(ii) Also during the month of November, the Company invited major creditors to come together and work with the Coordination Committee (hereinafter referred to as the "**CoCom**") formed by six leading financial institutions, and organized was a significant part of holders of bonded debts (hereinafter referred to as the "**Ad-hoc Committee**").

(iii) To deal with this negotiation process, the Company also created an internal Monitoring Committee, in which also participated and were integrated legal advisors (Cortés, Lawyers) and financial advisers (Lazard).

(iv) Finally, on these same dates, Alvarez & Marsal were entrusted to carry out an analysis, and then create and present an industrial viability plan. This required the review and analysis, one by one, of the more than 200 projects that the Company is developing worldwide, with a goal of determining their profitability and cash requirements, as well as a portfolio of projects for imminent launching, both in the short and long term perspectives.

(v) This whole process has been monitored, and is being monitored simultaneously by KPMG, the financial adviser appointed by financial

institutions.

(vi) On 3 December 2015, six additional companies of the group informed the same Court, that they also were being included in the scope of the negotiations that were underway with creditors for the purposes set out in Article 5 et seq. of the Bankruptcy Law. This second communication was also sent to the Commercial Court No. 2 of Seville and was processed with Procedure No. 2729/2015, 8th Negotiation (see **Document No. 13**).

(vii) On 15 December, the application of Article 5 et seq. of the Bankruptcy Law was successively expanded to other companies of the group (in total, 15 more), with communication sent to the Commercial Court No. 2 of Seville, and processed with Procedure No. 2756/2015, 8th Negotiation (see **Document No. 14**).

(viii) In this context, and as part of the negotiations that were ongoing with various financial creditors, and in order to have the needed finances, on 24 December 2015, the Company entered into a loan agreement, in the amount of 106 million Euros, with a number of financial institutions.

(ix) In late January 2016, Alvarez & Marsal finished the Industrial Viability Plan, proposing the essential and strategic terms for the industrial activities of the Company for the next five years, and determining the overall cash requirements to carry it into effect. This Industrial Viability Plan was communicated to the market and to the CNMV by means of relevant communication No. 234267 of 26 January 2016 (attached as **Document No. 15**).

(x) The Industrial Viability Plan ensures the transformation of the old ABENGOA into a new ABENGOA, thanks to a new focus of its activities and business, which will help it evolve from a Company that was required to participate as a financial investor into its integrated short-term and long-term projects, into a Company that focuses its business on developing integrated technical construction and energy projects for third parties and is financed by third parties, and also seeks investors to finance its own engineering projects. This is a new model of a Company that focuses on projects with layered capital requirements (in this regard, see Document No. 6).

(xi) On the basis of this plan, the financial advisers of the group, Lazard, prepared, and agreed with financial advisors of the creditor institutions, a proposal for financial restructuring necessary to continue its activities and operate competitively and sustainably in the future.

(xii) As of 16 March 2016, the Company, with the support of KPMG (advisors to the creditor financial institutions) and Houlihan Lokey (advisor to the bondholders), informed, during a public presentation, about the conditions and essential terms for a restructuring agreement of its debt and recapitalization of the group, reached with the CoCom and Ad-hoc Committee, which would allow the development of the Global Industrial Viability Plan of ABENGOA (see Document No. 6).

(xiii) The basis and essential terms of this restructuring agreement are:

(a) The amount of new money that is paid to the Company will reach an amount of between 1,500 million and 1,800 million Euros for a maximum period of 5 years.

(b) Provided will be new lines of technical guarantees to the maximum amount of 800 million Euros, to ensure that the Group can undertake new projects.

(c) The historical financial debt, corresponding to the liquidity lines granted to the Group dated 23 September and 24 December 2015, for a total amount of 231 million Euros (plus accrued interest expenses) will be subject to refinancing by extending its term by two (2) years ("Roll-over money").

(d) The financial creditors, after first removing 70% of the old money, will be entitled to receive 95% of the capital, to be divided as follows: lenders of new liquidity – 55% of the capital, new guarantees – 5%, and existing debt – 35%, reserved for the existing shareholders is 5% of the company's capital, which meets certain conditions, and this may be increased up to 10%.

(e) This entire refinancing process will require, indeed, will have to be approved by the General Meeting of Shareholders. In this regard, it is important to note and emphasize that the majority shareholder is committed to vote in favour of this restructuring.

(f) Ultimately, this financial debt rescheduling agreement is an agreement based on great challenges of new money, great sacrifices of old money and property, with which it is desired to ensure the survival of the company, its great industrial and technological value, in addition to its large labour employment value.

16. In this context, and as part of the negotiations with financial creditors of ABENGOA, on 21 March 2016, the company Abengoa Concessions Investments Limited ("ACI"), a subsidiary of the Company, has signed a loan agreement with some of the bondholders in the amount of 137,094,751.30 Euros, in order to meet the overall needs of the business of the Company and its subsidiary companies (see relevant communication of 22 March 2016 with No. 236611, **Document No. 16**). The strength of support from financial creditors is seen in the contributions of new money recently completed and the forecasts of future contributions contained in Clause 10 of the Refinancing Agreement.

17. The Refinancing Agreement, whose application for approval is being submitted by the Applicants, being endowed with full autonomy and own legal effect, is functionally integrated into the Industrial Viability Plan that ensures the viability of ABENGOA.

**<u>THIRD.- The Refinancing Agreement</u>**

18. The Refinancing Agreement (i.e., the *Standstill Agreement*), is enshrined in the policy number 726 issued between 18 and 27 March 2016, attested by the Notary of Madrid, Mr José Miguel García Lombardía, which is attached as <u>Document No. 3.</u>

19. The Refinancing Agreement was signed between ABENGOA and 71 companies in its group and a plurality of creditor institutions, as well as the majority shareholder of ABENGOA (by means of the two companies, through which its stake in the Company is held).

20. The goal of the Refinancing Agreement is, according to Clause 2, to order the conditions under which the parties agree to a **<u>waiting period, in relation to the Affected Debt, up to (and including) 28 October 2016</u>**, allowing the parties during this period (the Waiting Period or *Standstill period*) to conclude negotiations with the aim of concluding, before the said term, the restructuring of the financial debt of the group, obtaining additional cash in a very significant amount, and proceed with its recapitalization. In this sense, the Clause 4 of the Agreement establishes a series of obligations for both creditors (lenders, 4.1) and for debtor companies (lenders, 4.2) and majority shareholders (4.3)

21. According to Clause 4.1 of the Refinancing Agreement, given the waiting period or agreed extension, creditors (lenders) undertake, during this period of seven months, with respect to the debt included in the Refinancing Agreement, to:

(i) To refrain from claiming or accepting payment of any amount owed by any company of the Group in respect of current amortization or advance payments of principal or payments of interest under the Affected Debt Instruments, as well as charging interest for delayed payments on the occasion of non-payment of these amounts (unless the advance payment obligation in question arises from disposals of assets pledged as collateral to cover one or more Unaffected Guaranteed Debt Instruments).

(ii) To refrain from exercising any right of ownership, compensation or other rights of a similar nature in order to reduce its credit positions under the Affected Debt Instruments.

(iii) To refrain from initiating any action to enforce or accelerate any Affected Debt,

or require or accept early payment or settlement of any Affected Debt Instrument by any company of the Group (unless the advance payment obligation in question arises from an authorized disposal of an asset pledged as a loan guarantee to cover one or more Unaffected Guaranteed Debt Instruments).

(iv) Refrain from submitting or continuing (or instruct an agent, trustee or relevant equivalent to submit or continue) any claim or demand Implementing Measures on Affected Debt Instruments.

(v) refrain from making any request for necessary tender (or equivalent application in any other jurisdiction) in connection with any company of the Group, and to support or otherwise collaborate with third parties willing to submit a competing necessary tender.

(vi) Refrain from soliciting or accepting the award of actual additional personal guarantees or a surety bond for the receivables arising from Affected Debt Instruments (unless the security in question derives from an obligation to that effect under of any Unaffected Guaranteed Debt Instruments).

(vii) Refrain from assigning or transferring all or part of its rights or obligations, or declare or create any trust over any of its rights, title, interest or related Affected Debt Instruments benefits (directly or otherwise), or, in any other way reduce its participation in them, unless the transferee or buyer accepts and adheres to the terms and conditions set forth in this Agreement

(viii) To exercise the voting rights corresponding to the Affected Debt Instruments in a manner consistent with the commitments made under this Agreement)

(ix) To refrain from increasing margins, commissions or other economic conditions or modify any other term or condition of the Affected Debt Instruments of which those are a part.

22. The validity and effectiveness of this Refinancing Agreement is conditional upon: (a) the presentation of an "*Industrial Viability. Plan Extract 2016*", which is attached as Annex Schedule 3.1. (i) the Refinancing Agreement itself, see <u>Document No. 3</u>; (b) signing of it by a percentage of creditors representing at least 60% of the financial debt; and (c) the issue by the Auditors of a certification evidencing the obtaining of the majorities stipulated in the Fourth Additional Provision of the Bankruptcy Law; and (d) finally, the submitting of this application for judicial approval.

**<u>FOURTH.- Support of financial institutions for the Refinancing Agreement</u>**

23. The Refinancing Agreement has been signed by a number of financial institutions

that more than exceed the minimum percentages stipulated in the Fourth Additional Provision of the Bankruptcy Law, as evidenced by the certification issued by the Auditor, the institution Deloitte, and which is attached as **Document No. 17**.

**FIFTH.- Non-participating institutions and effects of approval**

24. Since essentially limited time is available, it has not been possible to obtain the consent to the Refinancing Agreement from 100% of the financial creditors, which is why it is necessary to seek court approval, in order to, in any case, (i) to grant the Refinancing Agreement the protection afforded by the first paragraph of the Fourth Additional Provision of the Bankruptcy Law and (ii) expand its effects to entities that have not signed, nor have not subsequently joined the Refinancing Agreement (the "Non-participating institutions").

25. It should be borne in mind, however, that under Clause 3.3 of the Refinancing Agreement, such institutions may join the Agreement until the day before the date of the Order by which the present application for judicial approval is resolved, so it is not ruled out that, after the submission of this application, the Court may receive information about subsequent joining of others.

26. In short, with the application for court approval of the Refinancing Agreement to this Court, consisting of a waiting period of seven months, being promoted are the necessary requirements for a comprehensive restructuring of ABENGOA Group, based on the Industrial Viability Plan, presented by the Company and supported by creditors, which ensures the viability and value of ABENGOA, because, today, the operational value of ABENGOA is seven times greater than if the Company were to be liquidated.

27. This ensures compliance with the letter and spirit of the bankruptcy legislation, and according to the explanatory statement, aims, through these types of Refinancing Agreements, to reorganize the viable businesses from an operational point of view, in order that the remaining debt is bearable, allowing the company to continue meeting its economic commitments, in conjunction and with respect to the legitimate expectations of creditors, which will actively participate in these procedures financial burden reliefs, with maximum guarantees and, ultimately, prevent competition for the benefit of the parties.

28. Each and every one of these measures, having a tendency to continue the viability of ABENGOA, and its subsidiary companies, have been received very positively by the

market. By way of example, we wish to emphasize the reaction of the prestigious credit rating agency (Moody's), which has announced its intention to improve the rating of ABENGOA, if the Company successfully executes this Viability Plan (see the notice contained in **Document No. 18**).

29. The court approval of the Refinancing Agreement and the expansion of its effects is the first step necessary for the fulfilment of the Viability Plan, the necessary condition for the preservation of the valuable of the company.

30. Absence of compliance with this Viability Plan, including the rejection of this application, would mean the collapse of ABENGOA and its subsidiary companies, the liquidation of the Company, the loss of over 24,000 jobs, the loss of an international Seville group, with high technological traditions, the loss of the possibility of recovery of loans granted by financial institutions and bondholders, the disappearance of a large number of small and medium suppliers of this group, currently operating in Spain and Andalusia. In short, it would be a big blow for the Spanish and Andalusian economies, because one of its flagship companies, of worldwide fame, would be lost, and in Andalusia, specifically, this would mean the loss of over 10,200 jobs, both direct and indirect jobs, and a significant increase in the unemployment rate of this Community, which today stands at 31.2%.

31. In the above **FACTS**, the following are applicable

## LEGAL GROUNDS

### FIRST.- JURISDICTION AND COMPETENCE

32. The Commercial Court, which I have the honour of addressing, is competent within the meaning of Paragraph 5 of the Fourth Additional Provision of the Bankruptcy Law in relation to Articles 25.4 and 10.1 of the said Law, being the dominant institution of group, ABENGOA, S.A., based in Campus Palmas Altas, Calle Energía Solar, 1 (Seville), being in the same location as the centre of interest, in the terms required by the Law.

33. Therefore, my client is located within the geographic area in which this Court has the objective and territorial jurisdiction to hear contest declarations, which are promoted and, consequently, to process this application for approval.

34. Likewise, it has to be noted that the Commercial Court No. 2 of Seville is one that has previously heard similar to the aforementioned communications falling under Article 5 et seq. of the Bankruptcy Law, and therefore is the one that has jurisdiction to hear this written application for judicial approval. This is the accepted standard under the existing rules of distribution of commercial matters among commercial courts of Seville and supported by the most recent accepted legal principles (see AZNAR, *The communication of Article 5 et seq. of the Bankruptcy Law*, 2nd ed., Valencia , 2016, p. 127)

**SECOND.- LEGAL JUSTIFICATIONS TO SUPPORT THE APPLICATION FOR APPROVAL**

35. In accordance with the provisions of section 5. II of the Fourth Additional Provision of the Bankruptcy Law, the application for approval may be made by the debtor or any creditor who has signed the Refinancing Agreement. Consequently, my principals have legal standing to bring the application for approval before the competent court.

36. The present application for approval is made, therefore, by the parent company and 44 other member companies of its Group, which are listed in the Document No. 1, and which are part of the Refinancing Agreement, and which have headquarters located in Spain. This application is not made by the other companies of the Group, likewise being parties to the Refinancing Agreement, but which do not have their headquarters in Spain, and that should be protected abroad under similar procedures (such as "Chapter 15" of the Bankruptcy Law of the United States of America, having appointed for this purpose in the Refinancing Agreement, Mr Chris Morris, as the Representative of those companies).

**THIRD.- LEGAL REQUIREMENTS TO PROCEED TO SEEKING COURT APPROVAL AND ITS JUDICIAL REVIEW**

37. ***1. The judicial review over the legal requirements and its scope*:** Under the new system of debt refinancing, the judge has an essential function of *formal review or legal authority* in the approval of refinancing agreements based on the general legal requirements and the majorities required in each case. The scope of such review is set out in Paragraph 6 of the Fourth Additional Provision, which reads as follows: "The judge grants the approval, provided that the agreement meets the requirements stipulated in the first paragraph of this provision, and declares the expansion of its effects as appropriate, when the auditor certifies the concurrence

of the majority, as required by the third or fourth paragraphs".

38. At this time, for the judge has the ability to review the existence of a Refinancing Agreement, the submitted Viability Plan and other documents accompanying the Refinancing Agreement, and certification by the auditor as to the adequacy of the majority that is legally required. Likewise, the judge shall authenticate that the agreement was formalized into a public document. If all of this is true, the court shall order the approval of the Refinancing Agreement, its irrevocability and expand its effects to Non-participating institutions (see Order of the Commercial Court of Madrid No. 3, dated 24 June 2014).

39. To rule on the approval, therefore, it is not required that the judge consider whether the expansion of the effects of the Refinancing Agreement entails disproportionate sacrifice for Non-participating institutions or to conduct a review process of the work performed by the auditor. Only if one of the Non-participating institutions decides to contest the aforementioned Order, stipulating the particular reasons and motives contained in the Law, a review and analysis of these points is required.

40. This is the unanimous position of the Spanish commercial judges. Thus, this interpretation is followed, by many, by the Order of the Commercial Court No. 7 of Madrid, dated 12 February 2015, "after the latest bankruptcy legislation reform, that judicial review is not verified *ex ante*, but rather <u>after</u> approval, and only if the affected creditor launches a challenge. Prior judicial review is limited to the formal review of the content of the agreement and its correspondence to the provisions of Paragraph 1 of the Fourth Additional Provision. Consequently, a Refinancing Agreement can only be approved judicially if it has been signed by creditors representing at least 51% of all financial liabilities, being present at the time of its adoption, the conditions laid down in Point a) and Numbers 2 and 3 of Point b) of Paragraph 1 of Article 71 et seq.

41. Based on accepted legal principles, this criterion has been met, without exception, for all bankruptcy seekers.

Thus, the Professor Juana PULGAR EZQUERRA (in "Refinancing, restructuring of corporate debt and bankruptcy legislation reform", *Law Journal*, No. 8271, dated 14 March 2014), argues that the judge, having jurisdiction where the headquarters of the company seeking approval are located, does not make "any judgment on the opportunity of disproportionate sacrifices being made by dissenting or non-

participating holders of financial liabilities, relegating the valuation of such sacrifice to a possible challenge of the agreement by legitimate creditors at another possible venue") and more recently, follows this opinion of Judge Ignacio SANCHO GARGALLO, "Approval, effectiveness and appeal, and termination of refinancing agreements" in DIAZ MORENO / LEON SANZ, Agreements on refinancing, accords and restructuring, Cizur Menor, 2015, pp. 148 et seq.).

42. In short, if before the amendment introduced by Royal Decree-Law 4/2014, the legislator attributed to the judge the competence to examine, *ex officio*, the content of a refinancing agreement, even to deny court approval if he/she considered that such an agreement meant a disproportionate sacrifice by non-participating creditors, then after the bankruptcy legislation reform, the judicial right of review of the contents *a priori* was cancelled, and the judge limits his/her function to checking whether or not the application complies with the legal requirements.

43. As it was emphasized, in summary, the Order of the Commercial Court No. 1 of Barcelona, in fulfilling the legal requirements, the judge approves "the refinancing agreement and expands its effects against third dissident parties, leaving for a later time the possibility of analysing whether this agreement involves an unjustified sacrifice of assets for these parties, acting on a complaint of a party".

44. That being said, it is worth noting that the Refinancing Agreement, whose application for approval is being presented, consisting of a seven month waiting period, does not imply any disproportionate sacrifice at all.

45. ***2. Legal requirements*:** With regard to the legal requirements, the Fourth Additional Provision of the Bankruptcy Law, coming into force after the recent bankruptcy legislation reforms, provides in its first paragraph, that:

"1. May be approved judicially a Refinancing Agreement that has been signed by creditors representing at least 51% of all financial liabilities, being present at the time of its adoption, the conditions stipulated in Point a) and Numbers 2 and 3 of Point b) of Paragraph 1 of Article 71 et seq. The resolutions adopted by the described majority may not be subject to termination pursuant to Paragraph 13 (…)".

These legal requirements are as follows:

46. ***A) The existence of a Refinancing Agreement. Waiting period as own and legitimate content of a Refinancing Agreement*:** In this case, as we have

already noted, the Refinancing Agreement contains a waiting period until 28 October 2016, inclusive, according to the content of its Clauses 2 and 4.

47. As we have highlighted the Third Fact, the Refinancing Agreement has, as its basic content, a waiting period of seven months, covered and justified by both the Viability Plan, for the long-term, which is attached as Document No. 6, and for the Viability Plan for the financial year 2016, which is attached to the Refinancing Agreement as Annex 3.1 (i) of the Document No. 3, which enables and facilitates the viability of the Group in the short and medium term perspectives.

48. No doubt that a Refinancing Agreement may contain only a waiting period with own effects, independently valid, legitimate and fully effective, and may be the subject of expansion to Non-participating institutions.

49. Indeed, in Paragraph a) of Article 71 et seq., to which reference is made specifically in Paragraph 1 of the Fourth Additional Provision, referring, clearly, to the waiting period as part of the content of the Refinancing Agreement "under these (business, acts and payments) is necessary, at least the **significant expansion of available credit, or the modification or termination of its obligations, either by extension of its maturity period** or the establishment of other obligations replacing those, provided that they satisfy a **viability plan**, which allows continuity of professional or business activity in the short and medium term perspectives".

50. There is, therefore, no doubt about the validity of the waiting period agreed upon in the Refinancing Agreement and contained in its Clauses 2 and 4, as basic and autonomous content, which responds to the Business Plan or Viability Plan, which justifies, internally, in this case, the restructuring plan of global scope.

51. That the waiting period, in itself and independently, one of the typical contents permitted by the legislation, accepted legal principles and jurisprudence, is an irrefutable fact (see in accepted legal principles, by all, PULGAR, "Pre-bankruptcy and refinancing agreements" in *The declaration of bankruptcy*, Madrid, pp. 96 et seq.; ROJO, "The Pre-bankruptcy Law", in *Lessons in Commercial Law*, II, Cizur Menor, 2015, p. 573; CEDRA, "The expansion of the effects of a refinancing agreement, judicially approved, to dissidents or non-participating financial creditors", ADCo, 33, 2014, p. 153;. CERVERA. "The approval procedure of refinancing agreements ", ADCo, 33, 2014, p. 116) and which is common content in the *practice* of Refinancing Agreements (see, recent, among many, Order of Commercial Court No. 10 of Barcelona, dated 12 January 2014; Order of Commercial Court No. 3 of Madrid, dated 24 June 2014, Order of Commercial Court No. 12 of Madrid, dated 22 September 2014;. Order of Commercial Court No. 4 of Madrid, dated 19 December 2014.; Order of Commercial Court No. 7 of Madrid, dated 12 February 2015; Order of Commercial Court No. 2 of Pontevedra, dated 13 February 2015; Order of Commercial Court No. 2 of Bilbao, dated 13 February 2015; Order of Commercial Court No. 1 of Barcelona, dated 27 February 2015 (corrected by Order dated 4 March 2015); Order of Commercial Court No. 3 of Barcelona, dated 2 March 2015; Order of Commercial Court No. 3 of Barcelona, dated 3 March 2015; Order of Commercial Court No. 3 of Barcelona, dated 29 April 2015; Order of Commercial Court of Las Palmas, dated April 29, 2015; Order of Commercial Court No. 12 of Madrid, dated 5 June 2015; Order of Commercial Court No. 1 of Madrid, dated 30 June 2015; Order of Commercial Court No. 1 of Donostia-San Sebastian, dated 17 June 2015; Order of Commercial Court of Castellon, dated 1 July 2015 (which approved a refinancing agreement that contains an exclusive waiting period of seven years) Order of Commercial Court of Murcia, dated 17 July 2015; Order of Commercial Court No. 1 of Bilbao, dated 20 July 2015).

52. The companies that benefit from the waiting period, have received new money to address their most urgent liquidity needs, as was noted in detail in the Second Fact. Creditors who have lent *fresh money* are highly qualified creditors who have firmly supported the decision to implement the Industrial Viability Plan.

53. ***B) The concurrence of support by more than 51% of financial liabilities, according to the Auditor Certification***: In order that the Refinancing Agreements enjoy the status of irrevocability, it is necessary that they be signed by 51% of financial liabilities, as is apparent from the first subparagraph of the first paragraph of the Fourth Additional Provision, and meet the *conditions set out* in Point a) and Numbers 2 and 3 of Point b) of Paragraph 1 of Article 71 et seq. of the Bankruptcy Law.

54. In the present case, the Refinancing Agreement has been signed by creditors representing more than 51% of the financial liabilities of the debtor on the date of the Refinancing Agreement, as it has been accredited by the Auditor Certification of the applicant companies, and which are attached as Document No. 17. The certificates issued accredit the adequacy of liabilities to provide the irrevocability of the Refinancing Agreement.

55. In view of its mere function of a formal review, as highlighted in the most authoritative accepted legal principles, "*at this stage of the approval process, the judge only shall verify the certification, and that it contains the concurrence of the majority as required by the law to obtain the intended effects*" (see SANCHO GARGALLO, "Approval", *cit.*, p. 151 and DIAZ, Refinancing agreements, Cizur Menor, 2015, p. 145).

56. Under the mandatory Auditor Certification, attached as Document No. 17, a percentage that has concurred is much greater than is legally required.

57. For the purposes of the said percentage, not taken into account were the financial liabilities held by creditors who are considered to be specially related persons, pursuant to Paragraph 2 of Article 93 of the Bankruptcy Law.

58. Taken into consideration have been creditors of financial liabilities, who are holders of any financial indebtedness regardless of whether or not they have been subject to financial supervision, while excluded from such a concept were both trade creditors and creditors of liabilities governed by public law.

59. **C*) The existence of a Viability Pla*n:** The Viability Plan, which is provided, is based on the rationale of providing a waiting period of seven months as part of a Global Industrial Viability Plan. The waiting period – and its approval – is a necessary element of the Global Industrial Viability Plan, and is fully justified by the Viability Plan for the short and medium term perspectives (*Industrial Viability Plan. Extract 2016*, see Annex 3.1 of Document No. 3). Therefore, there is no doubt that this is a reasonable and workable Viability Plan, which meets the requirements of the Bankruptcy Law.

60. ***D) Converting to a public document*:** The Refinancing Agreement has been formalized into a public document, to which have been joined the documents proving its content and compliance with other requirements established by the Fourth Additional Provision and Point a) and Numbers 2 and 3 of Point b) of Paragraph 1 of Article 71 et seq. of the Bankruptcy Law, as it has been proven by Document No. 3.

61. Ultimately, as can be seen, without any doubt, ***all*** the requirements or legal conditions have been met for the approval of the Refinancing Agreement and also to provide it with full irrevocability.

**FOURTH.-. EXPANSION OF EFFECTS ON NON-PARTICIPATING INSTITUTIONS.**

62. In addition to the irrevocability, as a result of the approval by a judge, the keystone of the entire system of refinancing is the legal expansion of the effects of the Refinancing Agreement to Non-participating institutions (see, for all, YAÑEZ EVANGELISTA / NIETO DELGADO, "Refinancing: termination and expansion of effects," ADCo, 32, *May-August 2014, pp. 155 et seq.; NIETO, "Refinancing* as an alternative to competition" in *The bankruptcy procedure in all its dimensions*, Madrid, 2014, pp. 13 et seq., and more recently NIETO, "Pre-bankruptcy law and refinancing agreements" *Bankruptcy* 2015, Madrid, 2015, pp. 9 et seq.; and RODRIGUEZ DE QUIÑONES, "Typology of refinancing agreements" in *Refinancing Agreements*, cit., pp. 76 et seq.).

63. Thus, Number 3 of the Fourth Additional Provision of the Bankruptcy Law establishes the necessary majority to expand the effects of the Refinancing Agreement, through court approval, "to creditors of financial liabilities that have not signed the refinancing agreement, or which have shown their disagreement thereto, and whose claims are not secured, or have a part of the loans that exceed the value of the security collateral".

64. In the present case, given that the application for approval of the Refinancing Agreement pursues, as was already indicated, purely an expansion to Non-participating institutions , a waiting period of seven months (a waiting period until 28 October 2016, inclusive), whose content is described, in detail, in Clause 4 of the Agreement, the majority required by law is, therefore, 60 percent of the financial liabilities, the majority, in this case, has been achieved sufficiently according to the Auditor Certifications of the companies, Document No. 17, which indicate that the majority of the creditors have signed or joined to the Agreement, on an individual basis, more than 60%, and on consolidated basis, a total of 75.04%.

65. Thus, Paragraph a) of Number 3 of the Fourth Additional Provision of the Bankruptcy Law requires that the for the effect of expansion to occur, the agreement must be "*signed by creditors representing at least 60% of the financial liabilities*, ***the waiting periods, either for the principal, or interest, or any other amount owed***, *with a term not exceeding five years (...)*". As we have already noted, the agreement has been signed by a percentage much higher than required by the law.

66. For the purposes of the said percentage, not taken into account were the financial liabilities held by creditors who are considered to be specially related persons pursuant to Paragraph 2 of Article 93 of the Bankruptcy Law.

67. Equally excluded have been trade creditors and creditors of liabilities governed by public law.

**FIFTH.- APPROVAL THAT IS BEING REQUESTED**

68. The Fourth Additional Provision of the Bankruptcy Law provides different effects of approval. Such effects, as is clear from the first paragraph of the said provision ("The agreements adopted by the described majority may not be subject to termination as stipulated in Paragraph 13. To expand its effects, needed are the majorities required by the subsequent paragraphs") are two: (i) the revocation protection and (ii) the expansion of effects to Non-participating institutions.

69. It seems, therefore, in this matter, that the current wording of the Fourth Additional Provision "handles" different percentages of acceptance of the agreement by financial liabilities, comprising a minimum level (at least 51%) with which only revocation protection is provided, and other higher levels that allow adding to the strict "approval" the expansion of the impact of the Refinancing Agreement, which in this case is a waiting period of seven months (until 28 October 2016, inclusive), in accordance with Clauses 2 and 4 of the signed Agreement.

70. Accordingly, by this written report, substantially being requested from the Court are:

71. **1**. **<u>The irrevocability of the Refinancing Agreement</u>**: It is requested that the Refinancing Agreement cannot be subject to actions of revocation. Thus it is clearly stated in Number 13 of the Fourth Additional Provision of the Bankruptcy Law, the provision that "The judicially approved refinancing agreements cannot be subject to actions of revocability (...)" (for this purpose, in addition to the works mentioned above, see SANCHO GARGALLO, "Refinancing from the perspective of reintegration actions", *reprint*, 2011 and "Approval", cit., pp. 177 et seq.; SANJUAN Y MUÑOZ, "Refinancing agreements and debt restructuring". in *The Law on Insolvency*, Valencia, 2015, pp. 80 et seq.; and the complete study of FERNANDEZ SEIJO, "Refinancing agreement and bankruptcy revocation" in the *Reintegration into bankruptcy of creditors*, 2nd ed., Cizur Menor, 2014, pp. 321 et seq.; AZNAR, *Insolvency reform of Royal Decree-Law 4/2014, concerning refinancing and restructuring of corporate debts*, Valencia, 2014, pp. 95 et seq.; and MARRERO, "Refinancing agreements" *Judicial treatise on insolvency*, I, Cizur Menor, 2012, pp. 326 et seq.).

72. **2**. It is likewise requested that, the exercise of other actions to challenge that, if they

arise and may become exercised against the Refinancing Agreement, be subject to the provisions of Article 72.2 of the Bankruptcy Law.

73. **3**. **The expansion of the effects of the waiting period until 28 October 2016, inclusive (7 months) to the Non-participating institutions, according to the contents of Clauses 2 and 4 of the Refinancing Agreement**: It is asked that the expansion of the waiting period, which itself has legitimate purposes and autonomous validly, notwithstanding that it forms a part of a global restructuring process, as it is described in Second Fact of the present application.

**SIXTH.- THE CESSATION OF SINGULAR EXECUTIONS**

74. In order to avoid frustration of the intended purpose, it is desired to proceed to agree on the cessation of singular executions promoted by, or that could be encouraged by, creditors against the Applicants, who are part of the Refinancing Agreement, before the date on which the Court decides on the approval being requested here, and such resolution is endowed with firmness.

75. For my part, I am not aware of any institution that may have initiated any singular execution of any credit rights against my principals.

76. Certainly, the initiation or practice of such individual executions and particularly for the amounts due, seriously undermine the cash flow of ABENGOA and disrupt its operations, and even jeopardize the maintenance of the Refinancing Agreement, so therefore, it is not only prudent, but necessary, to agree to halt singular executions before the court approval of the Refinancing Agreement is obtained.

77. The cessation of singular executions is expressly provided for in Fourth Additional Provision, which cessation must be provided, if the formal requirements for admissibility of the application for approval are met, which has been established more than sufficiently in the case of the present application.

78. For the purposes of the cessation of singular executions, to be effective and to protect the legal interests secured under the Fourth Additional Provision, the cessation should be maintained, as it is reasonable, until the Judicial approval order becomes final, in line with the provisions of the decision of the Commercial Court of Santa Cruz de Tenerife in the bankruptcy case No. 44/2013, which literally established that:

"SECOND.- In the present case, the application for approval of the refinancing agreement has been filed with the competent court, no formal defect is apparent, given that it was elevated to a public deed provided by current proceedings; so its admissibility is agreed as being valid, with cessation of singular executions until the ruling on the court approval becomes final."

For all the reasons listed above,

**I HEREBY IMPLORE THE COMMERCIAL COURT** that, having the present application, with all attached documentation, the request be treated in a timely manner and that the court approve the Refinancing Agreement attached as Document No. 3 and, pursuant to the provisions of the Fourth Additional Provision of the Bankruptcy Law proceed to:

1. Deem admissible the present application for approval pending approval by Court Order.

2. Declare cessation of singular executions, already initiated or subsequently initiated, and any legal proceedings affecting the debtor's assets until a final Order is issued by which the approval is confirmed.

3. Order the Counsel for the Administration of Justice (Court Clerk) to publish the Court Order being referred to, in the Public Bankruptcy Register by means of a notice containing the information identifying: the applicant debtors, the competent judge, the number of the court approval proceedings, the date of the Refinancing Agreement and the effects of those measures that are contained within it (waiting period until 28 October 2016, inclusive, in accordance with Clauses 2 and 4 of the Refinancing Agreement), indicating that the signed agreement is available to creditors in this Commercial Court, which has been deposited for the publication, including electronically, of its contents.

4. Grant court approval for the Refinancing Agreement, the irrevocability of the same, and its expansion to Non-participating institutions of the effects of the waiting period until 28 October 2016, inclusive, pursuant to Clauses 2 and 4 of the Refinancing Agreement.

5. Publish the Order of approval of the Refinancing Agreement in the Public Bankruptcy Register and the Official State Gazette by means of an extract, noting the abovementioned data.

It is Justice, which we respectfully ask for in Seville, on 28 March 2016.

**FIRST ADDENDUM STATES**:

That, in accordance with Article 231 of the Law on Civil Procedure, my client expresses its willingness to comply in all proceedings, with the requirements of the Law on Civil Procedure, requesting that, if necessary, it is permitted to remedy any defects which could vitiate the present request.

It is Justice, which we respectfully ask for in Seville, on 28 March 2016.

Mr Jaime Cano Ruiz — Mr José Machado Plazas

Lawyer — Lawyer

Mr Javier Otero Terrón

Solicitor

JAVIER OTERO TERRON
LCDO. EN DERECHO
PROCURADOR DE LOS TRIBUNALES
C/. Juan Sebastian Elcano, 19 - 5º Izq.
Teléf./Fax: 954 45 90 02 41011 SEVILLA

# JUZGADO DE LO MERCANTIL Nº 2 DE SEVILLA

C/ Vermondo Resta, S/N Edificio Viapol Planta Tercera
Tlf.: 955519098-99 ; 662977872-73. Fax: 955921010
NIG: 4109142M20160000757
**Procedimiento: Comunicación art. 5 bis Ley Concursal 335/2016. Negociado: 5**
Sobre: SOLICITUD HOMOLOGACIÓN ACUERDO REFINANCIACIÓN

**PROVIDENCIA DEL MAGISTRADO**
**D. PEDRO MÁRQUEZ RUBIO**

En Sevilla, a 28 de marzo de 2.016.

Examinada la solicitud presentada con fecha de 28 de marzo de 2.016 por el Procurador de los Tribunales, don Javier Otero Terrón, en representación de Abengoa, S.A., Abeinsa Asset Management, S.L., Abeinsa Business Development, S.A., Abeinsa Engineering, S.L., Abeinsa Infraestructuras Medio Ambiente, S.A., Abeinsa Inversiones Latam, S.L., Abeinsa Operation and Maintenance, S.A., Abeinsa, Ingeniería y Construcción Industrial, S.A., Abencor Suministros S.A., Abener Energía, S.A., Abengoa Bioenergía Inversiones, S.A., Abengoa Bioenergía Nuevas Tecnologías, S.A., Abengoa Bioenergía San Roque, S.A., Abengoa Bioenergía, S.A., Abengoa Concessions, S.L., Abengoa Energy Crops, S.A., Abengoa Finance, S.A.U., Abengoa Greenbridge, S.A.U., Abengoa Greenfield S.A.U., Abengoa Hidrógeno, S.A., Abengoa Research, S.L., Abengoa Solar España, S.A., Abengoa Solar New Technologies, S.A., Abengoa Solar S.A, Abengoa Water S.L., Abentel Telecomunicaciones, S.A., Asa Desulfuración, S.A., Asa Iberoamérica, S.L., Biocarburantes de Castilla y León, S.A., Bioetanol Galicia, S.A., Centro Industrial y Logístico Torrecuellar, S.A., Construcciones y Depuraciones, S.A., Ecoagricola, S.A., Ecocarburantes Españoles, S.A., Europea de Construcciones Metálicas, S.A., Gestión Integral de Recursos Humanos, S.A., Instalaciones Inabensa, S.A., Negocios Industriales y Comerciales, S.A., Simosa. Servicios Integrales de Mantenimiento y Operación, S.A., Siema Technologies, S.L., Simosa I.T., S.A., Sociedad Inversora en Energía y Medioambiente, S.A., Teyma Gestión de Contratos de Construcción e Ingeniería, S.A., Zero Emissions Technologies, S.A. y South Africa Solar Investments, S.L., por la que se pretende la homologación del acuerdo de refinanciación recogido en la póliza, número 726, otorgada entre el 18 y el 27 de marzo de 2.016 intervenida por el Notario de Madrid, D. José Miguel García Lombardía que se acompaña como documento número 3, al amparo de la Disposición Adicional Cuarta de la Ley Concursal, ACUERDO:

1.- Registrar la solicitud en el libro de su clase con el número 335/2016.

2.- Considerar a este Juzgado competente tanto objetiva como territorialmente, en función de lo interesado y de que, tratándose de sociedades de un mismo grupo y habiéndose incluido entre las solicitantes a la sociedad dominante, ABENGOA, S.A. (tal y como consta en la página 15 del documento número 5), por aplicación sistemática del artículo 25 y del Apartado 5 de la Disposición Adicional Cuarta de la Ley Concursal, ha de estarse al lugar en el que se encuentre el centro principal de sus intereses, que se ubica en la provincia de Sevilla, donde, además, se encuentra su domicilio social.

3.- Admitir a trámite la solicitud al cumplirse los requisitos meramente formales necesarios para ello, consistentes en la aportación del acuerdo cuya homologación se pretende (documento número 3) y de la certificación de auditor de cuentas acreditativa de que el mismo ha sido adoptado, para cada una de las entidades, por más del 51 por ciento de sus respectivos acreedores de pasivos financieros (documento número 17).

4.- Declarar la paralización de las ejecuciones singulares que se siguieran contra el patrimonio de cada una de las sociedades solicitantes (lo que implica la imposibilidad de iniciar tales ejecuciones) hasta que se resuelva definitivamente la homologación. Ello sucederá cuando se dicte auto denegatorio de la misma, cuando haya precluído el plazo para la presentación de impugnaciones frente a la homologación acordada, o cuando se dicte sentencia en el seno del incidente de impugnación.

Notifíquese la presente resolución a los solicitantes y procédase por la Letrada de la Administración de Justicia de este Juzgado a la publicación de esta providencia en el Registro Público Concursal, en los términos del último párrafo del apartado quinto de la Disposición Adicional Cuarta de la Ley Concursal, haciendo constar que los efectos cuya extensión se pretende son los correspondientes a la espera hasta el 28 de octubre de 2.016, inclusive, prevista conforme a las cláusulas 2 y 4 del Acuerdo de Refinanciación. Tales cláusulas establecen lo siguiente:

*Segunda.- La finalidad del presente Acuerdo es regular los términos en los que las Partes convienen en prorrogar la Deuda Afectada hasta el 28 de octubre de 2016 inclusive (la "Fecha Límite Máxima"), para permitir que durante ese periodo (el "Periodo de Espera") las Partes sigan negociando con vistas a acordar la reestructuración de la deuda financiera del Grupo y su recapitalización, conforme a la Base de la Reestructuración en todos los aspectos sustanciales, antes de la Fecha Límite Máxima.*

*Cuarta.- En el caso de que se cumplan las Condiciones Suspensivas de la Espera, los Acreditantes convienen en prorrogar la Deuda Afectada durante el Periodo de Espera. Durante ese periodo, los Acreditantes se comprometen concretamente a:*

*Abstenerse de reclamar o aceptar el pago de cualquier importe adeudado por cualquier sociedad del Grupo en concepto de amortización corriente o de pagos anticipados del principal o de pago de intereses en virtud de los Instrumentos de Deuda Afectada, así como de cargar intereses de demora sobre los pagos con motivo del impago de dichos importes (a menos que la obligación del pago anticipado en cuestión derive de disposiciones de activos cedidos en garantía que cubran uno o varios Instrumentos de Deuda Garantizada No Afectada).*

Abstenerse de ejercer cualquier derecho de apropiación, compensación u otro derecho de naturaleza similar con el objeto de reducir sus posiciones acreedoras en virtud de los Instrumentos de Deuda Afectada.

Abstenerse de iniciar ninguna acción para ejecutar o acelerar cualquier Deuda Afectada, o de exigir o aceptar el pago anticipado o la liquidación de cualquier Instrumento de Deuda Afectada por cualquiera de las sociedades del Grupo (a menos que la obligación de pago anticipado en cuestión derive de una disposición autorizada de un activo cedido garantía que cubra uno o varios Instrumentos de Deuda Garantizada No Afectada).

Abstenerse de presentar o de continuar (o de dar instrucciones al agente, fideicomisario o equivalente pertinente para que presente o continúe) cualquier reclamación o demanda de Medida de Ejecución relativa a los Instrumentos de Deuda Afectada.

Abstenerse de presentar cualquier solicitud de concurso necesario (o solicitud equivalente en cualquier otra jurisdicción) en relación con cualquiera de las sociedades del Grupo, y de apoyar o colaborar de cualquier otro modo con Terceros dispuestos a presentar una solicitud de concurso necesario.

Abstenerse de solicitar o aceptar la concesión de garantías personales adicionales o reales de una caución a favor de las cuentas a cobrar derivadas de Instrumentos de Deuda Afectada (a menos que la garantía real en cuestión derive de una obligación en ese sentido en virtud de cualquiera de los Instrumentos de Deuda Garantizada No Afectada).

Abstenerse de ceder o transmitir la totalidad o parte de sus derechos u obligaciones en virtud de, o de declarar o crear ningún fideicomiso sobre ninguno de sus derechos, titularidad, interés o beneficios relacionados con los Instrumentos de Deuda Afectada (directamente o de cualquier otra forma), o de reducir por cualquier otra vía su participación en los mismos, a menos que el cesionario o comprador acepte y se adhiera a los términos y condiciones estipulados en el presente Acuerdo.

Ejercer los derechos políticos correspondientes a los Instrumentos de Deuda Afectada de forma congruente con los compromisos adquiridos en virtud del presente Acuerdo.

Abstenerse de incrementar los márgenes, comisiones u otras condiciones económicas, así como de modificar cualquier otro término o condición de los Instrumentos de Deuda Afectada de los que son parte.

Sin perjuicio de lo anterior, las Partes reconocen que ciertos Acreditantes (los "Acreditantes Asegurados") detentan Deuda Afectada que está garantizada y/o cubierta por un seguro de crédito proporcionado por agencias de crédito a la exportación, por compañías de seguro de crédito u otras entidades

ADO DE LO MERCANTIL Nº 2 · SEVILLA ·

*equivalentes (en lo sucesivo denominada la "Deuda Afectada Asegurada", y cada uno de dichos proveedores de seguros, un "Proveedor de Seguro de Crédito"). Si dichas garantías y/o contratos de seguro de crédito exigen que el Proveedor de Seguro de Crédito dé su consentimiento previo para que los Acreditantes Asegurados puedan aceptar las restricciones estipuladas en la presente Cláusula 4.1 y en cualquier otro apartado del presente Acuerdo, los Acreditantes Asegurados declaran expresamente que asumen los compromisos, obligaciones y declaraciones asumidos por los Acreditantes Asegurados exclusivamente en relación con la porción de la Deuda Afectada que detentan que no consiste en Deuda Afectada Asegurada, y que, por consiguiente, no se considerará que hayan suscrito el presente Acuerdo (a efectos, entre otros, de la Cláusula 3.1.(ii) anterior) por lo que se refiere a su participación en la Deuda Afectada Asegurada.*

*Nada de lo contenido en la presente Cláusula 4.1 impedirá o prohibirá a ningún Acreditante incoar un procedimiento, requerir una medida de ejecución, demostrar cualquier Supuesto de Insolvencia, dar instrucciones a cualquier otra persona o votar a favor de cualquier acción que haya sido aprobada previamente por escrito por la Mayoría General de Acreditantes.*

Contra esta resolución cabe recurso de **REPOSICIÓN** ante este Juzgado, no obstante lo cual, se llevará a efecto lo acordado. El recurso deberá interponerse por escrito en el plazo de **CINCO DÍAS** hábiles contados desde el siguiente de la notificación, con expresión de la infracción cometida a juicio del recurrente, sin cuyos requisitos no se admitirá el recurso (artículos 451 y 452 de la Ley de Enjuiciamiento Civil).

Para la admisión del recurso previamente deberá efectuarse constitución de depósito en cuantía de 25 euros, debiendo ingresarlo en la cuenta de este Juzgado nº 4665 0000 00 033516, indicando en las Observaciones del documento de ingreso que se trata de un recurso seguido del código 00 y tipo concreto del recurso, de conformidad con lo establecido en la L.O 1/2009 de 3 de noviembre, salvo concurrencia de los supuestos de exclusión previstos en el apartado 5º de la Disposición adicional decimoquinta de dicha norma o beneficiarios de asistencia jurídica gratuita.

Lo acuerda, manda y firma S.Sª. Doy fe.

**EL MAGISTRADO** **LA LETRADA DE LA ADM. DE JUSTICIA**

*"En relación a los datos de carácter personal, sobre su confidencialidad y prohibición de transmisión o comunicación por cualquier medio o procedimiento, deberán ser tratados exclusivamente para los fines propios de la Administración de Justicia (ex Ley Orgánica 15/99, de 13 de diciembre, de protección de datos de carácter personal)".*

| | JAVIER OTERO TERRÓN<br>ATTORNEY AT LAW<br>SOLICITOR OF THE COURTS<br>____ · ____<br><br>C/. Juan Sebastián Elcano, 19 - 5° Izq.<br>Tel./Fax: 954 45 90 02, 41011 SEVILLE |
|---|---|

# Commercial Court No. 2 of SEVILLE

C/ Vermondo Resta, S/N VIAPOL Building Third Floor
Tel .: 955519098-99; 662977872-73. Fax: 955921010
N.I.G.: 4109142M20160000757
**Procedure: Communication Article 5 et seq. of the Bankruptcy Law 335/2016, Section 5**
About: APPLICATION FOR APPROVAL REFINANCING AGREEMENT

ORDER OF MAGISTRATE
MR PEDRO MARQUEZ RUBIO

In Seville, on 28 March 2016.

Having examined the request dated 28 March 2016 - by the Solicitor of the Courts, Mr Javier Otero Terron, on behalf of Abengoa, S.A., Abeinsa Asset Management, S.L., Abeinsa Business Development, S.A., Abeinsa Engineering, S.L., Abeinsa Infraestructuras Medio Ambiente, S.A., Abeinsa Inyemipnes Latam, S.L., Abeinsa Operation and Maintenance, S.A., Abeinsa, Industrial Engineering and Construction, S.A.; Abencor S.A. Supplies, Abener Energía, S.A., Abengoa Bioenergy, Inversiones, S.A., Abengoa Bioenergy New Technologies, S.A., Abengoa Bioenergia San Roque, S.A., Abengoa Bioenergy, S.A., Abengoa Concessions, S.L., Abengoa Energy Crops, S.A., Abengoa Finance, S.A.U., Abengoa Greenbridge, S.A.U, Abengoa Greenfield S.A.U., Abengoa Hydrogen, S.A., Abengoa Research S.L., Abengoa Solar Espana, S.A. Abengoa Solar New Technologies, S.A., Abengoa Solar S.A., Abengoa Water S.L., Abentel Telecomunicaciones, S.A., Asa Desulfuración, S.A., Asa Latin America, S.L., Bioocarburantes of Castilla y Leon, S.A., Bioethanol Galicia S.A. Industrial and Logistics Center Torrecuellar, S.A. Construcciones y Depuraciones, S.A., Ecoagricola, S.A., Ecocarburantes Españoles, S.A., European Steel erection, S.A., Integral Human Resources Management, S.A., Instalaciones Inabensa, S.A., Industrial Business and Commercial S.A., Simosa, Integrated Property Services operation, S.A., Siema Technologies, S.L., Simosa I.T., S.A., Inversora Society Energy and Environment, S.A., Teyma Contract Management Construction and Engineering, S.A., Zero Emissions Technologies, S.A. and South Africa Solar Investments, S.L., by the approval of the refinancing agreement contained in the policy, number 726, issued between 18 and 27 March 2016 notarized by the Notary of Madrid, Mr José Miguel García Lombardy, attached as Document No. pursuant to the Fourth Additional Provision of the Bankruptcy Act, AUTHORIZE:

1. Registration of the application in the book of its kind with the number 335/2016.

2 . Consider that this Court is objectively and territorially competent according to the person concerned and that, in the case of companies of the same group and being included among the applicants to the parent company, Abengoa, S.A. (as stated on page 15 of document No. 5), by systematic application of Article 25 and Paragraph 5 of the Fourth Additional Provision of the

Bankruptcy Law, the crucial factor the place where is located the main centre of its interests, which is located in the be province of Seville, where also located is its registered office.

3. - Admit for processing of the application upon completion of the purely formal requirements for this, consisting of the provision agreement for which approval is intended (Document No. 3) and the certification by the auditor of the accounts evidencing that it has been adopted for each one of the institutions, more than 51% of their respective creditors of financial liabilities (Document No. 17).

4. - Declare the cessation of singular executions pursued against the assets of each of the applicant companies (which implies the inability to start such executions) until the final decision of approval is made. This will happen when the order refusing it is issues, when it has precluded the deadline for filing objections against the agreed approval or when judgment is given within the incidental challenge.

Inform about this resolution to the applicants and proceed by the Legal Administration of Justice of this Court to the publication of this decision in the Public Bankruptcy Registry, under the terms of the last paragraph of Paragraph 5 of the Fourth Additional Provision of the Bankruptcy Law, noting that the effects whose extension is intended are those for waiting time until 28 October 2016, inclusive, provided under clauses 2 and 4 of the Refinancing Agreement. Such clauses provide as follows:

> *Second.- The purpose of this Agreement is to regulate the terms on which the parties agree to extend the Affected Debt until 28 October 2016 inclusive (the "Maximum Deadline"), to allow during that period (the "Waiting Period") the Parties continue to negotiate in order to agree on the restructuring of the financial debt of the Group and its recapitalization, according to the basis of restructuring in all material respects, before the Maximum Deadline.*
>
> *Fourth.- In the event that the Suspensive Conditions of the Waiting Period are fulfilled, the Lenders agree to extend the Affected Debt during the Waiting Period. During that period, the Lenders specifically undertake:*
>
> *To refrain from claiming or accepting payment of any amount owed by any company of the Group in respect of current amortization or advance payments of principal or payments of interest under the Affected Debt Instruments, as well as charging interest for delayed payments on the occasion of non-payment of these amounts (unless the advance payment obligation in question arises from disposals of assets pledged as collateral to cover one or more Unaffected Guaranteed Debt Instruments).*
>
> *To refrain from exercising any right of ownership, compensation or other rights of a similar nature in order to reduce its credit positions under the Affected Debt Instruments,*
>
> *To refrain from initiating any action to enforce or accelerate any Affected Debt, or require or accept early payment or settlement of any Affected Debt Instrument by any company of the Group (unless the advance payment obligation in question arises*

*from an authorized disposal of an asset pledged as a loan guarantee to cover one or more Unaffected Guaranteed Debt Instruments)*

*Refrain from submitting or continuing (or instruct an agent, trustee or relevant equivalent to submit or continue) any claim or demand Implementing Measures on Affected Debt Instruments.*

*Refrain from making any request for necessary tender (or equivalent application in any other jurisdiction) in connection with any company of the Group, and to support or otherwise collaborate with third parties willing to submit a competing necessary tender.*

*Refrain from soliciting or accepting the award of actual additional personal guarantees or a surety bond for the receivables arising from Affected Debt Instruments (unless the security in question derives from an obligation to that effect under of any Unaffected Guaranteed Debt Instruments).*

*Refrain from assigning or transferring all or part of its rights or obligations, or declare or create any trust over any of its rights, title, interest or related Affected Debt Instruments benefits (directly or otherwise), or, in any other way reduce its participation in them, unless the transferee or buyer accepts and adheres to the terms and conditions set forth in this Agreement*

.

*To exercise the voting rights corresponding to the Affected Debt Instruments in a manner consistent with the commitments made under this Agreement.*

*To refrain from increasing margins, commissions or other economic conditions or modify any other term or condition of the Affected Debt Instruments of which those are a part.*

*Notwithstanding the foregoing, the parties acknowledge that certain Lenders (the "Insured Lenders") hold the Affected debt that is guaranteed and / or covered by credit insurance provided by export credit agencies, insurance companies*, *credit or equivalent entities (hereinafter referred* to *as the "Affected Insured Debt" and each of these insurance providers a "Credit Insurance Provider"). If such guarantees and / or contracts of credit insurance require the Credit Insurance Supplier's prior consent for the Insured Lenders can accept the restrictions set forth in this Section 4.1 and in any other section of this Agreement, the Insured Lenders expressly state that they assume commitments, obligations and statements made by the Insured Lenders exclusively in relation to the portion of the Affected Debt which they hold that does not consist of Affected Insured Debt, and therefore cannot be deemed to have concluded this Agreement (for* the *purpose, among others, Clause 3.1. (ii) above) as regards their participation in the Affected Insured Debt.*

*Nothing contained in this Section 4.1 shall prevent or prohibit, any Lender to initiate proceedings, require an implementing measure, demonstrate any credit event, give instructions to any other person or vote in favour of any action that has been previously approved in writing by the General Majority of Lenders.*

Against this resolution an APPEAL can be made before this Court, however, it will take effect as agreed. The appeal must be filed in writing within FIVE WORKING DAYS from the day following the publication of the notification, stating the offense committed during the trial in the opinion of the appellant, without which requirements the appeal is not permitted (Articles 451 and 452 of the Civil Procedure Law).

To have the appeal accepted, and advance deposit in amount of 25 euros must be made, and this must be made it to the bank account of this Court No. 4665 0000 00 033 516, indicating in observations section the name of the document that is the resource followed by the code 00 and specific resource type, in accordance with the provisions of the L.O. 1/2009 of 3 November, except concurrence of the exclusions provided for in Paragraph 5 of the Fifteenth Additional Provision of such rule or beneficiaries of free legal aid.

I hereby approve, order, attest, and sign

**THE MAGISTRATE** **LAWYER OF THE ADMINISTRATION OF JUSTICE**

*"In relation to personal data on confidentiality and prohibition of transmission or communication by any means or procedure, they shall be treated solely for purposes relating to the Administration of Justice (ex. Law 15/99 of 13 December, protection of personal data)."*